UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Consumer Financial Protection Bureau,

      Plaintiff,

      v.

MoneyLion Technologies Inc., ML Plus, LLC, MoneyLion of Alabama LLC, MoneyLion of Arizona LLC, MoneyLion of California LLC, MoneyLion of Colorado LLC, MoneyLion of Connecticut LLC, MoneyLion of Delaware LLC, MoneyLion of Florida LLC, MoneyLion of Georgia LLC, MoneyLion of Idaho LLC, MoneyLion of Illinois LLC, MoneyLion of Indiana LLC, MoneyLion of Kansas LLC, MoneyLion of Kentucky LLC, MoneyLion of Louisiana LLC, MoneyLion of Maryland LLC, MoneyLion of Michigan LLC, MoneyLion of Minnesota LLC, MoneyLion of Mississippi LLC, MoneyLion of Missouri LLC, MoneyLion of Nevada LLC, MoneyLion of New Jersey LLC, MoneyLion of New Mexico LLC, MoneyLion of New York LLC, MoneyLion of North Carolina LLC, MoneyLion of North Dakota LLC, MoneyLion of Ohio LLC, MoneyLion of Oklahoma LLC, MoneyLion of Oregon LLC, MoneyLion of South Carolina LLC, MoneyLion of South Dakota LLC, MoneyLion of Tennessee LLC, MoneyLion of Texas LLC, MoneyLion of Utah LLC, MoneyLion of Virginia LLC, MoneyLion of Washington LLC,

Case No. 1:22-cv-8308

COMPLAINT

MoneyLion of Wisconsin LLC, and
MoneyLion of Wyoming LLC,

                    Defendants.

## Complaint

The Consumer Financial Protection Bureau files this Complaint against
MoneyLion Technologies Inc., ML Plus, LLC, and the following 37 entities
collectively referred to as the "MoneyLion Lending Subsidiaries": MoneyLion of
Alabama LLC, MoneyLion of Arizona LLC, MoneyLion of California LLC,
MoneyLion of Colorado LLC, MoneyLion of Connecticut LLC, MoneyLion of
Delaware LLC, MoneyLion of Florida LLC, MoneyLion of Georgia LLC,
MoneyLion of Idaho LLC, MoneyLion of Illinois LLC, MoneyLion of Indiana
LLC, MoneyLion of Kansas LLC, MoneyLion of Kentucky LLC, MoneyLion of
Louisiana LLC, MoneyLion of Maryland LLC, MoneyLion of Michigan LLC,
MoneyLion of Minnesota LLC, MoneyLion of Mississippi LLC, MoneyLion of
Missouri LLC, MoneyLion of Nevada LLC, MoneyLion of New Jersey LLC,
MoneyLion of New Mexico LLC, MoneyLion of New York LLC, MoneyLion of
North Carolina LLC, MoneyLion of North Dakota LLC, MoneyLion of Ohio LLC,
MoneyLion of Oklahoma LLC, MoneyLion of Oregon LLC, MoneyLion of South
Carolina LLC, MoneyLion of South Dakota LLC, MoneyLion of Tennessee LLC,
MoneyLion of Texas LLC, MoneyLion of Utah LLC, MoneyLion of Virginia
LLC, MoneyLion of Washington LLC, MoneyLion of Wisconsin LLC, and
MoneyLion of Wyoming LLC and alleges as follows:

**Introduction**

1.      The Bureau brings this action to enforce the Military Lending Act's protections for U.S. Military active-duty servicemembers and their dependents and to enforce the Consumer Financial Protection Act's protections for all U.S. consumers. Defendants MoneyLion Technologies, Inc. and the MoneyLion Lending Subsidiaries overcharged servicemembers and their dependents— imposing fees that, together with stated interest-rate charges, exceeded the Act's limit of 36% Military Annual Percentage Rate (MAPR). Defendants collected on these illegal loans and associated fees, failed to give requisite disclosures, and inserted illegal arbitration clauses designed to take away servicemembers' ability to vindicate their rights in court.

2.      The Bureau also brings this action to protect consumers who became trapped in Defendants' membership program after taking out their installment loans. Defendants attracted consumers with promises of low-APR installment loans. But Defendants required consumers seeking such loans to first join Defendants' "membership" program and pay monthly "membership" fees.

3.      Many consumers—particularly those behind on loan payments—were unable to cancel their memberships. They wished to exit a costly program that provided few benefits other than the loan itself, but Defendants would not allow them to cancel their memberships without first paying off their loans—and in some instances also paying any past-due membership fees. During a substantial period, Defendants misled consumers by telling them at the time of enrollment that they could cancel their memberships for any reason. And in many instances, after consumers had successfully paid off their loans, Defendants still took unpaid membership fees out of consumers' accounts before canceling their memberships.

4.      The Bureau alleges violations of the Military Lending Act, 10 U.S.C. § 987, and its implementing regulation, 32 C.F.R. pt. 232, (collectively, the MLA) by MoneyLion Technologies, Inc. and the MoneyLion Lending Subsidiaries in connection with their extensions of consumer credit to active-duty servicemembers and their dependents, defined collectively as "covered borrowers." 10 U.S.C. § 987(i)(1), (2); 32 C.F.R. § 232.3(g).

