**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Consumer Financial Protection Bureau,

Plaintiff,

v.

MoneyLion Technologies Inc., ML Plus, LLC, MoneyLion of Alabama LLC, MoneyLion of Arizona LLC, MoneyLion of California LLC, MoneyLion of Colorado LLC, MoneyLion of Connecticut LLC, MoneyLion of Delaware LLC, MoneyLion of Florida LLC, MoneyLion of Georgia LLC, MoneyLion of Idaho LLC, MoneyLion of Illinois LLC, MoneyLion of Indiana LLC, MoneyLion of Kansas LLC, MoneyLion of Kentucky LLC, MoneyLion of Louisiana LLC, MoneyLion of Maryland LLC, MoneyLion of Michigan LLC, MoneyLion of Minnesota LLC, MoneyLion of Mississippi LLC, MoneyLion of Missouri LLC, MoneyLion of Nevada LLC, MoneyLion of New Jersey LLC, MoneyLion of New Mexico LLC, MoneyLion of New York LLC, MoneyLion of North Carolina LLC, MoneyLion of North Dakota LLC, MoneyLion of Ohio LLC, MoneyLion of Oklahoma LLC, MoneyLion of Oregon LLC, MoneyLion of South Carolina LLC, MoneyLion of South Dakota LLC, MoneyLion of Tennessee LLC, MoneyLion of Texas LLC, MoneyLion of Utah LLC, MoneyLion of Virginia LLC, MoneyLion of Washington LLC, MoneyLion of Wisconsin LLC, and MoneyLion of Wyoming LLC,

Defendants.

No. 1:22-CV-8308-JPC

Judge John P. Cronan

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 1

I. The CFPB's funding structure violates the Appropriations Clause .................................... 1

II. This case involves a two-fold violation of the nondelegation doctrine .............................. 3

III. The MLA Rule violates both the MLA and the APA ........................................................ 4

A. The MLA Rule violates the MLA's statutory text ........................................................ 4

B. The MLA Rule is arbitrary and capricious .................................................................. 7

IV. The Court should dismiss the Complaint because it fails to state a claim .......................... 8

A. The Complaint fails to establish the purpose of the loans (all Counts) ......................... 8

B. The CFPB fails to show the loans violate the MAPR cap (Count One) ........................ 9

1. The Complaint fails to identify any specific loan with an MAPR that exceeds 36% based on the existence of membership fees ...................................... 9

2. The Complaint fails to allege plausible facts showing that "membership fees" must be included in the MAPR calculation for each loan ............................ 10

i. The Complaint fails to show that MoneyLion *imposed* the fees ..................... 10

ii. The CFPB cannot show that fees are imposed "for participation in any plan or arrangement for consumer credit" ...................................................... 11

C. The CFPB cannot state a claim related to arbitration (Count Two) ............................ 12

1. The Complaint incorporates the arbitration agreement by reference and, thus, the Court can consider the agreement at the 12(b)(6) stage .......................... 12

2. There are multiple reasons the agreement does not violate the MLA .................. 13

D. The CFPB cannot state a claim related to disclosures (Count Three) ......................... 15

CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Casa De Md. v. U.S. Dep't of Homeland Sec.*,
924 F.3d 684 (4th Cir. 2019) .......... 8

*CFPB v. Intercept Corp.*,
No.3:16-cv-144, 2017 WL 3774379 (D.N.D. Mar. 17, 2017) .......... 10

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) .......... 1, 2

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) .......... 2

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
___ F. Supp. 3d ___, 2022 WL 17342495 (S.D.N.Y. 2022) .......... 11

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) .......... 7

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .......... 15

*Fischer v. Fannie Mae*,
302 F. Supp. 3d 1327 (S.D. Fla. 2018) .......... 9

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010) .......... 2

*Garrett v. Monterey Fin. Servs., LLC*,
No.JKB-18-325, 2018 WL 3579856 (D. Md. July 25, 2018) .......... 14

*Gundy v. United States*,
139 S. Ct. 2116 (2019) .......... 3

*In re Cherrett*,
873 F.3d 1060 (9th Cir. 2017) .......... 9

*MassMutual Asset Fin. LLC v. ACBL River Operations, LLC*,
220 F. Supp. 3d 450 (S.D.N.Y. 2016) .......... 10

*Nat'l Ass'n for the Advancement of Colored People v. Trump*,
298 F. Supp. 3d 209 (D.D.C. 2018) .......... 8

