# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

Consumer Financial Protection Bureau,

       Plaintiff,

   v.

MoneyLion Technologies Inc., ML Plus, LLC, MoneyLion of Alabama LLC, MoneyLion of Arizona LLC, MoneyLion of California LLC, MoneyLion of Colorado LLC, MoneyLion of Connecticut LLC, MoneyLion of Delaware LLC, MoneyLion of Florida LLC, MoneyLion of Georgia LLC, MoneyLion of Idaho LLC, MoneyLion of Illinois LLC, MoneyLion of Indiana LLC, MoneyLion of Kansas LLC, MoneyLion of Kentucky LLC, MoneyLion of Louisiana LLC, MoneyLion of Maryland LLC, MoneyLion of Michigan LLC, MoneyLion of Minnesota LLC, MoneyLion of Mississippi LLC, MoneyLion of Missouri LLC, MoneyLion of Nevada LLC, MoneyLion of New Jersey LLC, MoneyLion of New Mexico LLC, MoneyLion of New York LLC, MoneyLion of North Carolina LLC, MoneyLion of North Dakota LLC, MoneyLion of Ohio LLC, MoneyLion of Oklahoma LLC, MoneyLion of Oregon LLC, MoneyLion of South Carolina LLC, MoneyLion of South Dakota LLC, MoneyLion of Tennessee LLC, MoneyLion of Texas LLC, MoneyLion of Utah LLC, MoneyLion of Virginia LLC, MoneyLion of Washington LLC, MoneyLion of Wisconsin LLC, and MoneyLion of Wyoming LLC,

       Defendants.

No. 1:22-CV-8308-JPC

Judge John P. Cronan

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................3

I.   The CFPB.................................................................................................................3

II.  The MLA, TILA, and the MLA Rule .....................................................................3

    A.  The MLA ..........................................................................................................3

    B.  TILA ................................................................................................................4

    C.  The MLA Rule .................................................................................................5

III. This Lawsuit.............................................................................................................5

STANDARD OF DECISION .....................................................................................................7

ARGUMENT .............................................................................................................................8

I.   The Supreme Court has granted leave to consider the constitutionality of the CFPB's funding structure under the Appropriations Clause, and MoneyLion continues to maintain that the funding structure is unconstitutional under both that constitutional provision and the nondelegation doctrine ....................................8

II.  The Court should dismiss Counts Six through Nine because the CFPB's overbroad authority to determine what constitutes unfair, deceptive, or abusive acts or practices under the CFPA, and then enforce its own view, violates the nondelegation doctrine ...............................................................................................9

    A.  Congress cannot delegate legislative authority without an intelligible principle .........9

    B.  Congress violated the nondelegation doctrine by granting the CFPB authority to both determine what constitutes unfair, deceptive, or abusive acts or practices and then enforce those provisions ...............................................................10

        1.  The CFPB's authority to determine what constitutes unfair, deceptive, or abusive acts or practices violates the nondelegation doctrine ..............................10

        2.  The breadth of the CFPB's authority amplifies the constitutional violation above ...............................................................................................................11

    C.  This nondelegation violation requires the Court to dismiss Counts Six–Nine ...........12

III. The MAPR Portion of the MLA Rule Is Invalid Under The APA ....................13

    A.  The APA requires that all aspects of agency rules comply with the governing statute and be otherwise reasonable ...............................................................13

    B.  The MLA Rule's inclusion of bona fide fees, including participation fees, within the MAPR for many types of consumer credit is not in accordance with the law, and is arbitrary and capricious ...........................................................13

        1.  The MLA Rule violates the MLA's statutory text ..............................................13

        2.  The CFPB cannot save its claims with belated and incorrect arguments ............15

3.   The MLA Rule is arbitrary and capricious ............................................17

C. Because the relevant aspect of the MLA Rule is unlawful, the Court should dismiss Count One and the portion of Count Six related to the MAPR ....................20

IV.  The Amended Complaint fails to state a claim................................................20

A. The Amended Complaint fails to establish that the loans are for personal, family, or household purposes (all Counts) ..................................................21

1.   Statutory Background ...................................................................21

2.   The CFPB has not plausibly alleged each loan at issue was for a qualifying purpose..........................................................................................22

3.   The CFPB cannot rescue its claims by arguing the loans are geared toward consumers ...................................................................................23

4.   The CFPB cannot save its claims by arguing the consumer's purpose in taking out a loan is irrelevant........................................................24

B. The CFPB fails to introduce facts necessary to plausibly allege that MoneyLion's loans violates the MAPR cap in the MLA Rule (Count One)...............25

1.   The Amended Complaint fails to allege any specific loan with an MAPR that exceeds 36%.........................................................................25

2.   The Amended Complaint fails to plausibly allege facts showing "membership fees" must be included in the MAPR for each loan ......................26

i.   The Amended Complaint fails to demonstrate that MoneyLion *imposes* the membership fees ..........................................................................26

ii.  The Amended Complaint fails to demonstrate any fees were imposed *for participation in any plan or arrangement for consumer credit*............................28

C. The CFPB cannot state a claim related to arbitration under Count Two ....................29

1.   The Amended Complaint does not include a single example of MoneyLion requiring a borrower to submit to arbitration..........................................30

2.   The opt-out provision confirms that MoneyLion does not *require* arbitration by its members ......................................................................30

D. Counts Three and Four fail to state claims because 10 U.S.C. § 987(e)(3), (4) are inapplicable and there is nothing unreasonable about the opt-out provision........31

1.   Sections 987(e)(3), (4) do not apply to the facts...................................31

2.   The opt-out provision is not "onerous" or "unreasonable"....................32

E. The CFPB cannot state a claim related to disclosures under Count Five ...................34

F. The CFPB cannot state a claim in Count Six because that claim is dependent on Counts One through Five ......................................................................34

G. The Court should dismiss the case with prejudice and without leave to amend..........35

CONCLUSION....................................................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
    295 U.S. 495 (1935)..................................................................................... 12

*Am. Power & Light Co. v. SEC*,
    329 U.S. 90 (1946).................................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................... 25, 26, 34

*Billie v. Credit Collection Servs., Inc.*,
    No. 16-786-VAB, 2017 WL 396536 (D. Conn. Jan. 30, 2017)........................ 22

*Biocad JSC v. F. Hoffman-La Roche*,
    942 F.3d 88 (2d Cir. 2019).............................................................................. 7

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*,
    403 F.3d 771 (D.C. Cir. 2005) ............................................................ 13, 17, 18

*Calcutt v. Fed. Deposit Ins. Corp.*,
    143 S. Ct. 1317 (2023).............................................................................. 15, 16

*CFPB v. Cmty. Fin. Serv. Ass'n of Am.*,
    No. 22-448 (cert. granted Feb. 27, 2023)........................................................ 9

*CFPB v. Intercept Corp.*,
    No.3:16-144-RRE-ARS, 2017 WL 3774379 (D.N.D. Mar. 17, 2017)............... 26

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
    63 F.4th 174 (2d Cir. 2023) .................................................................... 2, 9

*Circuit City Stores v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) ....................................................................... 33

*CM, Inc. v. Canadian Indem. Co.*,
    635 F.2d 703 (8th Cir. 1980) ......................................................................... 27

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) .............................................................. 2, 3, 8

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    No. 16-900-WHP, 2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017) .................... 31

*Curtis v. Propel Prop. Tax Funding, LLC*,
    915 F.3d 234 (4th Cir. 2019) ......................................................................... 24

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996)............................................................................... 7

*FCC v. NextWave Pers. Commc'ns Inc.*,
    537 U.S. 293 (2003).............................................................................. 13, 17

*FCC v. Prometheus Radio Project*,
    141 S. Ct. 1150 (2021)..................................................................... 19

*First Gibraltar Bank, FSB v. Smith*,
    62 F.3d 133 (5th Cir. 1995) ........................................................... 23

*Fischer v. Fannie Mae*,
    302 F. Supp. 3d 1327 (S.D. Fla. 2018) .......................................... 23

*Garrett v. Monterey Fin. Servs., LLC*,
    No.JKB-18-325, 2018 WL 3579856 (D. Md. July 25, 2018)................ 30

*Gavrilovic v. T-Mobile USA, Inc.*,
    No. 21-12709-NGE-JJCG, 2022 WL 1086136 (E.D. Mich. Mar. 25, 2022) ................. 33

*Gundy v. United States*,
    139 S. Ct. 2116 (2019) (plurality opinion) ....................................... 9

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)............................................................. 8

*In re Cherrett*,
    873 F.3d 1060 (9th Cir. 2017) ...................................................... 23

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)............................................ 35

*J.W. Hampton, Jr., & Co. v. United States*,
    276 U.S. 394 (1928)...................................................................... 10

*Krishtul v. VSLP United, LLC*,
    No. 10-0909-RER, 2014 WL 940941 (E.D.N.Y. Mar. 11, 2014)................... 24

*MFS Sec. Corp. v. S.E.C.*,
    380 F.3d 611 (2d Cir. 2004)........................................................... 8

*Mistretta v. United States*,
    488 U.S. 361 (1989)....................................................................... 9

*Nesbit v. Gears Unlimited, Inc.*,
    347 F.3d 72 (3d Cir. 2003)............................................................. 7

*Nicholas v. CMRE Fin. Servs., Inc.*,
    No. 08-4857-JLL, 2009 WL 1652275 (D.N.J. June 11, 2009) ......................... 22

*Ostreicher v. TransUnion, LLC*,
    No. 19-CV-8174-KMK, 2020 WL 3414633 (S.D.N.Y. June 22, 2020)........................ 33

*Piper v. Meade & Associates, Inc.*,
    282 F. Supp. 3d 905 (D. Md. 2017) ........................................... 22, 23

*Res-Care, Inc. v. United States*,
    735 F.3d 1384 (Fed. Cir. 2013)...................................................... 27

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ............................................ 33

*Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff,*
    638 F. App'x 100 (2d Cir. 2016) ...................................................................... 23

*Schiller v. Tower Semiconductor Ltd.,*
    449 F.3d 286 (2d Cir. 2006) ............................................................................ 17

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943) ..................................................................................... 15, 16

*Seila Law LLC v. CFPB,*
    140 S. Ct. 2183 (2020) ......................................................................... 3, 11, 12

*Shetty v. Lewis,*
    No. 16-3112-BLF, 2017 WL 1177993 (N.D. Cal. Mar. 30, 2017) .................... 22

*Singh v. Uber Tech. Inc.,*
    235 F. Supp.3d 656 (D.N.J. 2017) ................................................................... 31

*Strougo v. Bassini,*
    282 F.3d 162 (2d Cir. 2002) .............................................................................. 7

*Thapa v. Gonzales,*
    460 F.3d 323 (2d Cir. 2006) ............................................................................ 13

*Touby v. United States,*
    500 U.S. 160 (1991) .................................................................................... 9, 10

*United States v. Martin,*
    974 F.3d 124 (2d Cir. 2020) ............................................................................ 27

*United States v. Mingo,*
    964 F.3d 134 (2d Cir. 2020) ...................................................................... 10, 11

*United States v. Rowland,*
    826 F.3d 100 (2d Cir. 2016) ............................................................................ 26

*United States v. Titan Int'l, Inc.,*
    811 F.3d 950 (7th Cir. 2016) ........................................................................... 28

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ............................................................................. 12, 16

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) .................................................................................. 10, 12

*Zawada v. Uber Techs., Inc.,*
    No. 16cv11334-LJM-SDD, 2016 WL 7439198 (E.D. Mich. Dec. 27, 2016) .................. 33

**Constitutional Provisions**

U.S. Const. art. I, § 1 ............................................................................................ 9

**Statutes And Rules**

5 U.S.C. § 706 ........................................................................................... 8, 13, 17

10 U.S.C. § 987 ........................................................................................... *passim*

12 U.S.C. § 5481 ............................................................................................ 3, 22

12 U.S.C. § 5497 ................................................................................................... 9

12 U.S.C. § 5531 .......................................................................... 3, 10, 11, 12

12 U.S.C. § 5536 ....................................................................................... *passim*

124 Stat. 1376 (July 21, 2010) ............................................................................ 3

15 U.S.C. § 1602 ............................................................................................... 24

15 U.S.C. § 1605 .......................................................................................... 4, 15

15 U.S.C. § 1606 .......................................................................................... 4, 14

15 U.S.C. § 1692a ............................................................................................. 24

Fed. R. Civ. P. 12 ............................................................................................... 7

## Regulations

12 C.F.R. § 226.4 .............................................................................................. 27

12 C.F.R. § 1022.24 .......................................................................................... 33

12 C.F.R. § 1026.2 ............................................................................................ 17

12 C.F.R. § 1026.4 .......................................................................... 4, 14, 15, 16

32 C.F.R. § 232.3 ...................................................................................... *passim*

32 C.F.R. § 232.4 ...................................................................................... *passim*

32 C.F.R. § 232.6 ...................................................................................... 21, 34

32 C.F.R. § 232.8 .................................................................... 21, 29, 30, 32

76 Fed. Reg. 79,308 (Dec. 21, 2011) ............................................................... 33

*Limitations on Terms of Consumer Credit Extended to Service Members and
Dependents*, 80 Fed. Reg. 43,560-01 (July 22, 2015) ....................... 5, 18, 19, 20

## Other Authorities

CFPB Official Interpretation of Paragraph 4(c)(4), *Section 1026.4 Finance Charge* ................... 4

CFPB, *CFPB Sues MoneyLion for Overcharging Servicemembers and Trapping
Consumers in Costly Memberships* (Sept. 29, 2022) ......................................... 6

Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ............................... 27

OED Online (3d ed. Dec. 2022) ........................................................... 14, 27, 28

The American Heritage Dictionary of the English Language (5th ed. 2022) ......... 27, 28

## INTRODUCTION

MoneyLion makes financial products available to many families that would otherwise not have access to them from traditional banks. It does so by offering two membership options: (1) a no-membership-fee option; and (2) a monthly paid membership option. A customer who chooses the first option pays *a la carte* monthly fees for products such as a deposit account and an investment account. A customer who chooses the paid membership option pays a flat $19.99 monthly membership fee for a broad suite of services, but no separate monthly fees for deposit and investment accounts, while receiving enhanced rewards and benefits, including the ability to recoup the entire membership fee and the option to apply for credit-builder installment loans. These products give consumers, including military families, the opportunity to build their credit histories, their savings and their investments.

The Consumer Financial Protection Bureau ("CFPB") is an unconstitutional agency seeking to undermine MoneyLion's mission of broadening access to the financial system, all in the name of consumer "protection." The CFPB asserts that MoneyLion's products violate the Military Lending Act ("MLA"), the Consumer Financial Protection Act ("CFPA"), and related regulations—yet they do no such thing. And in a misleading press release accompanying this lawsuit, the CFPB attacked MoneyLion's reputation, falsely lumping MoneyLion in with unscrupulous businesses that target servicemembers. To be clear, while MoneyLion prides itself on serving members of the military, it aims to offer services to anyone underserved by traditional banks.

The CFPB, recognizing that its initial Complaint was legally and factually deficient, has now amended it. But that amendment does not fix the initial Complaint's fundamental flaws. If this lawsuit proceeds beyond the pleadings stage, MoneyLion will demonstrate that none of the

CFPB's claims can withstand scrutiny. But this case also fails as a matter of law at this stage, even putting aside the disputed constitutionality of the CFPB's funding structure under both the Appropriations Clause and the nondelegation doctrine, *compare CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 181–84 (2d Cir. 2023), *with Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 635–43 (5th Cir. 2022) ("*CFSAA*"), *cert. granted* 143 S. Ct. 978 (Feb. 27, 2023). As a result, this Court should dismiss the CFPB's Amended Complaint.[1]

As a threshold matter, and separate from the CFPB's unconstitutional funding structure, Congress violated the nondelegation doctrine by granting the CFPB authority to determine what constitutes unfair, deceptive, or abusive acts or practices, and then to enforce those provisions itself. This requires the Court to dismiss all Counts under the CFPA.

Further, this Court should dismiss the CFPB's claims related to the military annual percentage rate under the MLA because the Department of Defense's regulations under the MLA ("MLA Rule")—which were in fact written by CFPB personnel—violate both the MLA itself and the Administrative Procedure Act ("APA"). The MLA Rule violates the MLA because it unlawfully includes bona fide participation fees within the calculation of the "annual percentage rate," contrary to the statutory definition. And the MLA Rule also violates the APA because it unlawfully discriminates by treating bona fide fees—which are separate and distinct from the annual percentage rate—differently depending on whether the product is a credit card or another type of credit. The MLA Rule offers no reasoned basis to differentiate based on product type.

Finally, beyond these threshold deficiencies, each Count fails to state a claim on the merits. For example, dispositive to all claims, the CFPB fails to plausibly allege that each loan is for a

---

[1] MoneyLion brings this motion on behalf of all of the defendants. Although these defendants are separate entities, this filing refers to them collectively as "MoneyLion" for ease of reference.

required purpose. And, with respect to each individual claim, the Amended Complaint suffers from various defects, including the failure to allege sufficient facts to state a claim and, for some claims, asserting violations of statutes that are completely inapplicable. The Court should dismiss the Amended Complaint in full without further leave to amend.

## BACKGROUND

### I.      The CFPB

Congress created the CFPB in 2010 as an independent financial regulator within the Federal Reserve System, charged with enforcing 18 existing federal statutes and regulating unfair, deceptive, or abusive acts or practices by certain participants in the consumer-finance sector. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2193 (2020); *see also* 12 U.S.C. § 5481(12), (14). Congress endowed the CFPB with "potent enforcement powers," *Seila Law*, 140 S. Ct. at 2193 (citations omitted), including the power to administer the Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376 (July 21, 2010) ("Dodd-Frank"), which includes the CFPA.

The CFPA, in turn, broadly authorizes the CFPB to "prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law" relating to "any transaction with a consumer for a consumer financial product or service." 12 U.S.C. § 5531(a). The CFPA, however, does not adequately define the terms at issue. And while giving the CFPB vast authority, Congress adopted historically unprecedented measures to insulate the agency from congressional accountability. *See CFSAA*, 51 F.4th at 635–43.

### II.     The MLA, TILA, and the MLA Rule

#### A.      The MLA

The MLA, which Congress enacted in 2006, regulates consumer credit offered to military servicemembers and their dependents. *See generally* 10 U.S.C. § 987. The MLA is intertwined

with and cross-references many aspects of the Truth in Lending Act ("TILA"), including required disclosures and the definition of "annual percentage rate" ("APR"). *See id.* § 987(c), (i). Most relevant to this case, the MLA provides that a creditor cannot charge servicemembers and their dependents an APR greater than 36 percent. *Id.* § 987(b). It also grants the Department of Defense the authority to promulgate regulations to carry out the MLA's provisions, including regulations establishing "[t]he method for calculating the applicable annual percentage rate of interest on such obligations, in accordance with the limit established under this section." *Id.* § 987(h)(1)–(2)(B).

