**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Consumer Financial Protection Bureau,

Plaintiff,

v.

MoneyLion Technologies Inc., ML Plus, LLC, MoneyLion of Alabama LLC, MoneyLion of Arizona LLC, MoneyLion of California LLC, MoneyLion of Colorado LLC, MoneyLion of Connecticut LLC, MoneyLion of Delaware LLC, MoneyLion of Florida LLC, MoneyLion of Georgia LLC, MoneyLion of Idaho LLC, MoneyLion of Illinois LLC, MoneyLion of Indiana LLC, MoneyLion of Kansas LLC, MoneyLion of Kentucky LLC, MoneyLion of Louisiana LLC, MoneyLion of Maryland LLC, MoneyLion of Michigan LLC, MoneyLion of Minnesota LLC, MoneyLion of Mississippi LLC, MoneyLion of Missouri LLC, MoneyLion of Nevada LLC, MoneyLion of New Jersey LLC, MoneyLion of New Mexico LLC, MoneyLion of New York LLC, MoneyLion of North Carolina LLC, MoneyLion of North Dakota LLC, MoneyLion of Ohio LLC, MoneyLion of Oklahoma LLC, MoneyLion of Oregon LLC, MoneyLion of South Carolina LLC, MoneyLion of South Dakota LLC, MoneyLion of Tennessee LLC, MoneyLion of Texas LLC, MoneyLion of Utah LLC, MoneyLion of Virginia LLC, MoneyLion of Washington LLC, MoneyLion of Wisconsin LLC, and MoneyLion of Wyoming LLC,

Defendants.

No. 1:22-CV-8308-JPC

Judge John P. Cronan

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

INTRODUCTION ....... 1
ARGUMENT ....... 1
I. The Supreme Court will decide the constitutionality of the CFPB's funding ....... 1
II. The Court should dismiss the CFPB's claims under the nondelegation doctrine ....... 2
III. The MLA Rule violates both the MLA and the APA ....... 3
A. The MLA Rule should be vacated because it contravenes the MLA's plain text ....... 3
B. The MLA Rule should also be vacated because it is arbitrary and capricious ....... 6
IV. The First Amended Complaint fails to state a claim ....... 8
A. The Complaint fails to establish the required purpose of the loans (all Counts) ....... 8
B. The CFPB fails to show that the loans violate the MAPR cap (Count One) ....... 9
1. The First Amended Complaint fails to identify loans that exceed 36% ....... 9
2. The CFPB fails to show MoneyLion's fees are part of the MAPR ....... 9
i. The First Amended Complaint fails to show that MoneyLion *imposed* the fees ....... 10
ii. The CFPB cannot show that fees are imposed "for participation in any plan or arrangement for consumer credit" ....... 11
C. The CFPB cannot state a claim related to arbitration (Count Two) ....... 12
D. The CFPB cannot state a claim related to the opt-out (Counts Three and Four) ....... 13
E. The CFPB cannot state a claim related to disclosure (Count Five) ....... 15
CONCLUSION ....... 15

## TABLE OF AUTHORITIES

**Cases**

*Allstates Refractory Contractors, LLC v. Su*,
___ F.4th ___, 2023 WL 5420372 (6th Cir. Aug. 23, 2023) .......... 2

*Am.'s Cmty. Bankers v. F.D.I.C.*,
200 F.3d 822 (D.C. Cir. 2000) .......... 5

*Bank of Am., N.A. v. F.D.I.C.*,
244 F.3d 1309 (11th Cir. 2001) .......... 5

*Calcutt v. Fed. Deposit Ins. Corp.*,
143 S. Ct. 1317 (2023) .......... 5

*Canonsburg Gen. Hosp. v. Burwell*,
807 F.3d 295 (D.C. Cir. 2015) .......... 5

*Casa De Md. v. U.S. Dep't of Homeland Sec.*,
924 F.3d 684 (4th Cir. 2019) .......... 6

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
63 F.4th 174 (2d Cir. 2023) .......... 2

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .......... 13

*Comty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) .......... 2

*Curtis v. Propel Prop. Tax Funding, LLC*,
915 F.3d 234 (4th Cir. 2019) .......... 8

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) .......... 6

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .......... 13

*Evenson v. Palisades Collection, LLC*,
No. 2:13-cv-1226, 2015 WL 3466936 (S.D. Ohio June 1, 2015) .......... 9

*Garrett v. Monterey Fin. Servs., LLC*,
No. JKB-18-325, 2018 WL 3579856 (D. Md. July 25, 2018) .......... 12

*Gilliam v. Levine*,
562 F. Supp. 3d 614 (C.D. Cal. 2021) .......... 9

*Krishtul v. VSLP United, LLC*,
No. 10-0909, 2014 WL 940941 (E.D.N.Y. Mar. 11, 2014) .......... 8

