IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | Case No. 1:22-cv-08308-JPC |
| v. | |
| MoneyLion Technologies Inc., *et al.*, | |
| Defendants. | |

**OPPOSITION TO DEFENDANTS' MOTION TO STAY**

    The Court should deny Defendants' request to halt this public enforcement action in its tracks for months on end based on a legal theory rejected by the Second Circuit.

    First, such delay is unwarranted by judicial efficiency. By asking the Court to adjudicate their request for a stay, Defendants have already imposed more burden on the Court and the parties than if the case had simply continued forward in the ordinary course. Second, a stay would be inconsistent with the Second Circuit's decision to resolve a case involving the very same legal claim—and to soundly reject that claim—even after the Supreme Court had agreed to consider the same issue. Third, the delay Defendants seek would stymie a government enforcement action brought to protect consumers, including active-duty servicemembers and their dependents, from harmful violations of federal law, which Defendants do not dispute are ongoing. Fourth, a stay is not needed to avoid harm to Defendants. If the Court denies their motion, the only consequence for Defendants will be that they must continue to litigate this lawsuit and answer the Bureau's well-pled allegations that they are violating the law and harming consumers.

1

## BACKGROUND

The Bureau brought this case to address Defendants' violations of the Military Lending Act and Consumer Financial Protection Act, including by overcharging servicemembers and their dependents on illegal loans. Defendants moved to dismiss based in part on the claim that Congress violated the Appropriations Clause when it passed a law appropriating money for the Bureau's operations. ECF No. 58 at 8-11.[1] Two months later, the Second Circuit rejected that argument. *See CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 181-83 (2d Cir. 2023) (holding that "the CFPB's funding structure is proper under the Appropriations Clause"), *pet. for cert. pending*, No. 22-1233 (U.S.).

With their argument for dismissal foreclosed by binding precedent, Defendants now seek to at least win delay. They claim that because the Fifth Circuit held—contrary to the view of this Circuit and of every other court to have ever considered the issue—that the Bureau's funding violates the Appropriations Clause, and because the Bureau therefore had to ask the Supreme Court to review and reverse that ruling, this public enforcement action should be halted to await the Supreme Court's decision. *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, No. 22-448 (U.S.) ("*CFSA*"). The Supreme Court heard oral argument in that case on October 3. It is expected to issue a decision next year, perhaps not until the end of June 2024.

The parties here completed briefing Defendants' pending motion to dismiss the amended complaint on September 8, 2023. Discovery has not yet begun.

---

[1] By statute, the Bureau's funds come from the earnings of the Federal Reserve System, of which the Bureau is a part. *See* 12 U.S.C. §§ 5491(a), 5497(a). For fiscal years 2013 and later, Congress capped the amount the Bureau can draw at $597.6 million. *See id.* § 5497(a)(2)(A)(iii). That cap is then adjusted annually based on a particular measure of inflation. *Id.* § 5497(a)(2)(B).

**LEGAL STANDARD**

The party seeking a stay bears the burden to show that it is warranted. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012). In considering motions to stay, courts "must weigh competing interests and maintain an even balance." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). Thus, courts in this District take account of the interests of the parties, the interests of the courts, and the public interest. *See, e.g.*, *Rankine v. Levi Strauss & Co.*, --- F. Supp. 3d ----, 2023 WL 3582323, at *7 (S.D.N.Y. May 22, 2023). The Supreme Court has emphasized, however, that "if there is even a fair possibility that the stay … will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward" in order to prevail. *Landis*, 299 U.S. at 255.

**ARGUMENT**

This case should not be halted for months based on a legal claim that the Second Circuit has rejected and while Defendants continue to violate the law and harm consumers.

**1. A stay is not warranted by judicial efficiency.**

Defendants claim (at 7-8) that a stay "will greatly simplify the matters at issue here" because Defendants' motion to dismiss raises the same challenge to the Bureau's funding that the Supreme Court is considering in *CFSA*. But that challenge has already been resolved by the Second Circuit. *See Moroney*, 63 F.4th at 181-83 (holding that "the CFPB's funding structure is proper under the Appropriations Clause"). The Second Circuit's holding controls here, and it squarely forecloses Defendants' funding argument. *See In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294 n.2 (S.D.N.Y. 2021) ("Grants of certiorari do not change the law, and a district court remains bound by circuit precedent until the Supreme Court or the court of appeals changes that precedent.").

Denying a stay therefore will not require the Court to "decide the issue before the Supreme Court." *Contra* Mot. at 7. It will require only that the Court confirm that the Second Circuit has decided the issue in a binding published decision. The burden of doing so will be no more than de minimis. *See Moroney*, 63 F.4th at 181-83. Indeed, just by seeking to stay this case, and thereby requiring the Court to devote its limited time and resources to resolving this ancillary dispute wholly unrelated to the merits of the Bureau's claims, Defendants have already imposed a greater burden on the Court and the parties than would have come from simply letting the case move forward as normal.