5.      The Bureau also alleges violations of Sections 1031, 1036 and 1054 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, 5564, by all Defendants for their unfair, deceptive, and abusive acts or practices in connection with loans and associated financial products and services offered and provided to covered borrowers and offered and provided to all consumers.

## Jurisdiction and Venue

6.      This Court has subject-matter jurisdiction because this action is "brought under Federal consumer financial law," 12 U.S.C. 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

7.      This Court has personal jurisdiction over all Defendants because the causes of action arise from Defendants' conduct in this district. 12 U.S.C. § 5564(f).

8.      Venue is proper in this district because Defendants are located, reside, and do business in this district. 12 U.S.C. § 5564(f).

## Parties

9.      The Bureau is an agency of the United States created by the CFPA and charged with regulating the offering and provision of consumer-financial products and services under federal consumer-financial laws. 12 U.S.C. § 5491(a).

The Bureau is authorized to enforce the MLA. 10 U.S.C. § 987(f)(6); 15 U.S.C. § 1607(a)(6); 32 C.F.R. § 232.10. The Bureau also has independent litigating authority to initiate civil actions in federal district court to address violations of "Federal consumer financial law." 12 U.S.C. §§ 5564(a)–(b).

10.     MoneyLion Technologies Inc. (MLT) (known until September 2021 as MoneyLion Inc.) is a Delaware corporation headquartered in New York, New York. Through its digital technology platform, including its website and mobile app, MLT has offered and brokered online installment loans, engaged in the servicing and collections of such loans, and provided other financial products and services to consumers, as described below. MLT is the direct corporate parent of the MoneyLion Lending Subsidiaries and ML Plus, LLC (MLP). MLT has managed, directed, controlled, and staffed the MoneyLion Lending Subsidiaries' lending, servicing, and collections operations; provided the capital for their loan originations; marketed their loans; and provided all transactional and payment services for their operations. MLT has similarly managed, directed, controlled, and staffed MLP's membership-program operations and its servicing and collections of membership fees, and MLT has provided all transactional and payment services for those operations.

11.     Each of the MoneyLion Lending Subsidiaries is a limited-liability company headquartered in New York, New York. Each has originated online installment loans offered to consumers by MLT and has serviced and collected those loans together with MLT. Each MoneyLion Lending Subsidiary is wholly owned by MLT, to which the MoneyLion Lending Subsidiaries distribute all lending-related compensation and revenue. The MoneyLion Lending Subsidiaries have no employees of their own, relying entirely on MLT for their staffing and

management.

12.     ML Plus, LLC (MLP) is a Delaware limited-liability company headquartered in New York, New York. MLP has offered and provided membership programs to consumers in connection with the online-installment consumer loans offered by MLT and the MoneyLion Lending Subsidiaries. MLP has serviced and collected fees associated with those membership programs. MLP has no employees of its own, relying entirely on MLT for its staffing and management.

*"Creditors" under the MLA*

13.     MLT and each of the MoneyLion Lending Subsidiaries are "creditors" under the MLA because, during the relevant period, each of those Defendants has—considered by itself and together with its affiliates—engaged in the business of extending consumer credit, and each Defendant meets the transaction standard for a "creditor" under Regulation Z, 12 C.F.R. Part 1026, with respect to extensions of consumer credit to borrowers covered by the MLA. 32 C.F.R. § 232.3(i)(3). MLT and each of the MoneyLion Lending Subsidiaries are "affiliates" under 32 C.F.R. § 232.3(a). MLT "controls" each of the MoneyLion Lending Subsidiaries, and each of the MoneyLion Lending Subsidiaries "is controlled by" MLT. *Id.*

*"Covered Persons" Under the CFPA*

14.     Under the CFPA, a "financial product or service" means and includes—

- "extending credit and servicing loans," including "brokering," 12 U.S.C. § 5481(15)(A)(i);
- "engaging in deposit-taking activities, transmitting or exchanging

funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer,"12 U.S.C. § 5481(15)(A)(iv);

- "providing payments or other financial data processing products or services to a consumer by any technological means," 12 U.S.C. § 5481(15)(A)(vii); and

- "collecting debt related to any consumer financial product or service," 12 U.S.C. § 5481(15)(A)(x).

15.     When a "financial product or service" is "offered or provided for use by consumers primarily for personal, family, or household purposes," it is a "consumer financial product or service" within the meaning of 12 U.S.C. § 5481(5)(A). All of the financial products and services described herein were offered or provided by Defendants for use by consumers primarily for personal, family, or household purposes.

16.     A "covered person" under the CFPA includes a person "that engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6)(A). "Person" includes a "company [or] corporation." 12 U.S.C. § 5481(19).

17.     MLT is a "covered person" under the CFPA because during the relevant period, MLT has offered and brokered consumer loans; serviced and collected debt related to consumer loans, including by notifying and contacting consumers by telephonic and electronic means and liquidating and offsetting their accounts; engaged in deposit-taking activities in connection with consumers' investment and managed accounts; transmitted and exchanged funds relating to loan payments and fee payments, and transmitted and exchanged funds relating to

investment-account, managed-account, and credit-reserve-account deposits and withdrawals; accepted funds paid by consumers on loans, associated fees, and account deposits; transmitted and processed transactions and payments relating to consumer loans, associated fees, account deposits, and account withdrawals; provided debit cards to consumers; and provided payments or other financial-data-processing products or services to consumers by technological means through its digital technology platform.