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .......... 12, 13

*OPM v. Richmond*,
496 U.S. 414 (1990) .......... 2

*Res-Care, Inc. v. United States*,
735 F.3d 1384 (Fed. Cir. 2013) .......... 11

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ........ 13

*Schiller v. Tower Semiconductor Ltd.*,
449 F.3d 286 (2d Cir. 2006) ........ 7

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) ........ 7

*Seila Law LLC v. CFPB*,
140 S. Ct. 2183 (2020) ........ 3, 4

*Tavenner v. IBM Corp.*,
No.21-CV-6345, 2022 WL 4449215 (S.D.N.Y. Sept. 23, 2022) ........ 13

*Touby v. United States*,
500 U.S. 160 (1991) ........ 4

*U.S. Dep't of Navy v. Fed. Lab. Relations Auth.*,
665 F.3d 1339 (D.C. Cir. 2012) ........ 2

*W. Coal Traffic League v. Surface Transp. Bd.*,
998 F.3d 945 (D.C. Cir. 2021) ........ 7, 8

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022) ........ 6

**Constitutional Provisions**

U.S. Const. art. I, § 9 ........ 3

**Statutes**

10 U.S.C. § 987 ........ 4, 5, 6, 14

12 U.S.C. § 5497 ........ 3

12 U.S.C. § 5531 ........ 4

15 U.S.C. § 1606 ........ 4

31 U.S.C. § 1341 ........ 3

31 U.S.C. § 1349 ........ 3

**Regulations**

12 C.F.R. § 226.4 ........ 11

12 C.F.R. § 1026.4 ........ 6

32 C.F.R. § 232.4 ........ 10, 11

32 C.F.R. § 232.8 ........ 15

80 Fed. Reg. 43,560, 43,572 (July 22, 2015) ........ 8, 15

**Other Authorities**

OED Online (3d ed. Dec. 2022)........................................................................................... 5
U.S. Supreme Court, Orders List (Feb. 27, 2023) ........................................................................ 1

## INTRODUCTION

The CFPB's opposition fails to salvage its fundamentally flawed Complaint, which seeks to deny consumers, especially servicemembers and their families, the right to choose between MoneyLion's innovative and valuable membership programs. As to its unprecedented, unconstitutional funding structure, the CFPB takes an indefensible position that would nullify the Constitution's Appropriations Clause. The CFPB has no response to MoneyLion's argument that Congress has not exercised its appropriations power to fund the CFPB's operations, including the agency's filing of this meritless lawsuit. The CFPB also fails to rebut MoneyLion's showing that this action stems from a two-fold violation of the nondelegation doctrine. The CFPB then ties itself in knots to defend the MLA Rule, making convoluted arguments contrary to the MLA's text.

The CFPB's arguments about the merits of its claims also fall short. For example, the CFPB ignores the reality that no covered servicemember has been forced to arbitrate any dispute with MoneyLion. Or that MoneyLion has never forced consumers to enroll in memberships and incur membership fees. Finally, the CFPB simply fails to engage on the point that, given the broad suite of benefits MoneyLion provides to members, membership fees cannot be entirely attributed to one product in the suite—the option to apply for a loan.

## ARGUMENT

### I. The CFPB's funding structure violates the Appropriations Clause

The CFPB's unprecedented, "self-actualizing, perpetual funding mechanism," *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 638 (5th Cir. 2022) ("*CFSAA*")[1]—which is both doubly-insulated "from Congress's purse strings" and "expressly exempt from budgetary

[1] On February 27, 2023, the U.S. Supreme Court granted review in *CFPB, et al. v. Cmty. Fin. Servs. Ass'n of Am., et al.*, No.22-448, on the question of whether the CFPB's funding structure violates the Appropriations Clause. *See* U.S. Supreme Court, Orders List (Feb. 27, 2023).

review"—violates the Appropriations Clause, requiring dismissal. MoneyLion Br.9–10.