### B.     TILA

Because the MLA's statutory text expressly incorporates TILA's definition of APR, interpreting it requires looking to TILA and its implementing regulation, Regulation Z. TILA— the 1968 statute that standardized how to calculate and disclose borrowing costs—provides a methodology for determining the APR for all types of consumer credit. *See* 15 U.S.C. § 1606. A key input into the APR calculation is the finance charge for the credit. *See id.* §§ 1605(a), 1606. Importantly, Regulation Z explicitly excludes certain fees from the definition of "finance charge," including "[f]ees charged for participation in a credit plan, whether assessed on an annual or other periodic basis" (*i.e.*, participation fees). 12 C.F.R. § 1026.4(c)(4). In its interpretive guidance, the CFPB explained that these excluded participation fees "do not necessarily have to be formal membership fees, *nor are they limited to credit card plans*." CFPB Official Interpretation of Paragraph 4(c)(4), *Section 1026.4 Finance Charge* (emphasis added).[2] The CFPB has also confirmed that this exclusion "applies to *any* credit plan in which payment of a fee is a condition of access to the plan itself." *Id.* (emphasis added). As a result, under TILA and Regulation Z,

---

[2] Available at https://www.consumerfinance.gov/rules-policy/regulations/1026/4/.

participation fees are *not* included in finance charges or APR calculations, regardless of product type.

### C.      The MLA Rule

On July 22, 2015, the Department of Defense promulgated the MLA Rule, purporting to act under its authority to issue regulations under the MLA, including a rule establishing the method for calculating the APR.  *See Limitations on Terms of Consumer Credit Extended to Service Members and Dependents*, 80 Fed. Reg. 43,560-01 (July 22, 2015).  The MLA Rule created what it called a "military annual percentage rate" ("MAPR"), which is calculated under 32 C.F.R. § 232.4(c).  Under § 232.4(c), the MAPR includes finance charges, certain fees, and—contrary to TILA and Regulation Z—participation fees for certain forms of credit.  32 C.F.R. § 232.4(b), (c). Specifically, although the MLA Rule follows TILA and Regulation Z by excluding bona fide participation fees (and other bona fide fees) from the MAPR *for credit cards*, 32 C.F.R. § 232.4(c)(1)(iii), (d), it includes the same fees in the MAPR for other credit products, including closed-end loans, "even if that charge would be excluded from the finance charge under Regulation Z," *id.* § 232.4(c)(1)(iv).

### III.   This Lawsuit

After MoneyLion fully cooperated with the CFPB's investigation of the company for three years, the CFPB filed this lawsuit without providing MoneyLion customary notice or an opportunity to address the CFPB's concerns.  In the original Complaint, the CFPB raised seven counts, with Counts One through Three arising under the MLA and Counts Four through Seven arising under the CFPA.  Dkt.1.  Before serving this lawsuit, the CFPB issued a deeply misleading press release boasting about the filing and falsely accusing MoneyLion of targeting

servicemembers.  *See* CFPB, *CFPB Sues MoneyLion for Overcharging Servicemembers and Trapping Consumers in Costly Memberships* (Sept. 29, 2022).[3]

MoneyLion moved to dismiss the original Complaint, Dkt. 56, explaining that (1) the CFPB's funding structure violates the Appropriations Clause and the nondelegation doctrine; (2) the CFPB's authority to determine what constitutes unfair, deceptive, or abusive acts or practices also separately violates the nondelegation doctrine; (3) the MAPR portion of the MLA Rule is invalid under the APA because it contradicts the statutory definition of APR; and (4) the Complaint fails to state a claim in numerous other respects, Dkt. 58 at 8–32.  The parties fully briefed MoneyLion's Motion, *see* Dkts. 60, 61, and that Motion remained open for decision.

On June 13, 2023, the CFPB filed its Amended Complaint, Dkt. 65 ("Am. Compl."), after this Court granted it leave to do so.  Dkt. 64.  The Amended Complaint raises two new claims, in addition to re-asserting the seven claims in the original Complaint.  The counts are as follows:

- Count One:  The CFPB claims that, by allegedly imposing a cumulative MAPR greater than 36%, MoneyLion violated the MLA's 36% total percentage rate cap.  The Complaint, however, does not specify any such charges or amounts of charges the CFPB concludes must be included in that calculation.  Am. Compl. ¶¶ 61–67.

- Count Two:  The CFPB alleges that MoneyLion required MLA-covered borrowers to submit to arbitration, contrary to the MLA's and MLA Rule's prohibitions on requiring arbitration for covered borrowers.  Here, the CFPB fails to address the express opt-out provision in MoneyLion's arbitration provision; nor does it allege that MoneyLion ever required a covered borrower to arbitrate.  Am. Compl. ¶¶ 68–71.

- Count Three (new claim):  The CFPB alleges that MoneyLion required MLA-covered borrowers to comply with "onerous" legal-notice provisions, requiring borrowers to opt out of arbitration in writing within 30 days of entering the loan contract.  The CFPB asserts that this is onerous because that 30-day deadline "would in most cases have passed or been days from passing" by the time a dispute arose.  Am. Compl. ¶¶ 72–77.

---

[3] Available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-moneylion-for-overcharging-servicemembers-trapping-consumers-in-costly-memberships/.  MoneyLion's responsive press release can be found here:  https://investors.moneylion.com/news/detail/87/moneylion-responds-to-cfpbs-meritless-complaint.

- Count Four (new claim):  The CFPB alleges that MoneyLion demanded unreasonable notice as a condition for legal action, in violation of the MLA, related to the arbitration opt-out provision.  The CFPB characterizes the opt-out provision as a "condition for legal action" and claims it is unreasonable because it expired within 30 days of borrowers taking out a loan.  Am. Compl. ¶¶ 78–83.

- Count Five:  The CFPB alleges that MoneyLion failed to make various disclosures required by the MLA and MLA Rule, but does not specify what disclosures MoneyLion purportedly failed to make.  Am. Compl. ¶¶ 84–87.

- Count Six:  The CFPB alleges that MoneyLion committed deceptive acts or practices for the same reasons alleged in Counts One through Five, in violation of the CFPA. Am. Compl. ¶¶ 88–94.

- Count Seven:   The CFPB alleges that MoneyLion committed deceptive acts and practices by making misrepresentations and omissions about the ability to cancel a membership and stop paying fees, contrary to the CFPA.  Am. Compl. ¶¶ 95–101.

- Count Eight:  The CFPB alleges that MoneyLion committed unfair acts in violation of the CFPA by charging consumers fees after they asked to cancel their membership. Am. Compl. ¶¶ 102–10.

- Count Nine:  The CFPB alleges that MoneyLion committed abusive acts and practices by failing to permit consumers with active loans to cancel their membership, contrary to the CFPA.  Am. Compl. ¶¶ 111–16.

MoneyLion now moves to dismiss the Amended Complaint for the reasons explained below.

## STANDARD OF DECISION

Under Rule 12(b)(6), a court may dismiss a complaint or portion thereof for failure to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Strougo v. Bassini*, 282 F.3d 162, 167 (2d Cir. 2002).   A motion to dismiss under this rule "test[s] the legal sufficiency of the complaint."  *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (citation omitted). This can include assessing whether a claim is unconstitutional or otherwise deficient.  *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 82 (3d Cir. 2003); *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93–94 (2d Cir. 2019).  In assessing the sufficiency of a complaint, a court must accept as true any well-pleaded factual allegations but need not accept either "threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements" or "legal conclusions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alteration omitted; citation omitted).

Under the APA, a court must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.  After that review, the Court *shall* set aside agency action determined to be "arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (C); *see also MFS Sec. Corp. v. S.E.C.*, 380 F.3d 611, 617 (2d Cir. 2004).

## ARGUMENT

**I.     The Supreme Court has granted leave to consider the constitutionality of the CFPB's funding structure under the Appropriations Clause, and MoneyLion continues to maintain that the funding structure is unconstitutional under both that constitutional provision and the nondelegation doctrine**

As MoneyLion explained in its initial Motion to Dismiss, Dkt.58 at 8–13, 15, the CFPB's funding structure contravenes both the Appropriations Clause and non-delegation doctrine, rendering the CFPB's entire lawsuit unconstitutional.  As the Fifth Circuit correctly held, the CFPB's "self-actualizing, perpetual funding mechanism" does not "rely on annual appropriations for funding," and instead grants the CFPB unilateral authority to determine its own funding each year without congressional oversight over any of those funds.  *CFSAA*, 51 F.4th at 638–39.  This creates in the CFPB an unconstitutional system that is "double-insulated on the front end from Congress' appropriations power," and without congressional "jurisdiction to review agency funding on the back end."  *Id.*  Relatedly, the CFPB's unconstitutional appropriations process also violates the nondelegation doctrine.  Congress granted the CFPB the complete authority to determine its own funding in whatever amount it deems "reasonably necessary" to complete its statutory duties, with the only cap being that funding cannot exceed 12% of the Federal Reserve's

total annual operating expenses, and without providing any legitimate basis for the CFPB to determine what is or is not "reasonably necessary." 12 U.S.C. § 5497(a)(1)–(2). This fails to provide the constitutionally requisite "intelligible principle" to guide the CFPB's funding determination. *Touby v. United States*, 500 U.S. 160, 165 (1991). Because the CFPB's funding comes from this unconstitutional, non-appropriations process, both constitutional violations infect the CFPB's litigation of this case, mandating dismissal of the entire Amended Complaint.

The Supreme Court will likely decide the fate of these arguments in the next year. *See CFPB v. Cmty. Fin. Serv. Ass'n of Am.*, No. 22-448 (cert. granted Feb. 27, 2023). Thus, while MoneyLion acknowledges that the Second Circuit recently found the CFPB's funding structure constitutional against challenges under both the Appropriations Clause and the nondelegation doctrine, "declin[ing] to follow the Fifth Circuit's decision in *CFSA[A]*," *Law Offices of Crystal Moroney*, 63 F.4th at 181–84, the Supreme Court will ultimately resolve this Circuit split in the next twelve months. MoneyLion thus preserves these arguments and would be entitled to dismissal on this basis if the Supreme Court ultimately rules against the CFPB in *CFSAA*.