*Laurent v. PricewaterhouseCoopers LLP*,
794 F.3d 272 (2d Cir. 2015) .......... 6

*Lawrence + Mem'l Hosp. v. Burwell*,
812 F.3d 257 (2d Cir. 2016)........................................................................................ 5

*Life Tech. Corp. v. Promega Corp.*,
580 U.S. 140 (2017)................................................................................................. 14

*Lyons v. PNC Bank, N.A.*,
26 F.4th 180 (4th Cir. 2022) ..................................................................................... 13

*Mary Jo C. v. N.Y. State & Local Retirement Sys.*,
707 F.3d 144 (2d Cir. 2013)................................................................................... 4, 10

*Milner v. Dep't of Navy*,
562 U.S. 562 (2011)................................................................................................. 15

*Nat'l Shooting Sports Found., Inc. v. Jones*,
716 F.3d 200 (D.C. Cir. 2013) .................................................................................... 7

*Paushok v. Ganbold*,
No. 20 Civ. 4769, 2021 WL 1063206 (S.D.N.Y. Mar. 18, 2021) ...................................... 9

*Salazar v. King*,
822 F.3d 61 (2d Cir. 2016).......................................................................................... 4

*Schiller v. Tower Semiconductor Ltd.*,
449 F.3d 286 (2d Cir. 2006)..................................................................................... 6, 7

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943)..................................................................................................... 5

*Seila Law LLC v. CFPB*,
140 S. Ct. 2183 (2020)................................................................................................ 3

*Touby v. United States*,
500 U.S. 160 (1991).................................................................................................... 2

*United States ex rel. McGrath v. Microsemi Corp.*,
140 F. Supp. 3d 885 (D. Ariz. 2015) ......................................................................... 12

*United States v. Moseley*,
980 F.3d 9 (2d. Cir. 2020)......................................................................................... 13

*Utility Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014).................................................................................................... 3

*W. Coal Traffic League v. Surface Transp. Bd.*,
998 F.3d 945 (D.C. Cir. 2021)................................................................................. 6, 7

*Wachovia Bank v. Schmidt*,
546 U.S. 303 (2006).................................................................................................... 8

*Yuille v. Uphold HQ Inc.*,
No. 22-cv-7453, 2023 WL 5206888 (S.D.N.Y. Aug. 11, 2023)......................................... 8

**Statutes**

10 U.S.C. § 987 .......... *passim*

12 U.S.C. § 5531 .......... 2

15 U.S.C. § 1606 .......... 3

15 U.S.C. § 1639c .......... 14, 15

**Regulations**

12 C.F.R. § 1026.4 .......... 3

32 C.F.R. § 232.4 .......... 5

80 Fed. Reg. 43,560 (July 22, 2015) .......... 7, 8

**Other Authorities**

Merriam-Webster Dictionary Online (11th ed.) .......... 11

## INTRODUCTION

The CFPB's opposition asks this Court to bless its efforts to rewrite statutory directives, ignore adverse legal authority, and blindly accept the CFPB's interpretation of unambiguous language. The CFPB's audacity is, at least in part, a product of its unconstitutional funding structure and its power to interpret and enforce what it subjectively views as unlawful. The Court should refuse to countenance the CFPB's approach. Doing so would not only encourage the agency's unbridled exercise of power seen here; it would also limit the financial products available to servicemembers and other consumers, to their great detriment.

Even putting the CFPB's unconstitutional funding aside—an issue that the U.S. Supreme Court will hear in less than one month—the CFPB's response falls flat. Its position on the MLA Rule is atextual, with the CFPB effectively rewriting unambiguous statutory phrases to achieve its desired outcome. The CFPB also asks this Court to relieve it of its burden to plead Count One because the CFPB feels it is too onerous. It then claims that the MoneyLion arbitration clause in use until 2019 was somehow "mandatory," despite uniform case law analyzing opt-out provisions like the one at issue. And the CFPB repeatedly evades the plain meaning of statutory text with *ipse dixit* assertions that key terms have different meanings than any dictionary or case provides.

Accordingly, this Court should dismiss the CFPB's First Amended Complaint, bringing this entirely meritless lawsuit to an end.

## ARGUMENT

### I. The Supreme Court will decide the constitutionality of the CFPB's funding

In its Motion to Dismiss, MoneyLion explained that the CFPB's funding structure is unconstitutional under the Appropriations Clause and the non-delegation doctrine. MoneyLion Br.8–9 (citing, *e.g.*, *Comty. Fin. Servs. Ass'n of Am., Ltd. ("CFSAA") v. CFPB*, 51 F.4th 616 (5th

Cir. 2022)). While *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174 (2d Cir. 2023), adopted a contrary view, the Supreme Court will soon resolve these issues in *CFSAA*, No. 22-448, to be argued on October 3, 2023.