**2. A stay would be directly at odds with the Second Circuit's resolution of *Moroney*.**

Defendants' view that this—and, presumably, every other—Bureau enforcement action must remain on hold for as long as eight months or more until *CFSA* is decided cannot be reconciled with the Second Circuit's approach in *Moroney*. Defendants' position would not only hamstring effective enforcement of federal law, it would improperly give nationwide effect to one circuit's ruling—even in a circuit, such as this one, that has specifically *rejected* that ruling.

*Moroney* was a Bureau action brought to enforce an administrative subpoena. 63 F.4th at 178. The defendant in that case argued that the subpoena should not be enforced because the Bureau's funding was unconstitutional. The district court rejected that argument and entered an order enforcing the Bureau's subpoena. *Id.* at 178-79. After the respondent appealed, the Second Circuit denied its motion to stay the order pending appeal "because [the respondent] has not met the requirements for a stay." *See* Order, *Moroney*, No. 20-3471 (2d Cir. Mar. 11, 2021), ECF No. 66. As a result, the district court's order remained (and remains) in effect, and the respondent accordingly produced information in response to the subpoena. The Second Circuit then proceeded to hear the case as normal. More than that, it issued a decision resolving the funding

4

challenge, along with the rest of the case, *after* the Supreme Court granted certiorari in *CFSA*. *See Moroney*, 63 F.4th at 182 (noting that certiorari had been granted). That outcome is wholly inconsistent with Defendants' apparent view that no case in this Circuit should be allowed to move forward—let alone be resolved on the merits—until a decision in *CFSA*.

Defendants note (at 7-8) that the Second Circuit stayed issuance of its mandate in *Moroney* while the respondent petitions for certiorari. But that order was without practical effect because the court had already denied a stay of the district court's order pending appeal, and the respondent had already responded to the subpoena. What is far more relevant than the stay of the mandate is the fact that the Second Circuit proceeded to hear and resolve not only the funding claim but the whole of the parties' dispute, and it did so even after certiorari was granted in *CFSA*—just what Defendants claim should not happen here.

### 3. A stay would be counter to the public interest.

Putting this enforcement suit on hold for as long as eight months or more would harm consumers, the Bureau, and the public interest.

Defendants do not deny that they continue to engage in at least some of the violations alleged, including the extension of loans that violate the Military Lending Act. *See* Mot. at 13. The public's already "strong interest in the vigorous enforcement of consumer protection laws" is therefore "heightened" here. *CFPB v. TransUnion*, No. 1:22-cv-01880, 2023 WL 3605995, at *2 (N.D. Ill. Apr. 13, 2023); *see also id.* (noting that, if the court granted a stay, "consumers will continue to suffer harm because of defendants' unlawful conduct"). The delay that Defendants seek would harm that important public interest by giving Defendants time to carry out more violations—such as extending illegal high-interest loans to servicemembers and their dependents—and thereby inflict more injury on consumers. It would further harm the public

interest by needlessly postponing the resolution of this case and the distribution of redress to consumers harmed by Defendants' unlawful conduct.

Moreover, because "[d]elay inherently increases the risk that witness memories will fade and evidence will become stale," *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007), a stay could make it harder for the Bureau to secure any relief. For example, third parties that provide or have provided services to Defendants in connection with their years of unlawful practices may possess relevant information, which the Bureau intends to seek in discovery. Unnecessary delay only increases the risk that such information may be lost or unavailable by the time discovery begins. This risk is heightened here given the length of time that has passed since some of Defendants' violations occurred. *See* Am. Compl. ¶¶ 29, 55, ECF No. 65 (alleging that Defendants' illegal lending program began at least six years ago). While Defendants correctly note (at 12-13) that the Bureau conducted an investigation into their illegal conduct before it filed suit, that hardly shows that no further fact discovery is called for in this case, including (but not only) into violations Defendants committed since this case began.

Defendants try to overcome these strong public interest concerns by hypothesizing (at 7) that the Supreme Court's resolution of the funding challenge in *CFSA* may "dispose of this case entirely." But every court bar one that has considered that challenge has rejected it. *See, e.g.*, *Moroney*, 63 F.4th at 181-83; *CFPB v. NDG Fin. Corp.*, No. 1:15-cv-5211, 2016 WL 7188792, at *21 (S.D.N.Y. Dec. 2, 2016); *CFPB v. Consumer Advoc. Ctr., Inc.*, 8:19-cv-01998, 2023 WL 5162392, at *6-7 (C.D. Cal. July 7, 2023); *CFPB v. CashCall, Inc.*, 2:15-cv-7522, 2023 WL 2009938, at *3 (C.D. Cal. Feb. 10, 2023); *CFPB v. TransUnion*, 641 F. Supp. 3d 474, 482-83

(N.D. Ill. 2022).[2] And in the sole case that has gone the other way, the Supreme Court granted the Bureau's request that it review that decision. While Defendants may wish for a ruling in *CFSA* that required wiping out this and every other action the Bureau has ever taken, they have not met their burden to show that that profoundly disruptive outcome is sufficiently likely to justify the delay to this action—and attendant harm to the public interest—that they seek.[3]