18.    Each of the MoneyLion Lending Subsidiaries is a "covered person" under the CFPA because, during the relevant period, each of the MoneyLion Lending Subsidiaries has originated and extended consumer loans and has serviced and collected consumer loans, including by notifying and contacting consumers by telephonic and electronic means and liquidating and offsetting their accounts.

19.    MLP is a "covered person" under the CFPA because during the relevant period it has charged, serviced, collected, and accepted fees required in connection with consumer loans.

20.    Under the CFPA, the term "covered person" also includes an "affiliate" of a person offering or providing a consumer financial product or service "if such affiliate acts as a service provider to such person." 12 U.S.C. § 5481(6)(B). An "affiliate" is a "person that controls, is controlled by, or is under common control with another person." 12 U.S.C. § 5481(1). A "service provider" is a "person that provides a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service, including a person that participates in designing, operating, or maintaining the consumer financial product or service; or processes transactions relating to the consumer financial product or service." 12 U.S.C. § 5481(26).

21.    During the relevant period, MLT has controlled each of the MoneyLion Lending Subsidiaries, and each of the MoneyLion Lending Subsidiaries has been controlled by MLT.

22.    Accordingly, MLT and each of the MoneyLion Lending Subsidiaries are "affiliates."

23.    During the relevant period, MLT has provided material services to each of the MoneyLion Lending Subsidiaries in connection with their origination, extension, servicing, and collection of consumer loans, including providing the capital to the MoneyLion Lending Subsidiaries for their loan originations; managing and staffing their operations; designing, operating, marketing, maintaining, and administering the loans and loan-related programs offered to consumers; setting underwriting guidelines; implementing compliance policies; providing technological platforms through which the loans are marketed, offered, and serviced and through which consumers make payments; establishing and processing payments and other transactions relating to the extension and servicing of such loans; establishing accounts used to secure loans and accepting and processing transactions relating to such accounts; and servicing and collecting the loans, including by notifying and contacting consumers by telephonic and electronic means and liquidating and offsetting their accounts.

24.    MLT is therefore a "covered person" because it has been an affiliate of and service provider to the MoneyLion Lending Subsidiaries.

25.    MLP is controlled by MLT, and MLP is under common control with the MoneyLion Lending Subsidiaries. Accordingly, MLP is an affiliate of MLT and the MoneyLion Lending Subsidiaries. MLP has provided material services to MLT and the MoneyLion Lending Subsidiaries, including administering

membership programs required in connection with consumer loans; and charging, servicing, and collecting membership fees required under such loans, including by notifying and contacting consumers and withdrawing funds from their accounts. MLP is therefore a "covered person" because it has been an affiliate of and service provider to MLT and the MoneyLion Lending Subsidiaries.

26.    Under circuit-court precedent, an entity defendant can be liable for another entity's unlawful acts or practices if the entity defendant had knowledge of the acts or practices and either (1) directly participated in the acts or practices or (2) allowed the acts or practices to occur while having the authority to control them.

27.    MLT designed, operated, marketed, maintained, and administered all subject loans and associated membership programs and offered them to consumers through its technology platforms. MLT set and controlled all terms, conditions, contractual provisions, restrictions, policies, and procedures relating to all such loans and associated membership programs. And MLT managed, directed, controlled, and staffed all operations of its subsidiaries in their dealings with consumers regarding their loans and memberships, including charging membership fees; servicing and collecting loans and fees; suspending memberships; handling consumers' requests to cancel memberships; and determining consumers' access to funds in their investment and credit-reserve accounts.

28.    Accordingly, MLT had knowledge of and directly participated in the unlawful acts and practices of the MoneyLion Lending Subsidiaries and MLP herein alleged. And with knowledge of these unlawful acts and practices, MLT allowed such acts and practices to occur while having the authority to control them.

**Factual Background**

*Defendants' Loan Products and Membership Programs*

29.     Since in or about the fall of 2017, MLT and the MoneyLion Lending Subsidiaries have offered loans that consumers cannot access unless they enroll in "membership programs" offered and administered by MLT and MLP and pay monthly "membership fees."

30.     The first such widely offered loan product was called the "ML Plus Loan," a 12-month installment loan of $500 with a 5.99% APR. For consumers to access the loan, MLT and the MoneyLion Lending Subsidiaries required consumers to enroll in the "ML Plus Membership Program" and pay a $29 monthly membership fee. Only consumers who had paid the membership fee and were current on membership-fee payments could take out the ML Plus Loan.

31.     After receiving an ML Plus Loan, consumers were required under the membership agreement and loan contract to pay three amounts: the monthly loan payment (typically about $43); the $29 monthly membership fee; and a separate $50 monthly deposit into an investment account controlled by MLT and MLP that the companies used to partially secure the loan.