Contrary to the CFPB's claim, the problem with its funding structure is not that Congress failed to fund the CFPB through "annual spending bills," CFPB Resp.4-6, but that the CFPB's funding involves *no appropriations at all* and is thus effectively insulated from any congressional oversight through its power of the purse. "A law alone does not suffice—an *appropriation* is required." *CFSAA*, 51 F.4th at 640 (emphasis in original). And the statute establishing CFPB's perpetual funding mechanism is not an "appropriation made by law." *OPM v. Richmond*, 496 U.S. 414, 424 (1990). The CFPB takes the extraordinary position that the Appropriations Clause only requires that Congress pass a statute authorizing an agency funding stream of any type and duration. CFPB Resp.4–5. But that would destroy the Clause's central role as a "bulwark" of our separation of powers, *U.S. Dep't of Navy v. Fed. Lab. Relations Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.), by allowing perpetual self-funding of agencies, with multiple layers of insulation from congressional oversight. Here, the CFPB is doubly insulated, *see Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495–96 (2010), from Congress' constitutional power of the purse and entirely removed from the budgetary review process. This structure places it far afield from the "handful of other agencies [that] are also self-funded," which the CFPB invokes in its own defense. *See CFSAA*, 51 F.4th at 641.

All of the CFPB's various arguments as to remedy also miss the mark. For example, severing the back-end budgeting review process provisions, CFPB Resp.7, would not cure the constitutional problem that the CFPB is doubly insulated from the appropriations process itself. But, in any event, and independently fatal to the CFPB's arguments, severance would not provide the retroactive relief that MoneyLion is entitled to under *Collins v. Yellen*, for the "compensable harm" that the CFPB's unconstitutional operations have inflicted through this lawsuit. 141 S. Ct.

1761, 1789 (2021). The CFPB's argument that no remedy is warranted under *Collins* unless MoneyLion can show the CFPB "would have acted differently had it been funded by . . . a 'valid' appropriation" makes no sense. CFPB Resp.7 (citation omitted). Congress failed to exercise its appropriations power to "fund[ ]" the CFPB's operations, *id.*, which includes the failure to appropriate funds to pay for this abusive and meritless lawsuit. Finally, the CFPB cites other remedies, CFPB Resp.7 & n.34, such as "administrative discipline" that Congress has crafted, 31 U.S.C. § 1349(a). But these arose in completely different contexts, and all involve misuse of funds that *were* "appropriat[ed]," 31 U.S.C. § 1341(a)(1), which makes these provisions irrelevant here.

**II. This case involves a two-fold violation of the nondelegation doctrine**

The Court should dismiss this lawsuit, in whole or in part, for either of two separate violations of the nondelegation doctrine.

*First*, Congress violated the nondelegation doctrine by handing over its appropriations authority to the CFPB, allowing the CFPB to choose for itself how much funding to self-appropriate based only upon its own decision that the funding is "reasonably necessary" for the CFPB's massive operations. 12 U.S.C. § 5497(a)(1); MoneyLion Br.12–13. The CFPB argues that the nondelegation doctrine does not apply to Congress' complete delegation of its appropriations authority to the CFPB, but the nondelegation doctrine prohibits Congress from delegating "powers which are strictly and exclusively legislative," *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (citation omitted), and the Appropriations Clause directs legislative authority solely to Congress, U.S. Const. art. I, § 9. The CFPB's attempt to defend this enormous delegation on its merits fails. CFPB Resp.8. Given the CFPB's vast portfolio, *see Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2193 (2020), the Director could defend almost any amount as "reasonably necessary," 12 U.S.C. § 5497(a)(1). So Congress' use of that illusory phrase provides

no "intelligible principle" for the CFPB to determine its own funding. *Touby v. United States*, 500 U.S. 160, 165 (1991) (citation omitted).

*Second*, Congress unconstitutionally delegated to the CFPB expansive authority over the economy by enforcing the terms unfair, deceptive, and abusive. MoneyLion Br.13–14. The CFPB contends that the nondelegation doctrine does not apply to this conduct because enforcement is an executive, not a legislative, act. CFPB Resp.8–9. But this assertion misses the point: the CFPB claims for itself the authority first to define what qualifies as "unfair, deceptive, or abusive," and then to enforce its own definition of those open-ended terms. 12 U.S.C. § 5531(a)–(b); Dkt.1 ¶¶ 69–101. If the nondelegation doctrine has any force, it means that the agency cannot impose "knee-buckling penalties" based on the CFPB's claimed authority to interpret such vague terms, especially the statutorily undefined term "deceptive." *See Seila Law*, 140 S. Ct. at 2191, 2202 n.8.