## II. The Court should dismiss Counts Six through Nine because the CFPB's overbroad authority to determine what constitutes unfair, deceptive, or abusive acts or practices under the CFPA, and then enforce its own view, violates the nondelegation doctrine

### A. Congress cannot delegate legislative authority without an intelligible principle

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. Inherent in "that assignment of power to Congress is a bar on its further delegation." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion); *see also Mistretta v. United States*, 488 U.S. 361, 372 (1989). Thus, Congress may "obtain[ ] the assistance of its coordinate Branches," *Mistretta*, 488 U.S. at 372, but only "[s]o long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or

body authorized to [act] is directed to conform,'" *Touby*, 500 U.S. at 165 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).  Congress provides a sufficiently intelligible principle only when it "clearly delineates the policy, the public agency which is to apply it, and the boundaries of this delegated authority."  *United States v. Mingo*, 964 F.3d 134, 138 (2d Cir. 2020) (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).  And as the scope of the power Congress delegates increases, so too must Congress' guidance on that delegation.  *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001) (Congress must "provide substantial guidance on setting . . . standards that affect the entire national economy").

**B.    Congress violated the nondelegation doctrine by granting the CFPB authority to both determine what constitutes unfair, deceptive, or abusive acts or practices and then enforce those provisions**

**1.    The CFPB's authority to determine what constitutes unfair, deceptive, or abusive acts or practices violates the nondelegation doctrine**

The CFPA grants the CFPB exceptionally broad authority to regulate certain consumer transactions.  Under the CFPA, the CFPB "may take any action . . . to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law" in connection with certain consumer products and services, and to promulgate rules defining what conduct is unfair, deceptive, or abusive.  12 U.S.C. § 5531(a), (b).  Thus, the CFPA gives the CFPB enormous discretion to take action to prevent unfair, deceptive, or abusive acts or practices, while also providing the CFPB rulemaking authority to define what constitutes an unfair, deceptive, or abusive act or practice.  The CFPA, however, provides no sufficiently intelligible principles to guide the CFPB's determination of what is an "unfair, deceptive, or abusive act or practice."  *Id.* § 5536(a)(1)(B).

All three aspects of the "unfair, deceptive, or abusive" provision are unconstitutional for lack of an intelligible principle.  As an initial matter—and most obviously unconstitutional—the

statute provides no guidance whatsoever as to the type of actions that are "deceptive."  In that way, the CFPB is completely unhindered by statutory text in deciding what might make an act or practice "deceptive" in some manner.  *See id.*  With respect to "unfairness," the CFPA merely provides that the CFPB cannot bring a claim for an unfair act or practice unless the CFPB also determines that the act or practice "is likely to cause substantial injury to consumers which is not reasonably avoidable" and that substantial injury "is not outweighed by countervailing benefits." *Id.* § 5531(c)(1)(A)–(B).  Similarly, the CFPA authorizes the CFPB to "declare an act or practice abusive" if it "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service" or "takes unreasonable advantage of" either (1) "a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service"; (2) "the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service"; or (3) "the reasonable reliance by the consumer on a covered person to act in the interests of the consumer." *Id.* § 5531(d).  But none of this legislation provides a guide to determining what is "unfair" or "abusive" in the first place.  As a result, the CFPA falls well short of delineating an "intelligible principle" for the CFPB to follow in exercising its authority to define these terms and promulgate regulations enforcing its view of the same. *Mingo*, 964 F.3d at 138.

## 2.  The breadth of the CFPB's authority amplifies the constitutional violation above

The CFPB's immense authority over the nation's economy renders Congress' unguided delegation even more problematic, both under the nondelegation doctrine and the closely related major questions doctrine.  Dodd-Frank grants the CFPB enforcement powers that put it in "an entirely different league" from other regulatory agencies, with authority to "levy[ ] knee-buckling penalties against private citizens" *Seila Law*, 140 S. Ct. at 2202 n.8; *id.* at 2191, 2193.  As the

Supreme Court has held, the CFPB has "authority over a significant portion of the U.S. economy." *Id.* at 2191.  Given this authority, it was incumbent on Congress to "provide substantial guidance" as to the standards the CFPB would administer.  *Whitman*, 531 U.S. at 475.  Congress' decision to provide the CFPB only "vague terms," *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (citation omitted), before setting the CFPB loose to exert its broad power fails to provide the necessary guidance under the nondelegation doctrine.

The CFPB will likely argue (as it did before) that the nondelegation doctrine does not apply to its enforcement action here because enforcement is an executive, not a legislative, act. But this assertion misses the point: the CFPB claims for itself the authority first to define what qualifies as "unfair, deceptive, or abusive," and then to enforce its own definition of those open-ended terms. 12 U.S.C. § 5531(a)–(b); Am. Compl. ¶¶ 88–116. If the nondelegation doctrine has any force, it means that the agency cannot impose "knee-buckling penalties" based on the CFPB's claimed authority to interpret such vague terms, especially the statutorily undefined term "deceptive." *Seila Law*, 140 S. Ct. at 2191, 2202 n.8.

C. **This nondelegation violation requires the Court to dismiss Counts Six–Nine**

Because Congress' unconstitutional delegation of legislative authority to the CFPB on the meaning of unfair, deceptive, or abusive acts or practices infects the CFPB's claims pertaining to those standards, the Court should dismiss Counts Six through Nine.  *See* Am. Compl. ¶¶ 88–116. Each of these counts alleges that MoneyLion's conduct was either unfair, deceptive, or abusive and, therefore, arises directly from this unconstitutional delegation.  *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 541–42, 551 (1935).

III.     **The MAPR Portion of the MLA Rule Is Invalid Under The APA**

The APA requires courts to set aside agency rules that are contrary to law or otherwise arbitrary or capricious.  The MLA Rule is contrary to the MLA because it establishes a method for calculating MAPR that contradicts the MLA's statutory definition of APR.  Moreover, the MLA Rule is arbitrary and capricious because it requires the inclusion of bona fide fees, including participation (*i.e.*, membership) fees, in the MAPR calculation for many types of consumer credit, while not including the same fees in the MAPR calculation for credit cards, with no statutory support or reasoned basis.  Because the MAPR portion of the MLA rule is invalid, the CFPB's claims arising under that provision—Count One and a portion of Count Six—fail to state a claim. The Court should dismiss those Counts.

A.     **The APA requires that all aspects of agency rules comply with the governing statute and be otherwise reasonable**

The APA authorizes courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, . . . or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  A rule that is inconsistent with any statute must be set aside under the APA as "not in accordance with law." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003); *see also Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).  Additionally, a rule must be set aside as arbitrary or capricious if it treats similarly situated parties differently without a reasoned basis.  *See Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).

B.     **The MLA Rule's inclusion of bona fide fees, including participation fees, within the MAPR for many types of consumer credit is not in accordance with the law, and is arbitrary and capricious**

1.     **The MLA Rule violates the MLA's statutory text**

The MLA Rule—issued by the Department of Defense, but written by CFPB personnel—contradicts the MLA's statutory text because it forces the inclusion of bona fide participation fees

into the calculation of the annual percentage rate, 15 U.S.C. § 1606, in violation of the MLA's statutory definition of APR.

The MLA's statutory text prohibits any creditor from "impos[ing] an annual percentage rate of interest greater than 36 percent." 10 U.S.C. § 987(b). The MLA defines "annual percentage rate" to have "the same meaning as in" TILA and Regulation Z. 10 U.S.C. § 987(i)(4). The MLA then states that the APR "includes all fees and charges." *Id.* Thus, the MLA requires that the *meaning* of APR in its provisions must have that same "[s]ignificance, import[, or] implication" as that term is defined in TILA and Regulation Z. *Meaning,* OED Online (3d ed. Dec. 2022).[4]

Under TILA, a key component of determining the APR is the "finance charge." 15 U.S.C. § 1606(a)(1)(A). In calculating the finance charge, Regulation Z correctly recognizes that participation fees (*i.e.*, "fees charged for participation in a credit plan") for all types of credit are *not* finance charges to be included in the APR calculation. *See* 12 C.F.R. § 1026.4(c)(4). As a result, because APR under the MLA must have the same meaning as in TILA and Regulation Z, the statute requires bona fide participation fees to be excluded from APR calculations. Only fees properly included under TILA and Regulation Z "shall be included in the calculation of the annual percentage rate." 10 U.S.C. § 987(i)(4). In short, the MLA requires that APR calculations include all "fees and charges" in accordance with TILA and Regulation Z, which necessarily means excluding bona fide participation fees as required by TILA and Regulation Z.

In violation of this straightforward reading of the MLA's unambiguous text, the MLA Rule rewrites the statutorily mandated "annual percentage rate" calculations by forcing companies that offer products other than credit cards, such as closed-end loans, to include bona fide participation

---

[4] Accessible at https://www.oed.com/view/Entry/115465.

fees within the APR calculation, even though those fees are not part of the "annual percentage rate" under the MLA and TILA.  The MLA Rule includes in the MAPR "[a]ny fee imposed for participation in any plan or arrangement for consumer credit," without any exceptions for non-credit-card products, even if the fees are legitimate participation fees.  32 C.F.R. § 232.4 (c).  But that is fundamentally different from the definition of "annual percentage rate" in TILA, *see* 15 U.S.C. § 1605(a), and Regulation Z, *see* 12 C.F.R. § 1026.4(c)(4), which exclude such fees.

### 2.     The CFPB cannot save its claims with belated and incorrect arguments

Contrary to the CFPB's argument during the first round of motion to dismiss briefing, *see* Dkt. 60 at 11, the portion of the MLA's APR definition stating that APR "includes all fees and charges, including charges and fees for single premium credit insurance and other ancillary products sold in connection with the credit transaction," 10 U.S.C. § 987(i)(4), cannot justify the inclusion of participation fees in the MAPR calculation.