## II. The Court should dismiss the CFPB's claims under the nondelegation doctrine

The "unfair, deceptive, or abusive" provisions in the CFSA at issue are unconstitutional because Congress failed to articulate an intelligible principle to guide the CFPB's conduct, including not providing any definition of what constitutes "deceptive" conduct and giving insufficient guidance as to what constitutes "unfair" and "abusive." MoneyLion Br.10–11. This lack of definition, along with Congress giving the CFPB the authority to both define and prosecute the conduct it chooses under these terms—thereby combining in the CFPB broad legislative and executive authority—contravenes the Constitution's separation of powers, *id.*, and the prohibition that "only after" Congress "creates laws" can "the Executive come in and do its job[:] . . . enforce the laws, not create them." *Allstates Refractory Contractors, LLC v. Su*, ___ F.4th ___, 2023 WL 5420372, at *9 (6th Cir. Aug. 23, 2023) (Nalbandian, J., dissenting).

The CFPB's contrary arguments fail. While the CFPB claims that the non-delegation doctrine does not apply to enforcement, CFPB Resp.5, the CFPB has both the authority to determine what acts qualify as "unfair, deceptive, or abusive," 12 U.S.C. § 5531(a)–(b), and then enforce its own interpretations, Dkt.65 ¶¶ 88–116. The CFPB next argues that Congress provided it with "more-than-sufficient" guidance, CFPB Resp.5–6, but Congress provided no guidance whatsoever on the meaning of "deceptive," leaving the CFPB without an "intelligible principle," *Touby v. United States*, 500 U.S. 160, 165 (1991). MoneyLion Br.11. And the little guidance that Congress provided on "unfair" and "abusive" falls short of adequately guiding the CFPB's exercise

of its authority to "creat[e] substantive rules for a wide swath of industries [and] prosecut[e] violations." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2202 n.8 (2020).

## III. The MLA Rule violates both the MLA and the APA

### A. The MLA Rule should be vacated because it contravenes the MLA's plain text

The MLA Rule violates the MLA's plain-text requirement that APR have "the same meaning as in" the Truth In Lending Act ("TILA") and Regulation Z. MoneyLion Br.14 (quoting 10 U.S.C. § 987(i)(4)).[1] The MLA Rule contravenes this directive by including bona fide participation fees within the MAPR calculation for all credit products, except credit cards, despite TILA and Regulation Z's express *exclusion* of bona fide fees for participating in credit plans when calculating APRs for all types of consumer credit. MoneyLion Br.14–15.

The CFPB first rewrites the statutory text by arguing that the MLA's mandate that APR have "the same meaning" as in TILA, 15 U.S.C. § 1606(a)(1)(A), and Regulation Z, 12 C.F.R. § 1026.4(c)(4), only requires the MLA's APR to have the same "computational method for calculating APR," CFPB Resp.7. The CFPB would impermissibly replace the statutory phrase "same meaning as," *see* 10 U.S.C. § 987(i)(4), with the phrase "same computational method for calculating the APR," CFPB Resp.7, thereby "rewrit[ing] clear statutory terms to suit its own sense for how the statute should operate," *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). But Congress knew how to draft statutory text regarding APR computational methodology, and specifically chose not to do so when it used the phrase "same meaning as" in 10 U.S.C. § 987(i)(4).

Notably, in another subsection of the MLA, Congress required the Department of Defense ("DOD") to prescribe regulations establishing "[t]he method for calculating the applicable annual percentage rate of interest . . . , in accordance with the limit established under this section." 10

[1] Finance charges, not interest, are the primary input for APR under TILA. 15 U.S.C. § 1606(a).

U.S.C. § 987(h)(2)(B). When "Congress uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Mary Jo C. v. N.Y. State & Local Retirement Sys.*, 707 F.3d 144, 156 (2d Cir. 2013) (citation omitted). Here, the contrasting phrases are in the *same* statutory *section*, and the CFPB errs in equating them. Indeed, if Section 987(i)(4) requires the MAPR to be calculated using the same methodology—but not the same substance (i.e., "same meaning")—as in TILA and Regulation Z, it would make Section 987(h)(2)(B) superfluous: DOD would not need to promulgate regulations parroting that methodology. Accordingly, the only textually permissible reading is that methodology and meaning are separate, and the latter must be the same as in TILA and Regulation Z.