Multiple courts across the country have thus denied requests to halt Bureau enforcement actions pending the outcome in *CFSA*. *See, e.g.*, Order, *CFPB v. CashCall, Inc.*, No. 23-55259 (9th Cir. June 15, 2023), ECF No. 13 (denying stay of briefing in appeal from Bureau enforcement action); *TransUnion*, 2023 WL 3605995, at *2 (denying stay of Bureau enforcement action); *CFPB v. Carnes*, No. 23-cv-2151, 2023 WL 6143307, at *13-14 (D. Kan. Sept. 20, 2023) (same); Order, *CFPB v. Commonwealth Equity Grp., LLC*, No. 1:20-cv-10991 (D. Mass. May 1, 2023), ECF No. 104 (same); *see also* Opinion and Order, *CFPB v. Fifth Third Bank, N.A.*, No. 1:21-cv-00262 (S.D. Ohio Sept. 26, 2023), ECF No. 145-1 (resolving motion for judgment on the pleadings and allowing Bureau enforcement action to proceed while holding in abeyance the defendant's funding challenge). And while Defendants cite (at 8) three cases in

---

[2] *See also, e.g.*, *CFPB v. Ctr. for Excellence in Higher Educ.*, No. 2:19-cv-00877, 2022 WL 4182301, at *6 (D. Utah Sept. 13, 2022) (rejecting constitutional attack on Bureau's funding); *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 56-57 (D.R.I. 2020) (same); *CFPB v. Fair Collections & Outsourcing, Inc.*, No. 19-cv-2817, 2020 WL 7043847, at *9 (D. Md. Nov. 30, 2020) (same); *CFPB v. Think Finance LLC*, No. 17-cv-127, 2018 WL 3707911, at *1-2 (D. Mont. Aug. 3, 2018) (same); *CFPB v. Navient Corp.*, 3:17-cv-101, 2017 WL 3380530, at *16 (M.D. Pa. Aug. 4, 2017) (same); *CFPB v. D & D Mktg.*, No. 15-cv-9692, 2016 WL 8849698, at *5 (C.D. Cal. Nov. 17, 2016) (same); *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 896 (S.D. Ind. 2015) (same); *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014) (same).

[3] Because *CFSA* involves a challenge to an already-promulgated regulation, it provides no occasion for the Supreme Court to address the impact of the purportedly unconstitutional funding mechanism on ongoing enforcement actions. And Defendants never explain why the Bureau could not, at a minimum, resume this prosecution if Congress later provided it with a constitutionally valid appropriation of funds.

which courts granted stays pending the outcome in *CFSA*, those decisions do not control here and are unpersuasive, including because they give insufficient weight to the harms of a stay.

**4. Defendants would not suffer any cognizable harm without a stay.**

Because there is, at minimum, "a fair possibility that the stay ... will work damage to some one else," binding precedent requires that to obtain a stay, Defendants must "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *see also TransUnion*, 2023 WL 3605995, at *2 (applying this holding and denying stay of Bureau enforcement action). They not only fail to make that showing, they fail to establish that they would suffer any cognizable harm at all if denied the months-long delay they seek.

Defendants assert (at 9-10) that, without a stay, they will "suffer the harm of defending against the CFPB's unlawful action." But their claim that this enforcement action is "unlawful" is flatly wrong and foreclosed by Circuit law. Defendants also complain (at 10) that, following the Court's resolution of the pending motion to dismiss, they will incur costs in discovery. But a party denied a stay will always incur the ordinary costs of litigation as a result. That is why courts have rightly held that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). And even if Defendants' litigation costs were a relevant consideration here, Defendants have not shown that any costs they will incur between now and a decision in *CFSA* would be especially onerous or unusual.

Defendants' claim to be harmed merely from having to litigate this case is further undermined by their delay in seeking a stay. The Supreme Court granted certiorari in *CFSA* in February 2023. Yet Defendants waited more than seven months, and after two rounds of motion-to-dismiss briefing were completed, before suggesting that a stay was necessary. That

unexplained delay further demonstrates that Defendants are not currently suffering harm from the mere fact of having to litigate this lawsuit.

## CONCLUSION

For all these reasons, the Court should deny the motion and reject Defendants' efforts to delay having to answer the Bureau's well-pled allegations that they are violating the law and harming consumers.

Dated: October 23, 2023

Respectfully submitted,

Eric Halperin
  *Enforcement Director*
Alusheyi J. Wheeler
  *Deputy Enforcement Director*
Kara K. Miller
  *Assistant Litigation Deputy*

<u>/s/ Kevin E. Friedl</u>
Kevin E. Friedl (NY Reg. No. 5240080)
Maxwell S. Peltz (CA Bar No. 183662)
Lane C. Powell (MI Bar No. P79432)
David Dudley (NY Reg. No. 3056546)
  *Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Friedl): 202-435-9268
Telephone (Peltz): 415-633-1328
Telephone (Powell): 415-844-9784
Telephone (Dudley): 202-603-3041
Fax: 703-642-4585
kevin.friedl@cfpb.gov
maxwell.peltz@cfpb.gov
lane.powell@cfpb.gov
david.dudley@cfpb.gov