32.     In or about the summer of 2019, MLT and the MoneyLion Lending Subsidiaries rebranded and changed the installment loan offered under the membership program. Defendants now offer a "Credit Builder Loan": a 12-month installment loan of $500 to $1,000 at APRs between 5.99% and 29.99%. To access the loan, consumers must join the Credit Builder Plus Membership Program and pay monthly membership fees of $19.99.

33.     For the Credit Builder Loan, Defendants eliminated the mandatory $50-per-month investment-account contribution. Instead, Defendants disburse only

a portion of the loan amount at origination and deposit the remainder into a "credit reserve account," which Defendants release to consumers once consumers have paid off the loan. (Hereinafter, the ML Plus Loan and Credit Builder Loan—together with limited ML Plus precursors offered in 2017—will collectively be referred to as "Membership-Program Loans.")

34.    While a consumer had an active Membership-Program Loan, MLT and MLP automatically renewed the consumer's membership and continued charging the monthly membership fee.

35.    MLT and MLP attempted to collect and collected loan balances as well as past, unpaid membership fees from consumers—including through electronic notifications and telephonic and email communications regarding missed loan and membership-fee payments, total membership fees owed, and directions to pay those amounts. MLT's customer interfaces and electronic notifications have shown loan balances as well as membership fees as charges owed on a consumer's account.

*Barriers to Membership Cancellation*

36.    For a substantial period, MLT and MLP have represented in contracts that although consumers' memberships renew automatically each month, consumers had the right to cancel their memberships for any reason. MLT and MLP have not explained to many consumers—either when enrolling in the membership program or taking out a Membership-Program Loan—that, contrary to these representations, MLT and MLP maintained a policy prohibiting consumers with unpaid loan balances from canceling their memberships.

37.    And notwithstanding these representations about consumers' right to cancel, in many instances, MLT and MLP have not permitted consumers to cancel

their memberships—even after loan payoff—if they had unpaid membership fees, telling consumers that they could not cancel their memberships until they paid past, unpaid membership fees. The companies have attempted to collect and collected past, unpaid membership fees from numerous consumers after they had paid off their loans.

38.     As a result of these practices, consumers who have taken out loans and then decided that they wanted to cancel their memberships and stop monthly membership-fee charges have not been allowed to do so unless they immediately paid off their loans in full. But many consumers have been financially unable to pay off their loans immediately. And some consumers who had paid off their loans were still prevented from canceling their memberships—until they also paid all past-due membership fees.

39.     In many instances, after consumers had paid off their loans and requested that MLT and MLP release the funds in the consumers' investment or credit-reserve accounts, the companies refused, stating that the consumers still owed membership fees. In some circumstances, MLT and MLP refused to release consumers' account funds until they paid all past, unpaid membership fees. In others, the companies offset consumers' account balances by the amount of unpaid membership fees and only released the remaining funds to the consumers.

40.     For a multi-year period, MLT and MLP prohibited consumers from paying off their loans in full using investment-account funds. When consumers with investment-account balances exceeding their loan balances requested that MLT and MLP apply their investment-account funds to pay off their loans and then cancel their memberships, the companies refused—instead requiring these consumers to pay off their loans using other funds before they could cancel their

memberships, stop membership-fee charges, and access their investment-account funds.

41.     And even after MLT and MLP began allowing some consumers to use investment-account funds to pay off loans, MLT and MLP required them to be in "good standing"—meaning that they would have to pay any past-due membership fees before they could use their investment-account funds to pay off their loans.

42.     In some instances, after consumers paid off their loans and requested membership cancellation, MLT and MLP have charged additional membership fees, asserting that they could not immediately cancel memberships because the consumers' final loan payments were still "pending" or because the companies had not completed liquidating the securities in the consumers' investment accounts.

43.     Many consumers paid membership fees via recurring ACH withdrawals from their personal bank accounts. Some of these consumers requested that MLT and MLP stop further ACH withdrawals of membership fees. But in many instances, MLT and MLP refused to honor the requests. Some consumers then had to contact their banks to attempt to stop the ACH withdrawals. But some consumers have been unable to issue effective stop-payment orders or payment revocations. And even when consumers have successfully stopped payment on one ACH withdrawal, they may have experienced difficulties in blocking future withdrawal attempts.

*Defendants' Suspension of Consumers' Memberships*

44.     MLT and MLP have "suspended" the memberships of consumers with any unpaid membership fees. Consumers with "suspended" memberships lose access to a number of membership features, including access to rewards programs and, for a multi-year period, access to their investment or managed accounts. But

MLT and MLP nevertheless renewed these consumers' memberships each month and continued to charge the full monthly membership fee.

45.     For a multi-year period, MLT and MLP required many consumers to pay all past, unpaid membership fees before lifting membership suspensions and restoring access to all membership features. Consumers who have been able regain full membership access by paying all past, unpaid membership fees have had no way to retroactively access the previously suspended membership features.

46.     For a multi-year period, consumers with suspended memberships were not allowed to use the MoneyLion website or mobile app to pay off their loans or cancel memberships and instead were required to contact MLT and MLP via customer-service lines.

47.     For a substantial period, MLT's and MLP's customer-service telephone lines were dysfunctional. Hold times could exceed an hour or more. There were frequent disconnections (sometimes after long holds). Phone menus malfunctioned, were unhelpful, and made it difficult to speak to a live person. And customer-service representatives were unresponsive.