## III. The MLA Rule violates both the MLA and the APA

### A. The MLA Rule violates the MLA's statutory text

The MLA Rule violates the MLA by forcing creditors to include bona fide participation fees in the APR calculation for many credit products. MoneyLion Br.16–17. The MLA requires its APR to have "the same meaning" as in TILA and Regulation Z, which together properly recognize that bona fide fees for participating in credit plans are not included in the "finance charge" component of consumer credit APRs. MoneyLion Br.17.[2] The MLA Rule nevertheless includes bona fide participation fees for all credit products, except credit cards, within the calculation of the MAPR. MoneyLion Br.17. While the DOD has the authority to promulgate regulations to carry out the MLA, 10 U.S.C. § 987(h)(1), it cannot contradict the MLA's

[2] Finance charges, not interest, are the primary input when determining APR under TILA and therefore the MLA. *Compare* 15 U.S.C. § 1606(a), *with* CFPB Resp.11 (arguing that interest should determine APR under the MLA).

incorporation of TILA and Regulation Z, or the MLA's manifest design, by requiring the inclusion of such bona fide fees in the MAPR calculation. MoneyLion Br.17–18.

The CFPB attempts to salvage the MLA Rule by arguing that the MLA merely requires APR to be calculated using TILA's "methodology." CFPB Resp.10–11. But this attempt to rewrite the statute contravenes, ironically, the meaning of the phrase "same meaning," while also being incompatible with other aspects of the MLA's text and basic canons of statutory interpretation. The MLA states that its APR has the "same *meaning* as in section 107 of the Truth and Lending Act, as implemented by regulations of the Board of Governors of the Federal Reserve System [e.g., Regulation Z]," thereby cross-referencing TILA and Regulation Z. 10 U.S.C. § 987(i)(4) (emphasis added). This requires the MLA's APR to have the same "[s]ignificance, import[, or] implication," *Meaning*, OED Online (3d ed. Dec. 2022),[3] as that term is used in TILA and Regulation Z. Atextually rewriting "same meaning" as "same methodology" also ignores Congress' use of closely analogous terms in this same statute. When Congress meant to refer to the "method" for calculating an APR, it knew how to do so. For example, in Section 987(h)(2)(B), the MLA requires the DOD to prescribe rules establishing "[t]he *method* for calculating the applicable annual percentage rate of interest." 10 U.S.C. § 987(h)(2)(B) (emphasis added).

The CFPB misses the mark when it ultimately rests its argument on the second sentence of the MLA's APR definition, which states that APR "includes all fees and charges, including charges and fees for single premium credit insurance and other ancillary products sold in connection with the credit transaction." 10 U.S.C. § 987(i)(4). The CFPB claims this second sentence mandates the inclusion of all fees and charges that are connected to MoneyLion's entire *membership program* in the APR calculation, including aspects of membership having nothing to do with the

[3] Accessible at https://www.oed.com/view/Entry/115465.

extension of the credit. CFPB Resp.11. The CFPB's reading of this sentence in isolation ignores the statutory context, and leads to absurd results that, as noted below, even the DOD rejected in the MLA Rule. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022). The MLA first explains that APR must have the "same meaning" as TILA and Regulation Z, 10 U.S.C. § 987(i)(4), which exclude participation fees from the definition of "finance charge" and the APR calculation, 12 C.F.R. § 1026.4(c)(4). Only then does the MLA note that the "term [APR] includes all fees and charges." 10 U.S.C. § 987(i)(4). Reading these adjacent sentences together, the only plausible conclusion is that Congress intended that only fees and charges connected to the extension of the credit itself be included in the APR, consistent with TILA and Regulation Z's treatment of fees and charges. *See* 12 C.F.R. § 1026.4(c)(1)–(c)(4) (providing that certain fees and charges, including participation fees, are not finance charges included in the APR).

The CFPB offers no basis to conclude that Congress would have adopted its reading of the MLA, given the nonsensical consequences of that reading; indeed, even the DOD necessarily rejected the CFPB's extreme position (with respect to credit cards). If creditors had to include all bona fide fees remotely related to the credit product in their APR calculations, as the CFPB now claims, CFPB Resp.11–12, the illogical result would be that servicemembers and their families would lose access to many widely offered rewards and points programs. After all, financial companies often include the benefits in connection with credit products, while charging participation fees as bona fide payment for these valuable rewards and benefits. Notably, and entirely devastating to the CFPB's argument, its reading of the MLA—requiring the inclusion of bona fide participation fees in the APR by (mis)using the phrase "all fees and charges," CFPB Resp.11—would invalidate the MLA Rule itself. As previously noted, the MLA Rule excludes bona fide participation fees for credit cards. MoneyLion Br.17–18. So, if the CFPB's implausible

reading of the MLA's "all fees and charges" language were correct, the MLA Rule would be invalid for excluding participation fees from the calculation of the MAPR for credit cards. That would take away from servicemembers and their families many of the nearly universal credit card points and travel-reward programs that innumerable consumers enjoy and greatly benefit from. And because the DOD did not adopt—and implicitly rejected—the CFPB's misinterpretation of "all fees and charges" in the MLA Rule, the CFPB cannot rely upon this interpretation to salvage the Rule under *SEC v. Chenery Corp.*, 318 U.S. 80, 92–95 (1943).[4]