As a threshold matter, the CFPB cannot rely on this belatedly-raised argument in litigation to preserve the MLA Rule, given that Department of Defense did not rely upon that argument in the MLA Rule.  *Calcutt v. Fed. Deposit Ins. Corp.*, 143 S. Ct. 1317, 1318 (2023) ("It is 'a simple but fundamental rule of administrative law' that reviewing courts 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.'" (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 96 (1943)).  In fact, the MLA Rule necessarily rejected the CFPB's made-for-litigation-only argument that the "all fees and charges" sentence mandates including bona fide participation fees in the calculation of the MAPR.  The MLA Rule excludes bona fide participation fees from the MAPR for credit cards, *see* 32 C.F.R. § 232.4(c)(1)(iii)(C), (d)(1), which the MLA Rule could not do if the MLA's "all fees and charges" language required participation fees to be included in the MAPR.  Thus, the Department of Defense correctly recognized that the MLA

imposed no such requirement, and chose to exclude bona fide participation fees from the MAPR calculation for one type of consumer credit: credit cards.  32 C.F.R. § 232.4(c)(1)(iii)(C), (d)(1). But because the MLA Rule *included* participation fees in the MAPR calculation for other credit products, it is at odds with the MLA, TILA and Regulation Z.  Under bedrock administrative law principles, *see Calcutt*, 143 S. Ct. at 1318; *Chenery,* 318 U.S. at 96, the CFPB cannot save the Department of Defense's Rule on a basis that the Department never relied upon in issuing the Rule.

In any event, this untimely argument is wrong on the merits because the CFPB construes the phrase in a way that removes the provision from its statutory context.  *See West Virginia*, 142 S. Ct. at 2607.  The relevant text of the MLA first provides that APR must have the "same meaning" as TILA and Regulation Z, 10 U.S.C. § 987(i)(4), which means excluding bona fide participation fees from the definition of "finance charge" and the APR calculation, 12 C.F.R. § 1026.4(c)(4).  Only thereafter does the MLA explain that the "term [APR] includes all fees and charges." 10 U.S.C. § 987(i)(4).  Reading these immediately adjacent sentences together and giving them both meaning, the only plausible conclusion is that Congress intended "all fees and charges" to include only those fees and charges that TILA and Regulation Z permit in the APR calculation—which excludes bona fide participation fees.  *See* 12 C.F.R. § 1026.4(c)(4) (providing that certain fees and charges, including participation fees, are not finance charges included in the APR).  Any contrary interpretation would render the MLA internally inconsistent, requiring that APR "ha[ve] the same meaning as in" Regulation Z in one breath, 10 U.S.C. § 987(i)(4), and then directly contradicting Regulation Z in the next.  Therefore, when properly read in context, the MLA requires that APR calculations include all fees and charges *exclusive of* bona fide participation fees.  This means the MLA Rule violates that statutory text.

Because including bona fide participation fees for non-credit-card products is "not in accordance with" the MLA, the MLA Rule must be set aside, in relevant part, under the APA.  *See NextWave*, 537 U.S. at 300 (APA "requires federal courts to set aside federal agency action that is 'not in accordance with law'" (quoting 5 U.S.C. § 706(2)(A)).

### 3.     The MLA Rule is arbitrary and capricious

The MLA Rule is also "arbitrary" and "capricious" under the APA because it applies different standards to similarly situated entities without adequate justification. *Burlington*, 403 F.3d at 777.[5]   As noted, the MLA Rule requires including participation fees in the MAPR calculation for closed-end loans and other forms of credit, but not for credit cards. 32 C.F.R. § 232.4(d)(1), (c)(1)(iii)(C).   The Department of Defense's explanation of its "atextual" differential treatment between credit cards and other consumer-credit products does not withstand scrutiny.  *See Burlington*, 403 F.3d at 776–77 ("agency must provide an adequate explanation to justify treating similarly situated parties differently").

There is nothing inherently unique about credit cards, compared to other forms of consumer credit, that would allow for the MLA Rule's discriminatory treatment.  The MLA Rule follows Regulation Z's definition of open-end credit, which includes credit cards.   12 C.F.R. § 1026.2(a)(20); 32 C.F.R. § 232.3(q).  Closed-end credit is simply defined as all other forms of credit not encapsulated in the definition of open-end credit.  32 C.F.R. § 232.3(d).  These definitions do not provide any basis to distinguish between the two types of credit, much less to differentiate credit cards from all other forms of credit, when calculating the APR under the MLA.

---

[5] Contrary to the CFPB's arguments on the initial motion to dismiss, MoneyLion's APA arguments are not time-barred.   "[S]ubstantive challenges to agency action" like MoneyLion's arbitrary and capricious challenge have no relevant "time bars."  *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 293 (2d Cir. 2006).

The MLA Rule provides two reasons in support of its distinction between credit cards and all other forms of credit, neither of which withstand scrutiny, even if they had any grounding in the statutory text, which they do not. *See supra* p.17.

*First*, to explain excluding bona fide fees, including participation fees, from the APR calculation for credit cards, the MLA Rule correctly concludes that "the cost of the funds borrowed in a credit card account can be segregated from the fees that a creditor expressly ties to specific products or services for using the credit card itself" because the fees tied to these products or services are based upon "the covered borrower's own choices regarding the use of the card," which can "meaningfully be distinguished from the cost of borrowing itself."  80 Fed. Reg. at 43,572. But this very same logic applies to other types of consumer credit.  Just as credit card providers can offer products or services for a fee that are not finance charges included in the APR, such as credit monitoring and rewards, so too can closed-end credit providers charge fees for services that are wholly distinct from finance charges connected to the credit itself.  If participation fees are charged in connection with credit cards (as is often the case) and "can meaningfully be distinguished from the cost of borrowing itself," *id.*, there is no reasonable explanation for, or evidence in the record supporting, different treatment for participation fees in connection with other credit products. *Burlington*, 403 F.3d at 776–77.

Closed-end loans and open-end lines of credit operate similarly to credit cards by providing consumers with much-needed credit.  A servicemember choosing a credit product may have various personal reasons for selecting a particular product.  Nothing in the MLA or the MLA Rule supports different treatment depending on product type.  To the contrary, the MLA Rule encourages creditors to "continue to offer a wide range of [such] products that carry reasonable costs expressly tied to specific products or services and which vary depending upon the covered

- 18 -

borrower's own choices."  80 Fed. Reg. at 43,585.  Thus, the MLA Rule should permit bona fide, reasonable fees across all products, without discriminating against any particular product.  To prove that the fees are "bona fide," a creditor must show that the fees are fair when "compared to fees typically imposed by other creditors for the same or a substantially similar product or service," *see* 32 C.F.R. § 232.4(d)(3), thereby "limit[ing] the opportunity for a creditor to exploit the exclusion for those products," 80 Fed. Reg. at 43,573.

*Second*, the MLA Rule claims that credit cards warrant "special" consideration because another set of regulations provides protections to servicemembers and their families when they use credit cards that are comparable to the protections they will receive under the MLA Rule if they use other credit products.  80 Fed. Reg. at 43,572.  More specifically, the MLA Rule claims that the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act"), which amended TILA and Regulation Z, offers protections that are similar to the protections in the MLA Rule.  *Id.*  This rationale for discriminatory treatment between credit cards and all other product types is arbitrary and unreasonable and thus violates the APA.  *See FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021); *Burlington*, 403 F.3d at 777.

The Department of Defense's reliance on protections in the CARD Act, 80 Fed. Reg. at 43,572–73, is misplaced because it fails to "reasonably explain[ ]" the MLA Rule's discriminatory treatment.  *Prometheus*, 141 S. Ct. at 1158.  The MLA Rule's abbreviated discussion about the CARD Act demonstrates that the CARD Act does not provide protections comparable to the MLA Rule.  Instead, the Department of Defense's reference to the CARD Act shows how the MLA Rule is simultaneously more stringent and more lenient than the CARD Act.  The MLA Rule cites the CARD Act limitation on credit-card penalty fees, including late fees and over-the-limit fees, to amounts that are "reasonable and proportional" to the triggering omission

or violation.  80 Fed. Reg. at 43,572.  This feature of the CARD Act is not comparable to the protections in the MLA Rule for other forms of credit because the MLA Rule neither limits penalty fees nor includes them in the MAPR calculation.  32 C.F.R. § 232.4(c)(2)(i) (including Regulation Z's APR calculation, which excludes penalty fees).  And the MLA Rule requires participation fees to be included in the MAPR for closed-end credit and other non-credit-card products, while the CARD Act permits credit cards to charge participation fees during the first year up to 25% of the initial credit limit *plus* the APR charged for the extension of credit.  80 Fed. Reg. at 43,572.

### C.   Because the relevant aspect of the MLA Rule is unlawful, the Court should dismiss Count One and the portion of Count Six related to the MAPR

Because the MLA Rule is not in accordance with law and is arbitrary and capricious, this Court should hold unlawful and set aside that Rule to the extent it requires including participation fees and other bona fide fees in the MAPR calculation for any extension of consumer credit.  This, in turn, requires this Court to dismiss Count One and the portion of Count Six related to the MAPR.

In Count One, the CFPB claims MoneyLion exceeded a 36% MAPR because the CFPB included certain membership fees, which the CFPB alleges are participation fees, in its MAPR calculation.  Am. Compl. ¶¶ 61–67.  But these fees, even if they did qualify as participation fees, *contra infra* pp.28–29, should not be included in the MAPR.  They would plainly be permissible under the MLA Rule if MoneyLion was offering a credit card product with the same fees.  Accordingly, the Court should dismiss Count One.  Moreover, because Count Six alleges a violation of the CFPA based, in part, on the invalid MAPR, *see* Am. Compl. ¶¶ 88–94, the Court should dismiss that portion of Count Six.

## IV.   The Amended Complaint fails to state a claim

The CFPB's initial Complaint was rushed and haphazard.  The CFPB filed the lawsuit before giving MoneyLion customary notice or providing MoneyLion with the chance to address

any concerns the CFPB had following its investigation.  After filing the initial complaint, the CFPB had nearly nine months, and the benefit of MoneyLion's first motion to dismiss, to reconsider its allegations.  But it failed to do so.  Instead, the Amended Complaint doubles down on the CFPB's inadequate initial Complaint by adding two new, deficient claims.  The CFPB simply cannot state a claim because MoneyLion complied with the law.  And the CFPB's repeated inability to allege basic components of its claims more than nine months after the initial Complaint lays bare that the CFPB is more focused on headlines than substantive issues.