The CFPB next argues that Section 987(i)(4)'s second sentence salvages the MLA Rule by changing the meaning of APR to deviate from the "meaning" in TILA and Regulation Z, CFPB Resp.8–9, but the CFPB's argument only makes the MLA Rule's contravention of the MLA even clearer. The CFPB changes its position from its initial opposition by arguing (for the first time in these proceedings) that Section 987(i)(4)'s second sentence does not "*mandate*" the inclusion of any particular fees in the MAPR, but merely "*permits*" the inclusion of any fee, apparently at the DOD's unfettered discretion. CFPB Resp.10 (emphasis added). Section 987(i)(4)'s second sentence provides that "all fees and charges . . . *shall* be included in the calculation of the annual percentage rate." 10 U.S.C. § 987(i)(4) (emphasis added). Congress' "use of the word 'shall' makes the action mandatory," and such "mandatory, non-discretionary language creates boundaries and requirements for agency action." *Salazar v. King*, 822 F.3d 61, 77 (2d Cir. 2016). The only permissible reading of the two sentences in Section 987(i)(4) together is that including "all fees and charges" means including all fees and charges specified in TILA and Regulation Z, as MoneyLion explained. MoneyLion Br.16. The CFPB's contrary position—allowing the DOD

to pick and choose which fees in TILA and Regulation Z are included—would permit the DOD to pick marketplace winners and losers, in a manner Congress did not authorize.

The CFPB's reading—that the second sentence permits, but does not require, including bona fide fees in the MAPR—makes no textual sense. Again, the second sentence mandates that all fees and charges "*shall be included in the calculation of the annual percentage rate*." 10 U.S.C. § 987(i)(4) (emphasis added). If, as the CFPB maintains, "all fees and charges" includes bona fide participation fees, then those fees must be included in *all* APR calculations, including for credit cards. But that would contradict both the CFPB's argument before this Court and the MLA Rule itself, which *excludes* bona fide participation fees for credit cards from the MAPR calculation. 32 C.F.R. § 232.4(c)(1)(iii)(C), (d)(1). The CFPB's made-for-litigation position—based upon a rationale found nowhere in that Rule, in violation of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)[2]—is impermissible because it replaces the phrase "shall be included" with the CFPB's fabricated "may be included." *See Lawrence + Mem'l Hosp. v. Burwell*, 812 F.3d 257, 267 (2d Cir. 2016).

The CFPB's invocation of deference to the DOD's claimed "discretion," CFPB Resp.10, fails for largely the same reasons. Whatever authority agencies maintain to interpret allegedly

[2] The CFPB is also wrong in claiming that the *Chenery* principle—that "reviewing courts 'must judge the propriety of [agency] action solely by the grounds invoked by the agency,'" *Calcutt v. Fed. Deposit Ins. Corp.*, 143 S. Ct. 1317, 1318 (2023) (citation omitted)—does not apply here, CFPB Resp.9. *Chenery* applies to government lawyers' attempts to defend an agency's "exercise of judgment in an area which Congress has entrusted to the agency" on a basis not invoked in the record. *Chenery*, 318 U.S. at 88. It thus applies to the CFPB's attempt to defend the MLA Rule based upon an (incorrect) reading of the MLA that the DOD never pressed in the Rule, after claiming statutory ambiguity, under *Chevron* Step 2. *See, e.g.*, *Am.'s Cmty. Bankers v. F.D.I.C.*, 200 F.3d 822, 835 (D.C. Cir. 2000). This is different than the cases the CFPB relies upon for *Chenery*'s inapplicability to legal issues like "issue preclusion," *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 304 (D.C. Cir. 2015), or whether a statute is unambiguous under *Chevron* Step 1, *Bank of Am., N.A. v. F.D.I.C.*, 244 F.3d 1309, 1319 (11th Cir. 2001). *See* CFPB Resp.9 & n.39. Nor is the CFPB correct that the DOD relied on Section 987(i)(4) and purported statutory ambiguity to read the "shall" directive as discretionary. The DOD never contended in the MLA Rule that Section 987(i)(4) permitted it to include "all fees and charges" only when it so chose. *Contra* CFPB Resp.9–10.

vague statutory directives—an issue that is, itself, before the Supreme Court in *Loper Bright Enterprises, et al. v. Raimondo*, No. 22-451—they receive no deference "where the agency interpretation is inconsistent with the statute's plain meaning." *Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 287 (2d Cir. 2015). The CFPB does not point to any relevant ambiguity in the definition of "annual percentage rate" in Section 987(i)(4)'s first sentence. Nor does any ambiguity permit agencies to rewrite "shall" in the second sentence of Section 987(i)(4) into "may," precluding any deference. *Id.*

### B. The MLA Rule should also be vacated because it is arbitrary and capricious

The MLA Rule is also arbitrary and capricious because it discriminates without reasonable justification between credit cards and all other forms of consumer credit. MoneyLion Br.17–20.