48.     Many consumers, even those without suspended memberships, who wished to apply a payment toward their loan only (and not toward membership fees or investment-account contributions) were not permitted to do so using the mobile app or website. Such consumers could only make dedicated loan payments by contacting MLT and MLP via customer-service lines.

*Defendants' Membership Programs Provided Few Benefits*
*Other Than Access to Program Loans*

49.     MLT and MLP have offered free membership programs that do not include access to Membership-Program Loans. To access these loans, consumers must join the fee-based membership programs. Other than the loans themselves, the only actual products or services provided to consumers as part of the fee-based memberships—that is, not available under the free memberships—have been: (1) a "members-only Facebook Group" (later discontinued); and (2) credit-monitoring tools, which were initially included in free memberships but then limited to fee-based memberships after mid-2019.

50.     MLT and MLP have marketed "monthly credit reporting," "automated deposits into investment account[s]," and "rewards" programs as additional benefits, products, and services offered as part of their fee-based membership programs. But "monthly credit reporting" is nothing more than routine reporting to credit bureaus regarding a borrower's loan payments and account status. And "automated deposits into investment account[s]" were simply the means by which MLT and MLP collected consumers' mandatory investment-account contributions—deposited into investment accounts to which consumers did not always have access.

51.     The so-called "rewards" programs also provide little benefit to consumers; they simply offset (in some circumstances) part of consumers' monthly membership-fee obligation. MLT and MLP marketed the "rewards programs" to consumers as a way to "earn back" or "recoup" some of the monthly membership fees or get "cashback" by engaging in specified actions each month—including logging in daily to MLT's mobile app and making purchases over $10 using a debit card tied to an MLT-offered account. But consumers who have "earned"

rewards are still obligated to pay full monthly membership fees. And the "reward" is not immediately available to consumers; it is a credit issued to consumers' investment accounts or managed accounts, which many consumers could not readily access. For example, MLT and MLP have not allowed consumers with "suspended" memberships to earn rewards, and for a multi-year period, MLT and MLP did not allow these consumers to access their investment or managed accounts. MLT and MLP also imposed other restrictions limiting consumers' ability to withdraw funds from accounts to which the rewards were credited: minimum-balance requirements and a prohibition on withdrawals that would cause the investment-account balance to dip below the consumers' loan balances.

52.     As a result of MLT's and MLP's practices, many consumers have incurred monthly membership-fee charges for a program that they no longer wanted but were unable to exit. Many consumers have not understood or could not reasonably have understood such consequences of borrowing from MLT and the MoneyLion Lending Subsidiaries when they took out a Membership-Program Loan.

*Loans to MLA Covered Borrowers*

53.     In connection with extensions of consumer credit, the MLA and its implementing regulations contain protections for active-duty servicemembers and their dependents ("covered borrowers"). 10 U.S.C. § 987(i)(1), (2); 32 C.F.R. § 232.3(g). Those protections include a maximum allowable amount of all charges that may be associated with an extension of credit; a prohibition against requiring arbitration; and mandatory loan disclosures. 10 U.S.C. § 987(b), (c), (e)(3); 32 C.F.R. §§ 232.4(b), 232.6, 232.8(c).

54.     Any credit agreement, promissory note, or other contract with a

covered borrower that fails to comply with any provision of the MLA or contains one or more prohibited contract provisions is void from the inception of the contract. 10 U.S.C. § 987(f)(3); 32 C.F.R. § 232.9(c). Department of Defense regulations required newly covered creditors, such as online installment lenders, to bring their operations into compliance with the MLA by October 3, 2016. *See* 32 C.F.R. § 232.12(a).

55.    Since about the fall of 2017, MLT and the MoneyLion Lending Subsidiaries have extended closed-end credit—Membership-Program Loans—to covered borrowers at stated APRs of 5.99% and above. All of these loans constituted "consumer credit" under the MLA because they were offered or extended to covered borrowers primarily for personal, family, or household purposes and were subject to a finance charge. *See* 32 C.F.R. § 232.3(f)(1)(i).

56.    MLT and the MoneyLion Lending Subsidiaries have required covered borrowers to enroll in the ML Plus or Credit-Builder Program and begin paying monthly membership fees (of between $19.99 and $29) before providing access to Membership-Program Loans. MLT and the MoneyLion Lending Subsidiaries have required covered borrowers to maintain their memberships and continue paying monthly membership fees while the loans were active—in addition to charges associated with the stated APRs.

57.    Further, until at least August 2019, all contracts for loans offered by MLT and the MoneyLion Lending Subsidiaries (a) contained mandatory arbitration provisions without exceptions for covered borrowers and (b) lacked disclosures required under the MLA. *See* 10 U.S.C. § 987(c); 32 C.F.R. § 232.6.