**B. The MLA Rule is arbitrary and capricious**

The MLA Rule is also arbitrary and capricious because it discriminates between credit cards and all other forms of consumer credit without a reasonable justification, providing an independent basis for invalidating the relevant part of the MLA Rule. MoneyLion Br.18–21.

As a threshold matter, the CFPB is wrong to argue that this challenge is time-barred. CFPB Resp.12. "[S]ubstantive challenges to agency action" have no relevant "time bars." *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 293 (2d Cir. 2006). And an "arbitrary and capricious" challenge arises from a "substantive command" of the APA. *W. Coal Traffic League v. Surface Transp. Bd.*, 998 F.3d 945, 955 n.9 (D.C. Cir. 2021). That stands in contrast to procedural arguments, which concern "the internal thought process by which an agency decisionmaker reaches a rational decision." *Id*. MoneyLion challenges the discriminatory, arbitrary treatment of non-credit cards products, not the DOD's internal thought processes in creating the rule.[5]

---

[4] At minimum, because the CFPB is attempting to defend the MLA Rule on grounds found nowhere in the Rule itself—and which, instead, contradict the Rule—the CFPB's invocation of any form of deference to the DOD, including *Chevron* deference, is entirely misplaced. *See* CFPB Resp.9–10.

[5] *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016), CFPB Resp.12 & n.66, is not to the contrary. *Encino* mentioned in dicta that arbitrary-and-capricious challenges were "procedural" only for purposes of deciding whether *Chevron* deference applied, 579 U.S. at 221–22, and courts thereafter have properly

Turning to the merits, the CFPB's defense of the MLA Rule's discriminatory provisions fails. CFPB Resp.13–14. The CFPB does not rebut MoneyLion's point that non-credit card products regularly offer the same *genuine* value for bona fide participation fees, meaning that it is arbitrary and capricious for the DOD to categorically disfavor non-credit card products. CFPB Resp.13. Indeed, all the reasons the CFPB offers for excluding participation fees for credit cards—built-in pricing mechanisms, the possibility of "dramatic changes" to the terms and availability of credit card products to servicemembers and their families, that fees for specific products or services can be distinguished from the cost of borrowing, and the like, CFPB Resp.14—apply with equal force to other types of credit, including credit included in MoneyLion's membership program. MoneyLion Br.18–20. And the CFPB's curt discussion of the CARD Act's additional protections for credit card users as support for treating credit cards differently similarly fails. *See* CFPB Resp.15–16. Nowhere does the CFPB explain which aspects of the CARD Act's protections are a useful or necessary supplement to the MLA Rule, or if the DOD ever considered whether similar protections could have been adopted for all credit products covered by the MLA Rule itself. *See* 80 Fed. Reg. 43,560, 43,572 (July 22, 2015).

## IV. The Court should dismiss the Complaint because it fails to state a claim

### A. The Complaint fails to establish the purpose of the loans (all Counts)

The Complaint fails to allege plausibly that every loan at issue constitutes credit "primarily for personal, family, or household purposes." MoneyLion Br.22–24. In response, the CFPB asks the Court to assume that because many loans are geared toward consumers, then they must be for a required purpose. That is not the law. Courts have repeatedly held that simply because a debt

declined to apply this dicta outside of that specific *Chevron* context, *see, e.g.*, *W. Coal Traffic League*, 998 F.3d at 954–55; *Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 703 (4th Cir. 2019); *Nat'l Ass'n for the Advancement of Colored People v. Trump*, 298 F. Supp. 3d 209, 236–39 (D.D.C. 2018).

involves a consumer, that does not automatically mean the debt is for personal, family, or household purposes. *See, e.g.*, *In re Cherrett*, 873 F.3d 1060, 1068–69 (9th Cir. 2017) (the consumer loan at issue was not a personal, family, or household loan because it had business motivations); *Fischer v. Fannie Mae*, 302 F. Supp. 3d 1327, 1331–32 (S.D. Fla. 2018) (a consumer loan was not for required purposes when the funds were used in connection with business).