## A.    The Amended Complaint fails to establish that the loans are for personal, family, or household purposes (all Counts)

The MLA and CFPA extend only to credit offered to consumers for personal, family, or household purposes.  The CFPB has failed to plausibly assert this most fundamental allegation.

### 1.    Statutory Background

In Counts One through Five, the Amended Complaint alleges MLA violations for which the CFPB must establish that "consumer credit" is at issue.  Specifically, as to Count One, the Amended Complaint relies on the prohibition that "[a] creditor may not impose an MAPR greater than 36 percent in connection with an extension of *consumer credit*."  32 C.F.R. § 232.4(b) (emphasis added).  The MLA Rule defines "consumer credit" as "credit offered or extended to a covered borrower primarily for personal, family, or household purposes."  *Id.* § 232.3(f)(1).  As a result, if a loan is not for those purposes, it is not "consumer credit" and is not subject to the 36% MAPR cap.  The same limitation applies to the MLA's restrictions on arbitration clauses and notice provisions relevant to Counts Two through Four, *see* 10 U.S.C. § 987(e); 32 C.F.R. § 232.8, and the disclosures referenced in Count Five, *see* 10 U.S.C. § 987(c)(1); 32 C.F.R. § 232.6(a).

The CFPA adopts a similar framework, applicable to Counts Six through Nine, which stems from the CFPA's restrictions in 12 U.S.C. § 5536(a).  *See* Am. Compl. ¶¶ 89, 96, 103, 112.

Section 5536(a) prohibits a "covered person" from engaging in "any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). In turn, a "covered person" under the CFPA is defined as "any person" or affiliate "that engages in offering or providing a consumer financial product or service." *Id.* § 5481(6)(A)–(B). And, in turn (again), a "consumer financial product or service" is one that is "offered or provided for use by consumers primarily for personal, family, or household purposes." *Id.* § 5481(5)(A). Altogether, these definitions mean that, to be a covered person, the borrower must have obtained the financial product for personal, family, or household purposes.

### 2. The CFPB has not plausibly alleged each loan at issue was for a qualifying purpose

Given the structure above, the CFPB must allege facts establishing that each loan at issue was for personal, family, or household purposes. Multiple courts in analogous contexts have dismissed claims when a plaintiff fails to sufficiently allege the transactions were "primarily for personal, family, or household purposes." 32 C.F.R. § 232.3(f)(1). For example, in *Piper v. Meade & Associates, Inc.*, 282 F. Supp. 3d 905 (D. Md. 2017), a case involving an identically worded provision of the Fair Debt Collection Practices Act ("FDCPA"), the complaint merely stated that the "debt was 'incurred for personal purposes'" and listed the name of the debtholder. *Id.* at 912 (citation omitted). The court held this allegation amounted to a mere "legal conclusion couched as a factual allegation" and, therefore, dismissed the claim. *Id.*; *see also Shetty v. Lewis*, No. 16-3112-BLF, 2017 WL 1177993, at *6 (N.D. Cal. Mar. 30, 2017) (same); *Billie v. Credit Collection Servs., Inc.*, No. 16-786-VAB, 2017 WL 396536, at *3 (D. Conn. Jan. 30, 2017) (same); *Nicholas v. CMRE Fin. Servs., Inc.*, No. 08-4857-JLL, 2009 WL 1652275, at *2 (D.N.J. June 11, 2009) (same). Similarly, the Second Circuit has affirmed dismissal of an FDCPA claim that provided "conclusory statements" that an account was used "primarily for personal, family, or household

purposes" because those claims were "not supported by facts" in the complaint. *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102–03 (2d Cir. 2016).

Here, the CFPB alleges in two paragraphs that MoneyLion offered loans "primarily for personal, family, or household purposes." Am. Compl. ¶¶ 15, 55. Beyond that rote recitation of the statute, the CFPB alleges no facts to support such sweeping allegations across all of MoneyLion's loans. For example, the CFPB does not allege facts demonstrating the purpose behind any individual borrower obtaining a loan or how that borrower intended to use a loan. In this regard, the CFPB's regurgitations of the statutory text are "not supported by facts" alleged in the Amended Complaint, *Scarola*, 638 F. App'x at 103, and amount to nothing more than a "legal conclusion couched as a factual allegation." *Piper*, 282 F. Supp. 3d at 912. As a result, the CFPB has failed to allege a plausible claim in *any count* of the Amended Complaint.

### 3. The CFPB cannot rescue its claims by arguing the loans are geared toward consumers

Because the CFPB cannot sufficiently allege each loan's purpose, MoneyLion expects that the CFPB will ask the Court to *assume* all loans meet the required purpose because the loans are geared toward consumers. That is not the law. Courts repeatedly hold that even if a debt involves a consumer, that fact does not automatically mean the debt is for personal, family, or household purposes. *See, e.g.*, *In re Cherrett*, 873 F.3d 1060, 1068–69 (9th Cir. 2017) (the consumer loan at issue was not a personal, family, or household loan because it had business motivations); *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995) (recognizing a transaction involving a consumer may not be primarily for personal, family, or household purposes if it is a commercial transaction); *Fischer v. Fannie Mae*, 302 F. Supp. 3d 1327, 1331–32 (S.D. Fla. 2018) (a consumer loan was not for required purposes when the funds were used for business).

Although the CFPB may claim that all MoneyLion loans involve "consumers," that claim is not sufficient to demonstrate that the loans satisfy the MLA's and CFPA's required purposes.

### 4. The CFPB cannot save its claims by arguing the consumer's purpose in taking out a loan is irrelevant

Nor can the CFPB credibly argue that the consumer's purpose does not matter. In response to MoneyLion's first motion to dismiss, the CFPB argued that the Court can ignore the consumer's purpose in obtaining a loan—and all the court decisions analyzing that issue—because the MLA instead puts the focus on the *lender's reasons* for "offer[ing]" or "extend[ing]" the credit. *See* 32 C.F.R. § 232.3(f)(1). That approach fails here too.

As an initial matter, the courts that dismissed the FDCPA cases cited above based on the failure to plausibly allege the consumer's purpose were interpreting *identical* "purpose" language. *Compare id.*, *with, e.g.*, 15 U.S.C. § 1692a(5) (defining debt to include obligations in which "the subject of the transaction are primarily for personal, family, or household purposes"). There is no reasoned basis to draw an untenable distinction between the purpose for which a consumer incurs a debt and the purpose for which a creditor offers a loan.

Moreover, courts analyzing statutes that use analogous "offer" or "extend" language with respect to consumer credit regularly examine *a consumer's purpose* in obtaining a loan, not the lender's. For example, TILA uses a structure that parallels the MLA to determine whether a consumer is covered by the act. Like the MLA, TILA looks at whether credit is "offered or extended" to a borrower "primarily for personal, family, or household purposes." *See* 15 U.S.C. § 1602(i). When assessing whether TILA applies to a particular borrower, courts regularly look at the *consumer's purpose* in obtaining a loan. *See, e.g.*, *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 245 (4th Cir. 2019) (examining consumer's motivations in seeking credit); *Krishtul v. VSLP United, LLC*, No. 10-0909-RER, 2014 WL 940941, at *25 (E.D.N.Y. Mar. 11, 2014)

(noting most courts look to "entire transaction and surrounding circumstances to determine a borrower's primary motive" (citation omitted)).  Because the CFPB has failed to properly allege the consumer's purpose for any MoneyLion loan, the Amended Complaint fails to state a claim.

**B.**      **The CFPB fails to introduce facts necessary to plausibly allege that MoneyLion's loans violates the MAPR cap in the MLA Rule (Count One)**

Moving to the individual counts, in Count One, the CFPB claims that MoneyLion violated the MLA by issuing loans with an MAPR greater than 36%. Am. Compl. ¶¶ 61-67.  To reach this conclusion, the CFPB alleges that MoneyLion's monthly "membership fees" should be included in the MAPR, pushing the MAPR over the 36% threshold.  Am. Compl. ¶¶ 65–66.  But the Amended Complaint fails to allege sufficient facts in at least two respects: (1) it fails to plausibly allege that any specific loan has an MAPR that exceeded 36%; and (2) it fails to demonstrate that membership fees are a type of participation fee that should be included in the MAPR calculation.

**1.**      **The Amended Complaint fails to allege any specific loan with an MAPR that exceeds 36%**

Even accepting the MLA Rule's invalid method for calculating MAPR using participation fees, *contra supra* Part III, the CFPB has not alleged facts demonstrating that the MAPR of any MoneyLion loan exceeds 36%.  *See* 32 C.F.R. § 232.4(b).  In the Amended Complaint, the CFPB only references MoneyLion loans with interest rates between 5.99% and 29.99%.  Am. Compl. ¶ 32.  Thereafter, the CFPB merely surmises that when "membership fees" are added, that total rate eclipses 36%.  Am. Compl. ¶¶ 65-66.  The Amended Complaint fails to identify a single loan where including membership fees would cause the MAPR to exceed 36%, which is fatal to any claim under the MLA Rule.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (holding that a plaintiff must plead a plausible, rather than just possible, claim for relief).  The CFPB has investigated MoneyLion for years, but the Amended Complaint does not identify the interest rate

on any specific loan, the specific membership fees a particular borrower paid monthly, the

principal amount of any specific loan, or how all of these numbers together result in a MAPR that

exceeds 36%.  Thus, the Amended Complaint fails to state a claim.  *Id.*; *see also CFPB v. Intercept

Corp.*, No.3:16-144-RRE-ARS, 2017 WL 3774379, at *4, 12 (D.N.D. Mar. 17, 2017) (dismissing

the CFPB's complaint for failing to allege sufficient facts, including as to "particular clients").