The CFPB is wrong to claim this argument is time-barred. CFPB Resp.11. "[S]ubstantive challenges to agency action" have no relevant "time bars," *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 293 (2d Cir. 2006), and "arbitrary and capricious" challenges arise from a "substantive command" of the APA, *W. Coal Traffic League v. Surface Transp. Bd.*, 998 F.3d 945, 955 n.9 (D.C. Cir. 2021) (citation omitted). The CFPB's reliance on *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016), CFPB Resp.11 & n.46, is misplaced. The Supreme Court mentioned in dicta in *Encino* that arbitrary-and-capricious challenges were "procedural" only for purposes of deciding whether *Chevron* deference applied. 579 U.S. at 221–22. Courts have properly declined to apply this dicta outside of that *Chevron* context, *see, e.g.*, *W. Coal Traffic League*, 998 F.3d at 954–55; *Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 701, 703 (4th Cir. 2019). Similarly, *Schiller* does not support the CFPB's argument, *contra* CFPB Resp.11 & n.46, as the Second Circuit ruled that the plaintiff's argument there was procedural because his challenge was centered on the SEC's failure to comply with "procedures created by

the [Securities] Exchange Act [of 1934]," 449 F.3d at 293–94, not a "substantive command" of the APA, *W. Coal Traffic League*, 998 F.3d at 955 n.9 (citation omitted).

The CFPB's APA defense of the MLA Rule fails on the merits. CFPB Resp.13–14. The CFPB does not rebut MoneyLion's point that non-credit card products can offer the same value for bona fide participation fees, meaning that it is arbitrary for the DOD to disfavor non-credit card products. Instead, the CFPB evades this argument by labeling it a "policy disagreement." CFPB Resp.12. But nothing in the CFPB's purported "policy" reasoning withstands APA review. All of the reasons that the CFPB offers for excluding participation fees for credit cards—built-in pricing mechanisms, the possibility of "dramatic changes" to the terms and availability of credit card products to servicemembers, that fees for specific products or services can be distinguished from the cost of borrowing, and the like, CFPB Resp.12–13—apply equally to other types of credit, including MoneyLion's loans, MoneyLion Br.17–19. And the CFPB's unfounded concerns about excluding participation fees for *other* credit products apply equally to credit cards.

The CFPB's reliance on the CARD Act similarly fails. *See* CFPB Resp.14. Nowhere does the CFPB explain which aspects of the CARD Act's protections for credit cards are a useful or necessary supplement to the MLA Rule, or if the DOD ever considered whether similar protections could have been adopted for all credit products covered by the MLA Rule itself. *See* 80 Fed. Reg. 43,560, 43,572 (July 22, 2015); *see also Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 215 (D.C. Cir. 2013) (it is arbitrary and capricious for an agency to fail to "consider and explain its rejection of 'reasonably obvious'" and "'significant and viable' alternatives" (citations omitted)). The CFPB now asserts (without support) that the DOD "considered the existence of the CARD Act's consumer protections" when deciding the proper amount of protection to provide consumers. CFPB Resp.14. But the CFPB fails to explain why the DOD's goal of "limiting credit

practices that have an adverse impact on covered borrowers" without "unduly impeding the availability of credit that is benign or beneficial to those borrowers," *id.* (quoting 80 Fed. Reg. at 43,573), would not equally apply to other forms of credit.

## IV. The First Amended Complaint fails to state a claim

Even apart from the arguments above, the First Amended Complaint does not plausibly allege any claim against MoneyLion. The Court should dismiss the CFPB's claims with prejudice.

### A. The Complaint fails to establish the required purpose of the loans (all Counts)

The First Amended Complaint fails to plausibly allege that any MoneyLion loan constitutes credit "primarily for personal, family, or household purposes." *See* MoneyLion Br.21–25.

The CFPB faults MoneyLion for focusing on a *consumer's* purpose in obtaining a loan, rather than MoneyLion's purpose in offering it. CFPB Resp. 16. But the consumer's purpose is critical. *See, e.g.*, *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 245 (4th Cir. 2019) (examining consumer's motivations in seeking credit); *Krishtul v. VSLP United, LLC*, No. 10-0909, 2014 WL 940941, at *9 (E.D.N.Y. Mar. 11, 2014) (courts seek to "determine *a borrower's* primary motive" (emphasis added)). The CFPB discounts those cases because some arise under TILA and the Bankruptcy Code. But when Congress uses the same "purpose" phrasing in different statutes concerning the same subject, courts presume the phrase carries the same meaning. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) ("[S]tatutes addressing the same subject matter generally should be read 'as if they were one law.'" (citations omitted)). Courts, including in this district, thus reasonably look to interpretations of the phrase "personal, family, or household purposes" in TILA and the Bankruptcy Code's provisions concerning consumer debt to inform their interpretation of the same phrase in other consumer statutes. *See, e.g.*, *Yuille v. Uphold HQ Inc.*, No. 22-cv-7453, 2023 WL 5206888, at *7 (S.D.N.Y. Aug. 11, 2023).