**Count One**

*Violation of the MLA: Exceeding the MLA's Rate Cap*
*(Against MLT and the MoneyLion Lending Subsidiaries)*

58.     The Bureau re-alleges and incorporates by reference paragraphs 1 through 57.

59.     The MLA provides that the cost of consumer credit to a covered borrower may not exceed an annual percentage rate of 36%. 10 U.S.C. § 987(b). The annual percentage rate applicable to extensions of credit to covered borrowers is called the Military Annual Percentage Rate or MAPR. 32 C.F.R. §§ 232.3(p), 232.4. For closed-end credit transactions—such as the Membership-Program Loans that MLT and the MoneyLion Lending Subsidiaries made to covered borrowers—the MAPR is calculated following the rules for calculating and disclosing the "Annual Percentage Rate (APR)" for credit transactions under Regulation Z, 12 C.F.R. pt. 1026.

60.     The MLA also requires that certain charges, costs, and fees be included in MAPR calculations. 32 C.F.R. § 232.4(c). Under the MLA's implementing regulation, "charges for the MAPR shall include, as applicable to the extension of consumer credit: . . . [a]ny fee imposed for participation in any plan or arrangement for consumer credit." 32 C.F.R. § 232.4(c)(1)(iii)(C). The regulation states that such a participation fee "shall be included in the calculation of the MAPR even if that charge would be excluded from the finance charge under Regulation Z." 32 C.F.R. § 232.4(c)(1)(iv).

61.     The MLA prohibits creditors such as MLT and the MoneyLion Lending Subsidiaries from imposing an MAPR greater than 36% in connection with an extension of closed-end consumer credit to a covered borrower. 32 C.F.R. § 232.4(b).

62.     Because Defendants have required covered borrowers to enroll in membership programs and pay membership fees to obtain Membership-Program Loans and have required covered borrowers to maintain their memberships and continue paying the monthly fees over the life of the loans, these membership fees qualify as fees "imposed for participation in any plan or arrangement for consumer credit." And accordingly, the MLA requires that such charges be included in the calculation of the loans' MAPR.

63.     Including the monthly membership fees in the MAPR calculation results in all Membership-Program Loans imposing MAPRs greater than 36%.

64.     MLT and the MoneyLion Lending Subsidiaries have violated the MLA each time they have made such a loan to a covered borrower.

## Count Two
*Violation of the MLA: Requiring Covered Borrowers to Submit to Arbitration*
*(Against MLT and the MoneyLion Lending Subsidiaries)*

65.     The Bureau re-alleges and incorporates by reference paragraphs 1 through 57.

66.     The MLA makes it unlawful for any creditor to extend consumer credit to a covered borrower with respect to which the creditor requires the borrower to submit to arbitration in the case of a dispute. 10 U.S.C. § 987(e)(3); 32 C.F.R. § 232.8(c).

67.     From about the fall of 2017 until at least August 2019, MLT and the MoneyLion Lending Subsidiaries made loans to covered borrowers by way of loan contracts requiring the borrowers to submit to arbitration in the case of a dispute, without exceptions for covered borrowers.

68.     MLT and the MoneyLion Lending Subsidiaries violated the MLA each time they made such a loan to a covered borrower.

**Count Three**
*Violation of the MLA: Failing to Make Disclosures to Covered Borrowers*
*(Against MLT and the MoneyLion Lending Subsidiaries)*

69.     The Bureau re-alleges and incorporates by reference paragraphs 1 through 57.

70.     The MLA requires creditors that extend consumer credit to covered borrowers to make certain loan disclosures before or at the time the borrower becomes obligated on the transaction or establishes an account for the consumer credit. 10 U.S.C. § 987(c); 32 C.F.R. § 232.6(a). The mandatory loan disclosure must include a statement of the MAPR applicable to the extension of consumer credit. 10 U.S.C. § 987(c)(1)(A); 32 C.F.R. § 232.6(a)(1).

71.     From about the fall of 2017 until at least August 2019, MLT and the MoneyLion Lending Subsidiaries made loans to covered borrowers without making all loan disclosures required by the MLA.

72.     MLT and the MoneyLion Lending Subsidiaries violated the MLA each time they made such a loan to a covered borrower.

**Count Four**
*Violation of the CFPA: Deceptive Acts and Practices Regarding Loan Balances*
*and Membership Fees Not Owed by Covered Borrowers*
*(Against All Defendants)*

73.     The Bureau re-alleges and incorporates by reference paragraphs 1 through 72.

74.     Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as MLT, MLP, and the MoneyLion Lending Subsidiaries, from engaging in deceptive acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. Information is material to

consumers if it is likely to affect a consumer's conduct regarding the product or service.

75.    Under the MLA regulation, "[a]ny credit agreement, promissory note, or other contract with a covered borrower that fails to comply with [the MLA] as implemented by this part or which contains one or more provisions prohibited under the MLA as implemented by this part is void from the inception of the contract." 32 C.F.R. § 232.9(c). *See also* 10 U.S.C. § 987(f)(3).

76.    Membership-Program-Loan contracts with covered borrowers have failed to comply with the MLA by (a) imposing MAPRs over 36%, 10 U.S.C. § 987(b), 32 C.F.R. § 232.4(b); (b) requiring covered borrowers to submit to arbitration, 10 U.S.C. § 987(e)(3); 32 C.F.R. § 232.8(c); and (c) failing to make loan disclosures required by the MLA, 10 U.S.C. § 987(c); 32 C.F.R. § 232.6(a). Accordingly, all Membership-Program-Loan contracts with covered borrowers were void from the inception of those contracts, and covered borrowers do not owe any principal or interest under those contracts and have no obligation to pay any of those amounts. And because these loans were void and not otherwise subject to repayment obligation, nor were these covered borrowers obligated to continue their memberships until loan payoff or pay membership fees resulting from this purported obligation.