The CFPB tries to distinguish these cases interpreting identical "purpose" language from the FDCPA based on an untenable distinction between the purposes for which a consumer incurs a debt and the purposes for which a creditor offers a loan. CFPB Resp.18. There is no legally relevant difference between those purposes—both hinge on how the consumer uses the credit. The CFPB cannot show a loan was used for an enumerated purpose simply by arguing the loan was for a consumer. Despite years of investigation, the CFPB has failed to meet that basic element.

**B. The CFPB fails to show the loans violate the MAPR cap (Count One)**

The Court should dismiss Count One because the CFPB fails to: (1) plausibly identify a single loan that exceeds the 36% MAPR threshold; or (2) plausibly allege that membership fees must be included in the MAPR calculation. MoneyLion Br.25–29.

**1. The Complaint fails to identify any specific loan with an MAPR that exceeds 36% based on the existence of membership fees**

Count One alleges that MoneyLion's membership fee structure results in "all Membership-Program Loans imposing MAPRs greater than 36%." Dkt.1 ¶ 63. As a result, the CFPB needs to introduce facts showing actual loans with an unlawful MAPR. The CFPB fails to do so.

Instead, the CFPB argues that it need not "include specific calculations that input individual APRs, loan amounts, and fees" because those can vary by loan and over time. CFPB Resp.24–25. But that is MoneyLion's point. The CFPB has investigated MoneyLion for years and is alleging that the membership fee structure results in *every* MoneyLion loan violating the MLA Rule. Yet

the Complaint does not point to a single specific loan, or even a potential subset of loans, that is allegedly unlawful. This lacking is fatal to the Complaint. *See, e.g.*, *CFPB v. Intercept Corp.*, No.3:16-cv-144, 2017 WL 3774379, at *4,*12 (D.N.D. Mar. 17, 2017) (dismissing a complaint because the CFPB failed to allege sufficient specific facts, including "particular clients").

**2. The Complaint fails to allege plausible facts showing that "membership fees" must be included in the MAPR calculation for each loan**

According to the CFPB, the full amount of any MoneyLion membership fees must be included in the MAPR calculation because they are fees "imposed for participation in any plan or arrangement for consumer credit." 32 C.F.R. § 232.4(c). This theory is wrong because MoneyLion does not "impose" these fees and, even if it did, the CFPB cannot demonstrate the fees were "for participation in any plan or arrangement for consumer credit." MoneyLion Br.26–29.

**i. The Complaint fails to show that MoneyLion *imposed* the fees**

The parties agree that the MLA Rule does not define "impose" and the goal should be to find plain meaning. To that end, MoneyLion cited multiple dictionary definitions of "impose," which demonstrate that the term requires an element of force or compulsion. MoneyLion Br.26–27; *see MassMutual Asset Fin. LLC v. ACBL River Operations, LLC*, 220 F. Supp. 3d 450, 455 (S.D.N.Y. 2016) ("To determine the plain and ordinary meaning . . . dictionary definitions prove useful." (citations omitted)). The CFPB does not offer a single citation to rebut these definitions. Instead, the CFPB takes a contrary view by simply declaring, with no authority, that the plain meaning of "impose" "means nothing more than to charge." CFPB Resp.22. The Court should reject the CFPB's unsupported preference on what the meaning should be.

Nor does Regulation Z provide any support for the CFPB's view. The MLA Rule and Regulation Z consistently use the terms "impose" and "charge" separately, not interchangeably. For example, the MLA Rule references a "fee charged to a covered borrower," but a fee "imposed

for participation." 32 C.F.R. § 232.4(c)(iii); *see also* 12 C.F.R. § 226.4(a) (using "imposed" and "charged" separately). This usage means they *do not* have the same meaning. "A cardinal doctrine of statutory interpretation is the presumption that Congress's 'use of different terms within related statutes generally implies that different meanings were intended.'" *Res-Care, Inc. v. United States*, 735 F.3d 1384, 1389 (Fed. Cir. 2013) (citations omitted).

And even under its atextual reading of "impose," the CFPB fails to plausibly allege that MoneyLion "imposed" the fees. The CFPB ignores that customers not only voluntarily sign up for a membership, they can also "recoup" their fees. Dkt.1 ¶ 51. In other words, customers can access loans (and other benefits) without, ultimately, paying a dime in membership fees. There is no basis to find that MoneyLion "imposes" a voluntary fee that customers can fully recoup.