### 2.   The Amended Complaint fails to plausibly allege facts showing "membership fees" must be included in the MAPR for each loan

In addition, the CFPB summarily alleges that MoneyLion's "membership fees" must be

included in the MAPR because they are "imposed for participation in any plan or arrangement for

consumer credit"—that is, they are participation fees that the MLA Rule wrongly includes in the

MAPR.  Am. Compl. ¶ 65.  MoneyLion's "membership fees" are not "*imposed*;" nor are they

imposed "*for* participating in a plan or arrangement for consumer credit."  *See* 32 C.F.R. § 232.3(p)

& § 232.4(b), (c) (emphasis added).  The CFPB has not plausibly alleged either element.

### i.   The Amended Complaint fails to demonstrate that MoneyLion *imposes* the membership fees

The plain meaning of "imposed" in the MLA Rule includes force or some other element of

compulsion and means more than to "charge."  Thus, MoneyLion simply does not "impose"

membership fees on borrowers.

The MLA Rule does not define "imposed."  *See* 32 C.F.R. § 232.4(c).  So the Court may

consider dictionary definitions to discern "the ordinary, common-sense meaning of the word[ ]."

*United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016).  Dictionaries routinely define

"impose" as having an element of force.  For example, the Oxford English Dictionary Online

defines "impose," in relevant part, as "[t]o lay on, as something to be borne, endured, or submitted

to; to inflict (something) on or upon; to levy or enforce authoritatively or arbitrarily."  *Impose*,

OED Online (3d ed. Dec. 2022);[6] *see also Impose*, The American Heritage Dictionary of the English Language (5th ed. 2022) ("[t]o establish or apply as compulsory");[7] *Impose*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("to establish or apply by authority" or "to establish or bring about as if by force").  Thus, the "ordinary, common-sense meaning" of "imposed" necessarily incorporates force or authority, not merely an option.  *See also United States v. Martin*, 974 F.3d 124, 138 (2d Cir. 2020) (defining impose as "establish or apply by authority" or "bring about as if by force" (citations omitted)); *CM, Inc. v. Canadian Indem. Co.*, 635 F.2d 703, 708 (8th Cir. 1980) ("to make, frame, or apply as compulsory" (citations omitted)).

In addition to the dictionary definitions, the context of the regulation as a whole makes clear that "impose" means more than just to "charge."  The MLA Rule and Regulation Z consistently use "impose" and "charge" separately, not interchangeably.  For example, the MLA Rule references a fee "charged to a covered borrower," but "imposed for participation."  32 C.F.R. § 232.4(c)(iii); *see also* 12 C.F.R. § 226.4(a) (using "imposed" and "charged" separately).  "A cardinal doctrine of statutory interpretation is the presumption that Congress's 'use of different terms within related statutes generally implies that different meanings were intended.'"  *Res-Care, Inc. v. United States*, 735 F.3d 1384, 1389 (Fed. Cir. 2013) (citations omitted).

Applying these principles, the Amended Complaint itself indicates that MoneyLion does not "impose" any fee for participation because MoneyLion does not "inflict" the fee on its members; nor does it "levy or enforce [the fee] authoritatively."  *Impose*, OED Online; *see also Impose*, The American Heritage Dictionary of the English Language; *Impose*, Merriam-Webster's Collegiate Dictionary.  Rather, consumers voluntarily choose to engage MoneyLion at whatever

---

[6] Accessible at https://www.oed.com/view/Entry/92591.

[7] Accessible at https://ahdictionary.com/word/search.html?q=impose.

level of membership they deem best.  And even for those consumers who choose to sign up for a paid membership, MoneyLion allows consumers to recoup the membership fee by, for example, logging in to MoneyLion's mobile app or taking other actions offered through the rewards program.  *See* Am. Compl. ¶ 51.  As a result, MoneyLion has not "imposed" fees on any consumer who wishes to engage with MoneyLion's various programs, and the fees are not part of the MAPR.

### ii.   The Amended Complaint fails to demonstrate any fees were imposed *for participation in any plan or arrangement for consumer credit*

The CFPB must also show that the membership fees were imposed "*for* participation in any plan or arrangement *for* consumer credit."  32 C.F.R. § 232.4(c) (emphasis added).  The common-sense meaning of "for" is "[e]xpressing purpose or destination," used "[w]ith a view to; with the object or purpose of; as preparatory to."  *For*, OED Online;[8] *see also For*, The American Heritage Dictionary of the English Language ("[u]sed to indicate the object, aim, or purpose of an action or activity");[9] *cf. United States v. Titan Int'l, Inc.*, 811 F.3d 950, 952–53 (7th Cir. 2016) (noting that "for" in a law limits scope to the stated purpose).  Thus, an MAPR calculation can only incorporate fees that are specifically imposed for the purpose of "participat[ing] in a[ ] plan or arrangement for consumer credit," 32 C.F.R. § 232.4(c), and not fees for other things.

The Amended Complaint makes clear that any fees consumers pay to MoneyLion cover a suite of products and services.  They are not exclusively paid *for* consumer credit.  Although the CFPB attempts to minimize these "membership features," Am. Compl. ¶ 44,[10] the Amended

---

[8] Accessible at https://www.oed.com/view/Entry/72761.

[9] Accessible at https://ahdictionary.com/word/search.html?q=for.

[10] The CFPB's attempts to minimize the value of MoneyLion's benefits do not constitute factual allegations that the Court needs to credit on a motion to dismiss.  Instead, they are merely the CFPB's opinions under the guise of facts.

Complaint concedes the fees include: (1) access to rewards programs; (2) access to investment or managed accounts; (3) social media group(s); (4) credit-monitoring tools; (5) monthly credit reporting; (6) automated deposits into investment accounts; and (7) access to loans.  Am. Compl. ¶¶ 44, 49-50.  Indeed, the Amended Complaint recognizes these "membership features" are perks of a MoneyLion membership, meaning membership necessarily includes access to both credit and non-credit services.  *Id.*  For that reason, the CFPB has not plausibly alleged facts demonstrating that MoneyLion's "membership fees" constitute fees "for participation in any plan or arrangement for consumer credit."  32 C.F.R. § 232.4(c).  These fees are not solely for the "object or purpose" of receiving credit, *For*, OED Online.  Instead, the fees go toward services that far exceed credit.

Moreover, even if some of the membership fees could be attributed to the credit offering itself, common sense (and the Amended Complaint's allegations) dictate that at least some portion of the fees must be attributable to membership features other than participation in credit.  Yet, the Amended Complaint fails to show *how much* of the fee should be attributable to loan access, as opposed to other membership benefits, and whether that allocated portion would cause the MAPR to exceed 36%.  Even if the CFPB were correct that a portion of the membership fees are part of the MAPR, the CFPB must, at a minimum, allege the value that should be allocated toward the MAPR.  Without that, the Amended Complaint provides no support for the claim that "all Membership-Program Loans impos[e] MAPRs greater than 36%."  Am. Compl. ¶ 66.

### C.    The CFPB cannot state a claim related to arbitration under Count Two

Count Two alleges that from about the fall of 2017 until about August 2019, MoneyLion required all covered borrowers to submit to arbitration, in violation of the MLA.  Am. Compl. ¶ 70; *see* 10 U.S.C. § 987(e)(3); 32 C.F.R. § 232.8(c).  The Court should dismiss Count Two because: (1) the CFPB provides no example of MoneyLion requiring a servicemember to submit

to arbitration; and (2) MoneyLion's arbitration agreement includes an opt-out provision, so customers are not required to submit to arbitration.

### 1.   The Amended Complaint does not include a single example of MoneyLion requiring a borrower to submit to arbitration

Section 987(e)(3) includes restrictions on the ability to "*require[ ]* the borrower to submit to arbitration . . . in the case of a dispute." 10 U.S.C. § 987(e)(3) (emphasis added). The associated provision of the MLA Rule includes a similar restriction. *See* 32 C.F.R. § 232.8(c) (near identical). The Amended Complaint repeatedly alleges that MoneyLion required servicemembers to submit to arbitration. Am. Compl. ¶¶ 69, 70. Yet, the Amended Complaint does not identify a single specific instance where MoneyLion actually required a servicemember to arbitrate. The CFPB investigated MoneyLion for years, yet did not include a single example. As a result, the Amended Complaint fails to include facts necessary to state a plausible claim.

### 2.   The opt-out provision confirms that MoneyLion does not *require* arbitration by its members

In addition, as the CFPB acknowledges, there is an opt-out provision in each arbitration agreement. *See* Am. Compl. ¶¶ 70, 74 (recognizing that the arbitration provisions at issue have opt-out provisions). The existence of an opt-out provision confirms that MoneyLion does not *require* borrowers to arbitrate.

Courts have consistently held that an arbitration provision is voluntary, rather than mandatory, when it includes an opt-out provision. Indeed, as a District of Maryland court concluded when addressing *this very issue under the MLA*, "the Agreement does not 'require the borrower to submit to arbitration' because the arbitration provision contains an opt-out clause." *Garrett v. Monterey Fin. Servs., LLC*, No.JKB-18-325, 2018 WL 3579856, at *4 (D. Md. July 25, 2018) (quoting 10 U.S.C. § 987(e)(3)). *See also Cooper v. Ruane Cunniff & Goldfarb Inc.*, No.

16-900-WHP, 2017 WL 3524682, at *8 (S.D.N.Y. Aug. 15, 2017), *rev'd on other grounds* 990 F.3d 173 (2d Cir. 2021) (noting the arbitration agreement was "entirely voluntary" where all employees had 30 day period to opt-out); *Singh v. Uber Tech. Inc.*, 235 F. Supp.3d 656, 673 (D.N.J. 2017) (arbitration provision was voluntary due to presence of opt-out clause).