The CFPB further asks the Court to assume that because many loans are geared toward consumers, the loans must be for a required purpose. But the CFPB must plead facts plausibly establishing that requirement. *See Paushok v. Ganbold*, No. 20 Civ. 4769, 2021 WL 1063206, at *7–8 (S.D.N.Y. Mar. 18, 2021); *Evenson v. Palisades Collection, LLC*, No. 2:13-cv-1226, 2015 WL 3466936, at *3–4 (S.D. Ohio June 1, 2015) (rejecting presumption that loan was for consumer purposes). None of the cases the CFPB cites permit the Court to *assume* this required element. CFPB Resp. 16. For example, in *Gilliam v. Levine*, 562 F. Supp. 3d 614, 622–24 (C.D. Cal. 2021), the court went through a *five-part* test to determine whether the loan met the required purpose. The CFPB has not plead any facts supporting such an analysis, much less the ultimate conclusion.

**B. The CFPB fails to show that the loans violate the MAPR cap (Count One)**

Turning to the CFPB's claim that MoneyLion's loans exceed a 36% MAPR, the Court should dismiss Count One because the CFPB fails to: (1) plausibly identify any loans that exceed 36%; or (2) plausibly allege the MAPR must include membership fees. MoneyLion Br.25–29.

**1. The First Amended Complaint fails to identify loans that exceed 36%**

Because Count One alleges that MoneyLion's membership fees result in "all Membership-Program Loans imposing MAPRs greater than 36%," Dkt.65 ¶ 66, the CFPB must plausibly plead facts showing loans with an unlawful MAPR. The CFPB fails to do so. Indeed, by asserting that it would be too onerous to go through "separate and individualized MAPR calculations for each and every possible combination of the[ ] varying terms" in MoneyLion's loans, CFPB Resp.22, the CFPB rightly concedes that it failed to plead a necessary element of this claim.

**2. The CFPB fails to show MoneyLion's fees are part of the MAPR**

In wrongly asserting that the MAPR calculation must include the full amount of any membership fees, the CFPB refuses to meaningfully engage with the MLA Rule's plain text, which

prohibits only fees that are "imposed" "for participation in any plan or arrangement for consumer credit." Neither requirement is satisfied here. MoneyLion Br.26–29.

#### i. The First Amended Complaint fails to show that MoneyLion *imposed* the fees

The MLA Rule does not define "impose," so its plain meaning controls. MoneyLion cited multiple dictionary definitions of "impose" that demonstrate the term requires an element of force or compulsion. MoneyLion Br.26–27. In response, and without providing any supporting source—dictionary or otherwise—the CFPB simply declares that "impose" "means nothing more than to charge." CFPB Resp.20. The CFPB cannot define the term by fiat.

Moreover, the CFPB's definition is contrary to the regulatory text. The MLA Rule's and Regulation Z's use of "impose" demonstrate that "impose" means more than to "charge" because the terms are used differently in those regulations, rather than interchangeably. MoneyLion Br.27. The CFPB tries to brush off this point in a footnote, pointing out that "impose" and "charge" are used in the same subsection. CFPB Resp.20 n.89. This fact only highlights that the DOD intended these different terms to have different meanings. *See Mary Jo C.*, 707 F.3d at 156.

Finally, the CFPB ignores the undisputed fact that customers who choose to sign up for a paid membership can recoup the membership fees. MoneyLion Br.27. In other words, even if "impose" means nothing more than "charge," the First Amended Complaint acknowledges—and the CFPB does not dispute—that customers can avoid being charged any membership fees by taking advantage of the rewards program that comes with the MoneyLion membership. MoneyLion cannot "impose" a *voluntary* fee that customers have the ability to *fully recoup*.[3]

---

[3] The CFPB also claims that "payment of the membership fees was not optional." CFPB Resp.20. There is no dispute that consumers voluntarily choose to sign up for a membership and thus voluntarily choose to pay a membership fee. "Optional" means "involving an option, not compulsory." *Optional,* Merriam-

**ii. The CFPB cannot show that fees are imposed "for participation in any plan or arrangement for consumer credit"**

The CFPB also fails to show that MoneyLion's membership fees are imposed "*for* participation in any plan or arrangement for consumer credit," 32 C.F.R. § 232.4(c) (emphasis added), or how any such fees should be included in the MAPR to push it above 36%.

First, the CFPB fails to engage with the regulation's plain meaning. The CFPB claims that because customers were only eligible for loans if they paid a membership fee, the fee must be for participation in any plan or arrangement for credit. CFPB Resp.21. But dictionary definitions show that membership fees can only conceivably be included in the MAPR if they are imposed for the purpose of receiving credit, and not for other purposes. MoneyLion Br.28. The First Amended Complaint confirms that customers pay a membership fee to access a suite of benefits, only one of which is a loan product. Dkt.65 ¶¶ 49–51. Just because the membership fee opens the door to a suite of benefits including a loan does not mean the entire membership fee is *for* the loan.