77.    Nevertheless, Defendants have serviced and collected Membership-Program Loans (as well as associated membership fees) issued to covered borrowers and told them via the MoneyLion website and mobile app as well as email and telephone that loan balances (including principal and interest) and fees are due and owed. Defendants have expressly or impliedly represented that they are legally entitled to demand and receive all principal, interest, and fees; that they

are legally authorized to collect the associated payments; and that covered borrowers are legally obligated to pay the full amounts.

78.     These representations and omissions were likely to mislead covered borrowers acting reasonably under the circumstances regarding their obligations to MLT, MLP, and the MoneyLion Lending Subsidiaries. The representations and omissions were material to covered borrowers deciding whether to pay the loans or any associated membership fees.

79.     MLT, MLP, and the MoneyLion Lending Subsidiaries therefore have engaged in deceptive acts or practices that violated §§ 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

**Count Five**

*Violation of the CFPA: Deceptive Acts and Practices Relating to
Restrictions on Membership Cancellation
(Against MLT and MLP)*

80.     The Bureau realleges and incorporates by reference paragraphs 1 through 57.

81.     Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as MLT and MLP, from engaging in deceptive acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. Information is material to consumers if it is likely to affect a consumer's conduct regarding the product or service.

82.     MLT and MLP have represented to many consumers enrolling in the membership programs that although consumers' memberships would renew automatically each month, consumers had the right to cancel their memberships for any reason (and thereby avoid such automatic renewals and associated membership

fees).

83.    MLT and MLP have not explained to many consumers—either when enrolling in the membership program or taking out a Membership-Program Loan— that, contrary to these representations, in numerous instances MLT and MLP would not in fact permit consumers with unpaid loan balances to cancel their memberships—that is, stop the automatic renewal of their memberships and recurring membership-fee charges.

84.    MLT and MLP also have not explained to many consumers—either when enrolling in the membership program or taking out a Membership-Program Loan—that, contrary to these representations, in many instances MLT and MLP would not permit consumers to cancel their memberships (and stop automatic renewals and recurring membership-fee charges) even after loan payoff if they had unpaid membership fees.

85.    These representations and omissions were likely to mislead consumers acting reasonably under the circumstances about their ability to cancel memberships and stop membership-fee charges. The representations and omissions were material because they were likely to affect the conduct or decisions of consumers regarding whether to enroll in a membership program or take out a Membership-Program Loan.

86.    MLT and MLP therefore have engaged in deceptive acts or practices that violated §§ 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

**Count Six**

*Violation of the CFPA: Unfair Acts and Practices Relating to
Membership-Fee Charges After Consumer Requests to Cancel Membership
(Against MLT and MLP)*

87.     The Bureau realleges and incorporates by reference paragraphs 1
through 57.

88.     Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as
MLT and MLP, from engaging in unfair acts or practices. 12 U.S.C.
§ 5536(a)(1)(B). Under § 1031(c) of the CFPA, an act or practice is unfair if it
causes or is likely to cause substantial injury to consumers which is not reasonably
avoidable by consumers, and such substantial injury is not outweighed by
countervailing benefits to consumers or to competition. 12 U.S.C. §§ 5531(c),
5536(a)(1)(B).

89.     After taking out a Membership-Program Loan, many consumers have
decided that they want to cancel their memberships and stop monthly membership-
fee charges. But MLT and MLP have not allowed consumers to cancel their
memberships and stop membership-fee charges while the consumers have unpaid
loan balances, and MLT and MLP have continued to charge and collect those fees.

90.     As a result, consumers who wish to cancel their memberships but are
financially unable to immediately pay off their loans have incurred multiple fees
for a membership program that they no longer wanted—and in many instances
asked to terminate. The accumulating monthly membership fees—of $19.99 to
$29—have caused substantial injury.

91.     Consumers could not reasonably avoid such membership-fee charges.
Once a consumer takes out a Membership-Program Loan, the only way to stop
recurring membership fees is to pay off the loan in full, and many consumers who

wish to cancel their memberships and stop membership-fee charges have been financially unable to immediately pay off their loans.

92.    Many consumers could not have reasonably avoided this circumstance because for a substantial period, MLT and MLP represented in contracts that consumers had the right to cancel their memberships for any reason and did not make clear that in numerous instances MLT and MLP would not in fact permit consumers with unpaid loan balances to cancel their memberships.

93.    MLT and MLP have also engaged in other practices that have impeded consumers' ability to reasonably avoid recurring membership-fee charges, including:

   a.     refusing to allow consumers to cancel memberships by paying off their loans in full using funds in their investment accounts or refusing to do so until consumers had paid past-due membership fees;

   b.    telling consumers with paid-off loans that they must pay any past-due membership fees before they could cancel their memberships;

   c.    using consumers' investment and credit-reserve accounts to extract unpaid membership fees after consumers had paid off their loans;

   d.    refusing to honor consumers' requests to stop ACH withdrawals of membership fees; and

   e.    suspending the memberships of consumers with unpaid membership fees and thereby cutting off these consumers' access to their investment or managed accounts and to some membership features (including the ability to participate in rewards programs to offset fee charges) while still charging the full monthly membership fee.