**ii. The CFPB cannot show that fees are imposed "for participation in any plan or arrangement for consumer credit"**

The CFPB also cannot show that membership fees are imposed *for participation in any plan or arrangement for consumer credit*. *See* 32 C.F.R. § 232.4(c). And even if the CFPB could show that some of the fees fit that criterion, the Complaint fails to establish how much of them should be allocated in that manner and how that allocation pushes MoneyLion's loans above 36% MAPR. *See* MoneyLion Br.27–29. The CFPB's responses are unpersuasive.

First, dictionary definitions demonstrate that membership fees can only conceivably be included in the MAPR if they are imposed for the purpose of receiving credit, and not for other purposes. MoneyLion Br.27–28. By not disputing these definitions, the CFPB effectively concedes the point. *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, ___ F. Supp. 3d ___, 2022 WL 17342495, at *3 (S.D.N.Y. 2022).

Second, the CFPB summarily argues that because customers were not eligible for loans without paying a membership fee, the fee *must be* for participation in any plan or arrangement for

consumer credit. CFPB Resp.20–21. This assertion is a *non sequitur*. As the Complaint confirms, customers pay a membership fee to gain access to a suite of benefits, only one of which is MoneyLion's loan product. Dkt.1 ¶¶ 49-51. The fact that a membership fee opens the door to a suite of benefits, including a loan, does not mean the entire membership fee is *for* the loan.

Third, even if some portion of the fee could be allocated to the loan, the full amount cannot be allocated in that way given the many benefits that come with membership. MoneyLion Br.29. The CFPB rejects this premise, but without any authority. CFPB Resp.23. And, in doing so, the CFPB pushes an unfounded theory of the MLA Rule that has no logical limit. Under the CFPB's theory, if MoneyLion were to offer a membership that included 1,000 benefits, with a loan being only one, the CFPB would still allocate every cent of the membership fee to the MAPR, despite the fee paying for 999 other benefits. This reading makes no sense. By asking the Court to ignore how much of the fee should be allocated to non-loan benefits when calculating MAPR, the CFPB is taking an extreme position that is divorced from the MLA and practical realities.

### C. The CFPB cannot state a claim related to arbitration (Count Two)

#### 1. The Complaint incorporates the arbitration agreement by reference and, thus, the Court can consider the agreement at the 12(b)(6) stage

A plaintiff cannot put blinders on the Court by omitting a crucial document to avoid dismissal. "A complaint is deemed to include any . . . statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citations omitted). Even when a document is not formally referenced, a "court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (citation omitted). This most commonly occurs "when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety,

would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* (citation omitted).

Here, the Complaint references MoneyLion's arbitration agreement in four separate paragraphs, while also referencing MoneyLion's contracts with customers on at least six occasions. Dkt.1 ¶¶ 1, 31, 36, 57, 67, 76, 92. These references are more than tangential. They are the central bases for the CFPB's theory of liability in Count Two. Thus, the CFPB's strategic decision to not attach the agreement is of no moment. The Court can rely on the arbitration agreement because it is incorporated by reference. *See, e.g.*, *Tavenner v. IBM Corp.*, No.21-CV-6345, 2022 WL 4449215, at *2 (S.D.N.Y. Sept. 23, 2022).[6]

None of the CFPB's arguments detract from this conclusion. It is irrelevant that the Complaint does not explicitly reference the opt-out provision in the arbitration agreement. CFPB Resp.25–26. When a complaint incorporates a document by reference, there is no requirement that the complaint discuss the specific sentence in the contract the plaintiff would like to avoid. *See, e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir. 1996). And although the CFPB wrongly tries to manufacture a dispute about the version of the arbitration agreement at issue, the CFPB never argues that the arbitration agreement did not include an opt-out provision. CFPB Resp.26–27. So the CFPB's alleged dispute over the relevant version is moot, and the opt-out provision is properly before the Court.

**2. There are multiple reasons the agreement does not violate the MLA**

Not only is the CFPB misguided in its attempt to hide the arbitration agreement from the Court, but it also incorrectly argues the arbitration agreement violates the MLA in several ways.

[6] The CFPB's argument about judicial notice is a red herring in light of the incorporation by reference.