The presence of the opt-out provision makes clear that MoneyLion does not require covered borrowers to submit to arbitration.  As a result, the CFPB cannot state a claim.

**D.    Counts Three and Four fail to state claims because 10 U.S.C. § 987(e)(3), (4) are inapplicable and there is nothing unreasonable about the opt-out provision**

Apparently recognizing that the opt-out undermines the CFPB's mandatory arbitration claim (Count Two), the Amended Complaint adds two claims asserting that the opt-out provision is invalid because it both "imposes onerous legal notice provisions in the case of a dispute" (Count Three) and "demands unreasonable notice . . . as a condition for legal action" (Count Four).  10 U.S.C. § 987(e)(3)-(4); Am. Compl. ¶¶ 76, 82.  It is telling that the CFPB only added these claims in the Amended Complaint *after* MoneyLion originally moved to dismiss Count Two.  The CFPB thought nothing of the opt-out until MoneyLion made clear that the provision defeated the CFPB's mandatory arbitration claim.  Regardless, Counts Three and Four fail because the statutory provisions at issue do not apply to the opt-out provision.  The opt-out is not applicable "in the case of a dispute," nor does it impose a "condition for legal action."  Further, the opt-out is neither onerous, nor unreasonable.

**1.    Sections 987(e)(3), (4) do not apply to the facts**

The CFPB alleges that, from 2017 to 2019, if a borrower wanted to opt-out of the arbitration provision, they were required to deliver a written notice to MoneyLion within 30 days of the date of the loan contract.  Am. Compl. ¶ 58.  According to the CFPB, this 30-day opt-out provision was an "onerous legal notice provision[ ] in the case of a dispute" (Count Three) and demanded

- 31 -

"unreasonable notice from the borrower as a condition for legal action" (Count Four).  *See* 10 U.S.C. § 987(e)(3) and (4); 32 C.F.R. § 232.8(c) and (d).  Both claims are built on a faulty premise.

The opt-out provision was not a "legal notice provision[] in the case of a dispute" because it did not require a borrower to give any notice *related to any specific dispute—i.e.*, "in the case of a dispute."  Instead, it allowed consumers to inform MoneyLion they would not agree to arbitrate in the future.  So consumers could give notice of the form of dispute resolution they might pursue should a dispute arise in the future.  But a consumer decides whether to opt-out *independent of any dispute*.  The plain language of the § 987(e)(3) simply does not cover the opt-out provision at issue.

The same is true of § 987(e)(4)'s bar on "unreasonable notice…as a condition for legal action."  The opt-out provision did not impose any condition on a consumer's ability to bring a legal action or require advance notice that the consumer was going to sue.  It simply provided a mechanism for consumers to opt-out of the arbitration agreement.  If the consumer did not opt out, they could still pursue "legal action" if any dispute arises down the road, without providing any advance "notice."  The legal action would just be in arbitration or small claims court.  And if the consumer did opt out, they are equally able to pursue "legal action," just in a wider array of forums.

### 2.     The opt-out provision is not "onerous" or "unreasonable"

Even if Section 987(e)(3) and (4) applied to MoneyLion's opt-out provision (they do not), the 30-day opt-out provision is not "onerous" or "unreasonable."  The CFPB alleges the opt-out is onerous or unreasonable because "[b]y the time borrowers would have become aware of an actionable claim," the 30-day deadline would have passed, so the provision made it "nearly impossible to deliver the notice in time to preserve their right to file a legal action."  Am. Compl. ¶ 81; *see also id.* ¶ 75.  In making this claim, the CFPB not only overlooks the fact that arbitration *is* a form of legal action, but also ignores decades of precedent approving similar provisions.

Opt-out provisions like MoneyLion's—and specifically the 30-day requirement—are commonplace.  In fact, they are so common that the CFPB has previously blessed a 30-day opt-out provision in its *own regulations* related to opting out of affiliate marketing under the Fair Credit Reporting Act ("FCRA").  Those regulations state that "[t]he consumer is given a reasonable opportunity to opt out if . . . [t]he consumer is given 30 days from the date the notice is mailed to elect to opt out by any reasonable means."  12 C.F.R. § 1022.24(b).  It is striking that the CFPB would argue MoneyLion's 30-day opt-out is onerous or unreasonable when the CFPB itself adopted a 30-day period as "reasonable" as part of a formal rulemaking process.  *See* 76 Fed. Reg. 79,308, 79,320 (Dec. 21, 2011).  The CFPB cannot have it both ways.

Moreover, scores of courts have found that a 30-day opt out precludes unconscionability. The fact that courts specifically and routinely approve 30-day opt out provisions when performing unconscionability analysis reflects the reasonable nature of the provision at issue here.  There are too many decisions to list, but they include:

- *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002) (rejecting the claim that 30 days to mail in an opt-out "was too short a period in which to make a decision" regarding arbitration);

- *Gavrilovic v. T-Mobile USA, Inc.,* No. 21-12709-NGE-JJCG, 2022 WL 1086136, at *5 (E.D. Mich. Mar. 25, 2022) ("arbitration provision, which included a 30-day opt-out period, is not procedurally unconscionable");

- *Ostreicher v. TransUnion, LLC*, No. 19-CV-8174-KMK, 2020 WL 3414633, at *5, *7 n.8 (S.D.N.Y. June 22, 2020) ("30 days to opt-out of the arbitration provision" in writing not unconscionable);

- *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 730-32 (E.D.N.Y. 2017) (30-day opt out provision not unconscionable); and

- *Zawada v. Uber Techs., Inc.*, No. 16-11334-LJM-SDD, 2016 WL 7439198, at *6–7 (E.D. Mich. Dec. 27, 2016) (30-day opt out period not unconscionable).

There is simply no basis for the CFPB to claim the 30-day opt-out provision is so burdensome as to qualify as "onerous" and "unreasonable."  The provision does not violate the MLA.  The Court should dismiss Counts Three and Four.

### E. The CFPB cannot state a claim related to disclosures under Count Five

In Count Five, the CFPB alleges that from about the fall of 2017 until about August 2019, MoneyLion made loans to covered borrowers without making all loan disclosures required by the MLA.  Am. Compl. ¶ 86 (citing 10 U.S.C. § 987(c) and 32 C.F.R. § 232.6(a)).

The CFPB fails to state a claim under 10 U.S.C. § 987(c) and 32 C.F.R. § 232.6(a) because it nowhere alleges which disclosures MoneyLion supposedly failed to make.  Under these provisions, creditors are required to disclose: (a) a statement of the annual percentage rate; (b) any disclosure required under TILA and Regulations Z; and (c) a clear description of the payment obligations.  10 U.S.C. § 987(c)(1); 32 C.F.R. § 232.6(a).  Rather than explain, with factual allegations, what, if any, disclosures MoneyLion omitted, the CFPB remarkably contends only that MoneyLion "made loans to covered borrowers without making all loan disclosures required by the MLA." Am. Compl. ¶ 86.  This amounts to nothing more than the barest recitation of the elements possible, which a court deciding a motion to dismiss may not credit.  *Iqbal*, 556 U.S. at 679–80. Given that these are the only allegations the CFPB makes, this claim clearly fails to pass muster.

### F. The CFPB cannot state a claim in Count Six because that claim is dependent on Counts One through Five

In Count Six, the Amended Complaint alleges that MoneyLion engaged in deceptive acts or practices in violation of the CFPA, 12 U.S.C. § 5536.  *See* Am. Compl. ¶¶ 88–94.  The entire theory of liability in Count Six is premised on the notion that MoneyLion committed the violations of the MLA alleged in Counts One through Five.  Stated another way, the Amended Complaint claims MoneyLion violated the CFPA by allegedly (1) imposing an MAPR over 36%: (2) requiring

covered borrowers to submit to arbitration and otherwise included onerous or unreasonable notice provisions; and (3) failing to make disclosures that the MLA requires. Am. Compl. ¶ 91. As discussed above, *supra* pp.21–34, the CFPB has failed to state a plausible claim in Counts One through Five. As a result, the CFPB cannot possibly (or plausibly) state a claim in Count Six.

### G.    The Court should dismiss the case with prejudice and without leave to amend

The CFPB investigated MoneyLion for years before filing its initial complaint. This multi-year investigation caused MoneyLion to spend significant time and incur significant expense responding to the CFPB. After the CFPB filed the initial complaint, it had the option to amend its complaint as part of the Court's pre-motion letter process, Dkt. 49, but the CFPB chose to have the parties brief MoneyLion's first motion to dismiss instead. Since the CFPB's initial complaint, it has had nearly nine months—and the benefit of MoneyLion's first motion to dismiss—to reconsider its allegations. But the CFPB still cannot state a plausible claim. And it is making MoneyLion file *another* motion to dismiss. As a result, the Court should not only grant MoneyLion's motion, it should do so *with prejudice and without leave to amend.* Further amendment would be both futile and cause MoneyLion undue prejudice. *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 409-10 (S.D.N.Y. 2006) (citations omitted) ("A district court has the discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").

### CONCLUSION

The Court should grant MoneyLion's motion to dismiss the First Amended Complaint.

Dated: July 11, 2023

Respectfully submitted,

/s/ Misha Tseytlin

MISHA TSEYTLIN
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

STEPHEN G. RINEHART
JAMES KIM
TROUTMAN PEPPER HAMILTON
SANDERS LLP
875 Third Avenue
New York, NY 10022
(212) 704-6000
(212) 704-5957 (fax)
stephen.rinehart@troutman.com
james.kim@troutman.com

DAVID GETTINGS
TROUTMAN PEPPER HAMILTON
SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
(757) 687-7747
(757) 687-1545 (fax)
dave.gettings@troutman.com

*Attorneys for MoneyLion*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2023, a true and accurate copy of the foregoing was served via the Court's CM/ECF system upon all counsel of record.

/s/ Misha Tseytlin
MISHA TSEYTLIN
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com