Second, the CFPB's argument that MoneyLion simply invents a "bona-fide-fee exemption" is unpersuasive. CFPB Resp.21. MoneyLion is simply applying the plain meaning of "for participation in any plan or arrangement for consumer credit"—an exercise the CFPB seems to have no interest in doing. Under the CFPB's theory, if MoneyLion offered a membership that included 1,000 substantial benefits, with potential access to a loan being only one, the CFPB would still treat the membership fee as being paid "for" access to the loan and nonsensically allocate every cent of the membership fee to the MAPR. That cannot be right.

The CFPB cannot escape this conclusion by arguing that the benefits MoneyLion actually offers are "largely worthless." CFPB Resp.21. MoneyLion obviously disputes that

Webster Dictionary Online (11th ed.), https://www.merriam-webster.com/dictionary/optional. (last accessed Sept. 7, 2023). That aptly describes the consumer's choice to sign up for a membership.

characterization of its products and services. And "mere recitation of the legal conclusion that the products were worthless is no substitute for [the] well pled facts[ ]." *United States ex rel. McGrath v. Microsemi Corp.*, 140 F. Supp. 3d 885, 898–99 (D. Ariz. 2015) (citation omitted).

**C. The CFPB cannot state a claim related to arbitration (Count Two)**

The CFPB argues that MoneyLion's loan agreement violated the MLA until 2019 by including an arbitration provision, CFPB Resp.22-28, but that is wrong for multiple reasons.

First, as the CFPB recognizes, it must show that MoneyLion "require[d]" borrowers to "submit" to mandatory arbitration clauses. CFPB Resp.23. The CFPB cannot make this showing because an arbitration provision with an opt-out is not mandatory, as the caselaw overwhelmingly demonstrates, *see, e.g.*, *Garrett v. Monterey Fin. Servs., LLC*, No. JKB-18-325, 2018 WL 3579856, at *4 (D. Md. July 25, 2018)—including the only decision to address this issue as to the MLA. MoneyLion Br.30-31 (collecting cases). The CFPB's only response is to assert that these decisions, including *Garrett*, were wrong, CFPB Resp.26, but the CFPB stands alone in that view.

Second, the CFPB's argument that MoneyLion's interpretation creates superfluity between Sections 987(e)(3) and (f)(4) does not hold water. Under subsection (e)(3), an arbitration agreement that *requires* a borrower to *submit* to arbitration is unlawful. But subsection (e)(3) does not prohibit an arbitration agreement with an opt-out clause because the agreement is not mandatory. If, however, a creditor attempts to *enforce* an arbitration provision (even a non-mandatory one) against a covered member, then subsection (f)(4) would bar it from doing so. Thus, both (e)(3) and (f)(4) do work. Subsection (e)(3) prohibits mandatory arbitration provisions, potentially voiding the contract where the lender attempts to require arbitration through those

means. *See* 10 U.S.C. § 987(e)(3). Meanwhile, subsection (f)(4) applies a more tailored remedy, merely preventing a creditor from compelling arbitration under such a provision.[4]

Third, the CFPB's analysis of case law is unpersuasive. The CFPB unhelpfully relies on *United States v. Moseley*, 980 F.3d 9, 26–27 (2d. Cir. 2020). *Moseley* addressed whether a *disclosure* was factually accurate at the time of loan disbursement, not whether a consumer was then bound to arbitrate. *Id.* Regardless, even if *Moseley* stands for the proposition that the relevant time period for evaluating an arbitration clause is loan disbursement, covered members here are *not* bound to arbitrate *at disbursement* because of the 30-day opt out option. And *Lyons v. PNC Bank, N.A.*, 26 F.4th 180 (4th Cir. 2022), an out-of-circuit TILA decision, addressed different statutory text and did not consider whether an opt-out provision avoided mandatory arbitration.

### D. The CFPB cannot state a claim related to the opt-out (Counts Three and Four)

In Counts Three and Four, the CFPB claims the opt-out provision in agreements through August 2019 violated Sections 987(e)(3) and (4). These claims are best described as square pegs in round holes, with the CFPB only asserting these claims to collaterally attack the arbitration provision. By their plain terms, Section 987(e)(3) and (4) do not apply to the opt-out provision here. MoneyLion Br.31–32. And even if they did, there is nothing unreasonable about the opt-out. MoneyLion Br.32–34. Indeed, the CFPB previously *endorsed* a 30-day opt-out as reasonable. MoneyLion Br.33.[5] The CFPB cannot salvage its claims by ignoring unambiguous statutory text.

[4] Congress may have had other reasons for singling out arbitration in subsection (f)(4). For example, if Congress wants to supplant the Federal Arbitration Act ("FAA"), it must do so with a "clear and manifest" intent. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citations omitted). Thus, subsection (f)(4) serves an additional purpose—overriding the FAA's presumption in favor of arbitration.