94.    The injury to consumers was not outweighed by countervailing benefits to consumers or competition. Other than the loans themselves, consumers received little of value in exchange for the mandatory, recurring fees for a membership program that they no longer wanted—fees that were 15 to 20 times greater than the interest charged on a typical 12-month Membership-Program Loan offered by Defendants.

95.    MLT and MLP therefore have engaged in unfair acts or practices that violated §§ 1031(c) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(c), 5536(a)(1)(B).

### Count Seven
*Violation of the CFPA: Abusive Acts and Practices Relating to
Membership-Program Loans
(Against MLT and MLP)*

96.    The Bureau realleges and incorporates by reference paragraphs 1 through 57.

97.    Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as MLT and MLP, from engaging in abusive acts or practices. 12 U.S.C. § 5536(a)(1)(B). Under § 1031(d)(2)(A)–(B) of the CFPA, a practice is abusive if it takes unreasonable advantage of (a) consumers' lack of understanding of the material risks, costs, or conditions of a financial product or service; or (b) consumers' inability to protect their interests in using a financial product or service. 12 U.S.C. § 5531(d)(2)(A), (B).

98.    MLT and MLP would not allow consumers with active loans to cancel their memberships and stop monthly membership-fee charges. Many consumers who took out Membership-Program Loans have lacked understanding of this material risk, cost, or condition of their Membership-Program Loans.

99.     After taking out Membership-Program Loans, many consumers have become unable to protect their interests in using this product or service. The only way for consumers to cancel the membership and stop the accumulation of monthly membership-fee charges is to immediately pay off the loan in full. But many consumers have been financially unable to do so.

100.    MLT and MLP have taken unreasonable advantage of consumers' lack of understanding and inability to protect their interests in the following ways:

a.      refusing to allow consumers to exit the membership program and refusing to cease membership-fee charges (and the monthly accumulation of such fees) unless consumers pay off their loans in full, which many consumers have been financially unable to immediately do;

b.      refusing to allow consumers to cancel memberships by paying off their loans in full using funds in their investment accounts or refusing to do so until consumers had paid past-due membership fees;

c.      telling consumers with paid-off loans that they must pay any past-due membership fees before they could cancel their memberships;

d.      using consumers' investment and credit-reserve accounts to extract unpaid membership fees after consumers had paid off their loans, either by refusing to release the account funds until consumers had paid past, unpaid fees or by offsetting the account balance in the amount of the unpaid fees;

e.      refusing to honor consumers' requests to stop ACH withdrawals of membership fees;

f.      suspending the memberships of consumers with unpaid membership fees and thereby cutting off these consumers' access to their

investment or managed accounts and to some membership features
(including the ability to participate in rewards programs to offset fee
charges) while still charging the full monthly membership fee, and, for a
multi-year period, not lifting many consumers' membership suspensions
until they had paid all past, unpaid membership fees;

   g. maintaining dysfunctional customer-service lines that made it
difficult for consumers to pay off their loans, cancel their memberships, stop
membership-fee charges, or make dedicated loan payments—particularly
consumers with suspended memberships who, for a multi-year period, were
not permitted to perform these functions via the website or mobile app and
were required to use the customer-service lines; and

   h. in some instances, charging additional membership fees after
consumers paid off their loans and requested membership cancellation,
asserting that memberships could not immediately be canceled because the
consumers' final loan payments were still "pending" or because the
companies had not completed liquidating the securities in the consumers'
investment accounts.

 101. MLT and MLP therefore have engaged in abusive acts or practices
that violated §§ 1031(d)(2)(A), (B) and 1036(a)(1)(B) of the CFPA. 12 U.S.C.
§§ 5531(d)(2)(A), 5531(d)(2)(B), 5536(a)(1)(B).

### Demand for Relief

The Bureau requests that the Court:

   a. permanently enjoin all Defendants from committing future
violations of the MLA and CFPA;

   b. grant additional injunctive relief as the Court deems just and

proper;

c.    order all Defendants to pay damages, restitution, and other monetary relief to consumers;

d.    order disgorgement or compensation for unjust enrichment;

e.    impose on all Defendants civil money penalties;

f.    award costs against all Defendants; and

g.    award additional relief as the Court deems just and proper.

Respectfully submitted,

Eric Halperin
*Enforcement Director*
Alusheyi J. Wheeler
*Deputy Enforcement Director*
Kara K. Miller
*Assistant Litigation Deputy*

/s/Maxwell Peltz
Maxwell S. Peltz (CA Bar No. 183662)
Motion for Admission Pro Hac Vice pending
Lane C. Powell (MI Bar No. P79432)
Motion for Admission Pro Hac Vice pending
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Peltz): 415-633-1328
Telephone (Powell): 415-844-9784
Fax: 703-642-4585
maxwell.peltz@cfpb.gov
lane.powell@cfpb.gov

*Attorneys for the Consumer Financial Protection Bureau*

Complaint
Case No. 1:22-cv-8308