First, the CFPB claims MoneyLion violates the MLA by requiring a borrower to submit to arbitration at the time it extends credit. CFPB Resp.28–29. But as many courts have held—including under the MLA—an arbitration agreement with an opt-out provision does not *require* arbitration because the customer is *not bound* to arbitrate at the time of contracting. The borrower can opt-out. *See* MoneyLion Br.30. As a District of Maryland court concluded when addressing this very issue under the MLA, "the Agreement does not 'require the borrower to submit to arbitration' because the arbitration provision contains an opt-out clause." *Garrett v. Monterey Fin. Servs., LLC*, No.JKB-18-325, 2018 WL 3579856, at *4 (D. Md. July 25, 2018) (quoting 10 U.S.C. § 987(e)(3)). At the time of contracting, there is no *requirement* to submit to arbitration.

Second, the CFPB's argument that MoneyLion's interpretation creates superfluidity between 10 U.S.C. § 987(e)(3) and (f)(4) does not hold water. Under subsection (e)(3), an arbitration agreement that *requires* a borrower to *submit* to arbitration is unlawful. And including a provision that violates subsection (e) could also lead to other consequences, including voiding an entire contract under subsection (f)(3). But subsection (e)(3) does not prohibit an arbitration agreement with an opt-out clause because such an agreement does not require a borrower to submit to arbitration. If, however, a creditor were to attempt to *enforce* an arbitration provision against a covered member, then subsection (f)(4) would bar it from doing so. Thus, both subsection (e)(3) and (f)(4) do work. Subsection (e)(3) prohibits certain arbitration provisions in MLA-governed contracts, which could lead to certain "penalties and remedies" under subsection (f). But for provisions that are permissible under subsection (e)(3), subsection (f)(4) nonetheless prevents a creditor from compelling arbitration.[7]

---

[7] Congress may have had other reasons for singling out arbitration in subsection (f)(4). For example, if Congress wants to supplant the Federal Arbitration Act ("FAA") in certain spheres, it must do so with a

Third, the CFPB is wrong in arguing that it does not have to allege that MoneyLion actually attempted to force covered members to arbitrate. The regulatory history of 32 C.F.R. § 232.8 makes clear that the DOD was chiefly concerned about covered members being forced into arbitration, not simply the inclusion of an arbitration provision in a contract. According to the DOD, 32 C.F.R. § 232.8 means a creditor must refrain "from requiring the borrower to submit to arbitration in the case of a dispute involving the consumer credit." 80 Fed. Reg. at 43,592. Necessarily, a "dispute involving the consumer credit" arises *after* the contract, not at the time of contracting. The CFPB has investigated MoneyLion for years, yet has not alleged any specific instance in which MoneyLion forced a covered borrower into arbitration.

### D. The CFPB cannot state a claim related to disclosures (Count Three)

The CFPB fails to state a claim in Count Three because it merely alleges that MoneyLion "made loans to covered borrowers without making all loan disclosures required by the MLA." MoneyLion Br.31–32. The Complaint contains almost no detail as to the allegedly insufficient disclosures. The CFPB's response just doubles down on the opaqueness. The CFPB again repeats the claim that MoneyLion made loans "without making all MLA-required disclosures." CFPB Resp.34. This blanket assertion leaves MoneyLion (and the Court) guessing as to what specific disclosures are at issue. And, to the extent the CFPB is agreeing to limit its claim to *only* the "required statement of MAPR," CFPB Resp.33, that claim fails for the reasons discussed above with respect to the MAPR calculation.

## CONCLUSION

The Court should grant MoneyLion's motion to dismiss the Complaint.

---

"clear and manifest" intent. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citations omitted). Thus, subsection (f)(4) serves another purpose—overriding the FAA's presumption in favor of arbitration.

Dated: March 7, 2023

Respectfully submitted,

/s/ Misha Tseytlin

MISHA TSEYTLIN (Reg. No. 4642609)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

STEPHEN G. RINEHART
JAMES KIM
TROUTMAN PEPPER HAMILTON
SANDERS LLP
875 Third Avenue
New York, NY 10022
(212) 704-6000
(212) 704-5957 (fax)
stephen.rinehart@troutman.com
james.kim@troutman.com

DAVID GETTINGS
TROUTMAN PEPPER HAMILTON
SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
(757) 687-7747
(757) 687-1545 (fax)
dave.gettings@troutman.com

*Attorneys for MoneyLion*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2023, a true and accurate copy of the foregoing was served via the Court's CM/ECF system upon all counsel of record.

/s/ Misha Tseytlin
MISHA TSEYTLIN
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com