[5] MoneyLion repeatedly cited cases finding a 30-day opt-out provision reasonable as a matter of law. MoneyLion Br.33–34. The CFPB's only response to these cases is that they relied on the FAA presumption in favor of arbitrability. CFPB Resp.26. That is not correct. Courts typically address the reasonableness of the opt-out when assessing unconscionability (or the lack thereof), and look to state contract law when conducting that review, not the presumption in favor of arbitrability under the FAA. *See, e.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002).

First, Section 987(e)(3)'s statutory language makes clear that the provision only applies in a specific context: "in case of a dispute." 10 U.S.C. § 987(e)(3). Because the opt-out operates independently of any dispute, it is outside the provision's ambit. Whether or not a dispute exists has no bearing on the opt-out provision. MoneyLion Br. 32. The CFPB responds by declaring that the words "in the case of a dispute" have no meaning beyond "simply describ[ing] the purpose of this prophylactic measure." CFPB Resp.30. This nonsensical view wrongly strips the provision's words of any real meaning. *See Life Tech. Corp. v. Promega Corp.*, 580 U.S. 140, 147 (2017) (courts "should favor an interpretation that gives meaning to each statutory provision"). This Court should reject the CFPB's argument that the statute does not actually mean what it says.

Second, the restriction on "unreasonable notice . . . as a condition for legal action," 10 U.S.C. § 987(e)(4), does not apply to the opt-out because it does not require any notice from borrowers before undertaking legal action. Moreover, borrowers *can* engage in legal action against MoneyLion without ever sending an opt-out. The CFPB tries to avoid this conclusion by arguing that "legal action" and "legal recourse" mean only suing in federal or state court. CFPB Resp.31–32. But nothing in the statute limits legal action or recourse in this way. Instead, the MLA speaks broadly of "legal action" and "legal recourse" to encompass both civil actions and arbitration, while singling out mandatory arbitration issues when necessary. *See* 10 U.S.C. § 987(e)(2), (3), (4). In doing so, the MLA *both* bars mandatory arbitration *and* ensures access to legal action (arbitration or otherwise) free of burdensome notice or waiver provisions. *See id.*

The CFPB's restrictive reading is also inconsistent with Congress's ability to distinguish between civil actions in courts and arbitration when it so intends. For example, in TILA, Congress prohibited terms that prevented borrowers from "bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction." 15 U.S.C. § 1639c(e).

Congress also specifically categorized arbitration as a "nonjudicial procedure." *Id.* The CFPB provides no basis to conclude that Congress clearly distinguished "court" and "nonjudicial procedure" in TILA, but then used "legal action" to refer only to "court" in the MLA. Nor can the CFPB ground its "atextual" reading in the "DOD Report." CFPB Resp.24 n.105. Even if the DOD Report was legislative history, which it is not, legislative history is irrelevant in the face of clear statutory text. *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011). The MLA's term "legal action" includes arbitration, and reading it that way ensures the broadest protections for borrowers.

### E. The CFPB cannot state a claim related to disclosure (Count Five)

The CFPB fails to state a claim in Count Five because it alleges, without any factual detail, that MoneyLion "made loans to covered borrowers without making all loan disclosures required by the MLA." MoneyLion Br.34 (citing Dkt.65 ¶ 86). The CFPB defends its pleading by asserting that the First Amended Complaint "plainly references the required disclosures—including, specifically, the required statement of MAPR." CFPB Resp.33. This response compounds the concern. The CFPB's blanket reference to the "required disclosures," with its refusal to identify any allegedly deficient disclosures besides the "statement of MAPR," leaves MoneyLion (and the Court) guessing whether the MAPR disclosure is the only disclosure at issue. And if the CFPB is agreeing to limit its claim to only the "required statement of MAPR," CFPB Resp.33, that claim fails for the reasons discussed above.

## CONCLUSION

The Court should grant MoneyLion's motion to dismiss the First Amended Complaint.

Dated: September 8, 2023

Respectfully submitted,

/s/ Misha Tseytlin

MISHA TSEYTLIN
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

STEPHEN G. RINEHART
JAMES KIM
TROUTMAN PEPPER HAMILTON
SANDERS LLP
875 Third Avenue
New York, NY 10022
(212) 704-6000
(212) 704-5957 (fax)
stephen.rinehart@troutman.com
james.kim@troutman.com

DAVID GETTINGS
TROUTMAN PEPPER HAMILTON
SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
(757) 687-7747
(757) 687-1545 (fax)
dave.gettings@troutman.com

*Attorneys for MoneyLion*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of September, 2023, a true and accurate copy of the foregoing was served via the Court's CM/ECF system upon all counsel of record.

/s/ Misha Tseytlin
MISHA TSEYTLIN
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com