```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                  :
CONSUMER FINANCIAL PROTECTION BUREAU,             :
                                                  :
                        Plaintiff,                :
                                                  :            22 Civ. 8308 (JPC)
            -v-                                   :
                                                  :                ORDER
                                                  :
MONEYLION TECHNOLOIGES INC. et al.,               :
                                                  :
                        Defendants.               :
                                                  :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

On October 9, 2023, Defendants (collectively, "MoneyLion") moved to stay this action pending the United States Supreme Court's decision in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Ltd.*, No. 22-448 (U.S.) ("*CFSA*"). Plaintiff Consumer Financial Protection Bureau (the "CFPB") opposes MoneyLion's motion. For the reasons that follow, the Court grants MoneyLion's motion and stays this case pending the Supreme Court's decision in *CFSA* or until further order of the Court.

## I. Background

The CFPB filed its original Complaint on September 29, 2022. Dkt. 1. On January 10, 2023, MoneyLion moved to dismiss that Complaint, Dkts. 56-58, and the motion was fully briefed on March 7, 2023, Dkt. 61. On June 13, 2023, the Court entered the parties' stipulation, which permitted the CFPB to file an amended complaint. Dkt. 64. Later that day, the CFPB filed the Amended Complaint, alleging violations by MoneyLion of the Military Lending Act, 10 U.S.C. § 987, and its implementing regulation, 32 C.F.R. pt. 232, "in connection with [MoneyLion's] extensions of consumer credit to active-duty servicemembers and their dependents." Dkt. 65 ¶ 4;

*see also id.* ¶¶ 61-87.  In addition, the CFPB "alleges violations of Sections 1031, 1036 and 1054 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, 5564, by all Defendants for their unfair, deceptive, and abusive acts or practices in connection with loans and associated financial products and services offered and provided to covered borrowers and offered and provided to all consumers."  *Id.* ¶ 5; *see also id.* ¶¶ 88-116.

MoneyLion moved to dismiss the Amended Complaint on July 11, 2023, Dkts. 68, 69 ("MTD Motion"), the CFPB opposed the motion on August 18, 2023, Dkt. 70, and MoneyLion replied on September 8, 2023, Dkt. 71.  Among other arguments, MoneyLion asserts that this case should be dismissed because the CFPB's funding structure violates the Appropriations Clause of the U.S. Constitution and the nondelegation doctrine.  MTD Motion at 8-9; *see* U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."); U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time.").  Then, on October 2, 2023, MoneyLion wrote to the Court in anticipation of its motion seeking a stay of this case pending the Supreme Court's decision in *CFSA*.  Dkt. 72. The CFPB responded on October 6, 2023, arguing its opposition to a stay.  Dkt. 76.  MoneyLion filed its motion to stay this litigation on October 9, 2023, Dkt. 77 ("Stay Motion"), the CFPB opposed on October 23, 2023, Dkt. 78 ("Stay Opposition"), and MoneyLion replied on October 30, 2023, Dkt. 79 ("Stay Reply").

Four events occurred leading to MoneyLion's stay motion that implicate its challenge to the constitutionality of the CFPB's funding structure.  First, on October 19, 2022, the Fifth Circuit issued its decision in *CFSA*, holding, *inter alia*, that the CFPB's "funding apparatus cannot be

reconciled with the Appropriations Clause and the clause's underpinning, the constitutional separation of powers." *Cmty. Fin. Servs. Assoc. of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 642 (5th Cir. 2022). Building from that premise, the Fifth Circuit vacated the CFPB-promulgated rule at issue, finding that harm was inflicted on the parties challenging the rule "by the [CFPB]'s improper use of unappropriated funds to engage in the rulemaking at issue," and further reasoning that the CFPB's "unconstitutional funding structure not only affected the complained-of decision, it literally effected the promulgation of the rule." *Id.* at 643 (internal quotation marks and alterations omitted). Second, on February 27, 2023, the Supreme Court granted *certiorari* to review the Fifth Circuit's decision. *CFSA*, 143 S. Ct. 978 (2023). Third, on March 23, 2023, in an unrelated case, the Second Circuit held that the CFPB's funding structure does not violate the Appropriations Clause. *Consumer Fin. Prot. Bureau v. L. Offs. of Crystal Moroney, P.C.* ("*Moroney*"), 63 F.4th 174, 181-83 (2d Cir. 2023).[1] Finally, on October 3, 2023, the Supreme Court heard oral argument in *CFSA*. The Supreme Court's session for the current term is expected to end in late June or early July 2024. *See* The Court and Its Procedures, The Supreme Court of the United States, available at https://www.supremecourt.gov/about/procedures.aspx (last visited Nov. 30, 2023).

## II. Standard of Review

District courts have broad power to stay proceedings, which "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time

---

[1] The Second Circuit also held that the CFPB's funding structure does not violate the nondelegation doctrine. *Moroney*, 63 F.4th at 183-84. The Fifth Circuit did not reach whether the CFPB's funding structure is compatible with the nondelegation doctrine, instead only analyzing the nondelegation doctrine for its holding that the CFPB's rulemaking authority does not exceed the boundaries for such authority dictated by the nondelegation doctrine. *Cmty. Fin. Servs. Assoc. of Am.*, 51 F.4th at 633-35.

and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts in this District weigh five factors in considering stays: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). The Court must balance these five factors, "with the principal objective being the avoidance of unfair prejudice." *Consumer Fin. Prot. Bureau v. Credit Acceptance Corp.*, No. 23 Civ. 38 (JHR), 2023 WL 5013303, at *2 (S.D.N.Y. Aug. 7, 2023) (internal quotation marks omitted).

### III. Discussion

#### A. The CFPB's Interests and the Public Interest

The analyses for the first and fifth *Kappel* factors—the plaintiff's private interests and the public interest—overlap significantly here. The CFPB's interests primarily flow from its interest in the enforcement of the federal consumer protection law without delay; that interest, of course, implicates the public's interest in that same enforcement. *See* Stay Opposition at 5-8. While both the CFPB and the public certainly have a legitimate interest in this case proceeding at an appropriate pace, under the facts presented here a stay would not unduly prejudice the CFPB's interests and would marginally serve the public interest.

The CFPB argues that a stay would allow MoneyLion to "carry out more violations . . . and thereby inflict more injury on consumers." *Id.* at 5. The CFPB also emphasizes the "public's already 'strong interest in the vigorous enforcement of consumer protection laws,'" *id.* (quoting *Consumer Fin. Prot. Bureau v. TransUnion*, No. 22 Civ. 1880, 2023 WL 3605995, at *2 (N.D. Ill.

4

Apr. 13, 2023)), and the risk of "information [being] lost or unavailable by the time discovery begins," *id.* at 6. Conversely, MoneyLion argues that "there is little risk that a stay lasting only a few months would cause any meaningful risk of a loss of evidence." Stay Motion at 12. MoneyLion also disputes the CFPB's assertion that violations are ongoing, insisting that "the bulk of the allegations . . . pertain to allegedly historical conduct" and noting that "the CFPB . . . concedes in the First Amended Complaint that most of the alleged violations ceased in August of 2019." *Id.* at 13.

The potential delay here is not lengthy: a decision from the Supreme Court in *CFSA* is expected by late June or early July 2024. The CFPB's concern about spoliation is minimized by the relatively short duration of the stay. Further, a ruling in *CFSA* may actually "advance [the CFPB's] interest by providing the Court with guidance as to the quality, nature, and validity of [its] claims, effectively expediting the resolutions of this [case]." *In re MPM Silicones, L.L.C.*, No. 15 Civ. 2280 (NSR), 2017 WL 4386378, at *2 (S.D.N.Y. Oct. 2, 2017). Indeed, two judges in this District in other cases brought by the CFPB have found that delays of similar or greater length would not unduly prejudice the CFPB, with both implementing a stay pending the decision in *CFSA*. *See Credit Acceptance Corp.*, 2023 WL 5013303, at *3 (finding that there was no "undu[e] prejudice" delaying consideration of the case where a decision from the Supreme Court was not likely for ten months); *Consumer Fin. Prot. Bureau v. MoneyGram Int'l, Inc.*, No. 22 Civ. 3256 (KPF), 2022 WL 17547438, at *3 (S.D.N.Y. Dec. 9, 2022) ("[I]f the Supreme Court indeed follows the Solicitor General's and the CFPB's request, it will grant the Petition on an expedited basis and issue a decision within the next six months. Thus, concerns about undue delays caused by a stay are minimized."); *id.*, Dkt. 57 (S.D.N.Y. Apr. 7, 2023) (denying a motion to lift the stay following *Moroney* and the grant of *certiorari* in *CFSA*).

Of course, the CFPB would be acting in the interest of the public to the extent it purses a legitimate mission in "protect[ing] consumers, including active-duty servicemembers and their dependents, from harmful violations of federal law." Stay Opposition at 1; *see also John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194, 205 (D.D.C. 2017) ("[T]he public has a strong interest in the vigorous enforcement of consumer protection laws."). But at the core of the appeal pending before the Supreme Court is the constitutional legitimacy of the enforcement authority that the CFPB seeks to wield in this case. Further, the CFPB has not even established that MoneyLion has violated any law, as this case has not proceeded past the motion to dismiss stage.[2]

In addition, "considerations of judicial economy are frequently viewed as relevant to the public interest, and . . . they weigh against the investment of court resources that may prove to have been unnecessary." *Readick v. Avis Budget Grp., Inc.*, No. 12 Civ. 3988 (PGG), 2014 WL 1683799, at *6 (S.D.N.Y. Apr. 28, 2014) (internal quotation marks and brackets omitted). It is true that, as the CFPB notes, *Moroney* rejected MoneyLion's arguments regarding the Appropriations Clause and the nondelegation doctrine. *See* Stay Opposition at 3-5. But the Supreme Court appears primed to decide the constitutionality of the CFPB's funding mechanism. *See Credit Acceptance Corp.*, 2023 WL 5013303, at *3 ("The Second Circuit's decision in [*Moroney*] does not change this analysis, as the Supreme Court ultimately will decide whether the

---

[2] For that reason, this case is distinguishable from the Northern District of Illinois's decision in *TransUnion*, on which the CFPB relies. *See* Stay Opposition at 5-7. In *Transunion*, the CFPB sought to enforce a Consent Order, pursuant to which the defendant had agreed to certain remedial measures, and there was undisputed evidence of "43 consumer complaints regarding defendants' products submitted to the [CFPB] and the Federal Trade Commission since the filing of this suit related to the very conduct alleged by the [CFPB]." 2023 WL 3605995, at *2. The parties' dispute over whether MoneyLion is currently engaged in the alleged violations, *compare* Stay Opposition at 5 *with* Stay Motion at 13; Stay Reply at 4, is beside the point for the same reason: the CFPB has not yet established that MoneyLion has committed any violation of the law.

CFPB's funding mechanism is unconstitutional." (citation omitted)).  With a decision from the Supreme Court expected in relatively short order, and mindful of the binding effect that decision will have on this Court, it would be inefficient to decide the pending motion to dismiss now.

In sum, the first factor does not weigh heavily in the CFPB's favor and the fifth factor weighs slightly in favor of imposing a stay.

### B. MoneyLion's Interests and Burden

The second *Kappel* factor—the defendant's private interests and burden—weighs in MoneyLion's favor.  As the Solicitor General noted in the Government's petition for *certiorari* in *CFSA*, the Fifth Circuit's decision "calls into question virtually every action the CFPB has taken in the 12 years since it was created."  Petition for a Writ of *Certiorari* at 10, *CFSA*, No. 22-448 (U.S. Nov. 14, 2022).  In such circumstances, "[a]waiting the Supreme Court's resolution in *CFSA* will clarify the legal issues here and may help Defendant[s] avoid unnecessary litigation costs." *Credit Acceptance Corp.*, 2023 WL 5013303, at *3; *see Kennedy v. Aegis Media Ams., Inc.*, No. 20 Civ. 3624 (GHW), 2021 WL 4077946, at *3 (S.D.N.Y. Sept. 7, 2021) (finding a stay to be in the defendants' interests when a pending case with the Supreme Court "could result in the dismissal of th[e] case, allowing Defendants to avoid the significant burdens imposed by continued proceedings and the potential opening of discovery in this matter"); *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 527 (S.D.N.Y. 2020) ("The defendant has a substantial interest in avoiding unnecessary litigation," and since "it is possible that the Supreme Court may invalidate the [statute] entirely, rather than severing any unconstitutional provision . . . , this action could be rendered moot by the Supreme Court's decision."); *Poppel v. Rockefeller Univ. Hosp.*, No. 19 Civ. 1403 (ALC), 2019 WL 3334476, at *3 (S.D.N.Y. July 25, 2019) (finding that, despite "the short amount of time between now and Defendants' proposed end of the stay," which made "any burden on

7

Defendants to proceed without a stay . . . minimal, the second factor leans in favor of Defendants").

### C. The Interests of the Courts

The third factor, the Court's interests, also weighs in favor of a stay. "Postponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised . . . in the interest of judicial economy." *Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000). "[W]hen a higher court is close to settling an important issue of law bearing on the action," courts can "properly exercise [their] staying power." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012).

A stay of this action would "best serve the interests of the courts by promoting judicial efficiency." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (internal quotation marks omitted). The CFPB argues that the "challenge [to the CFPB's funding structure] has already been resolved by the Second Circuit," and that a stay "will require only that the Court confirm that the Second Circuit has decided the issue in a binding published decision." Stay Opposition at 3-4. But again, the Supreme Court may soon decide the constitutionality of the CFPB's funding mechanism and reach a different result. Imposing a stay would therefore be the most efficient use of court resources. *See Credit Acceptance Corp.*, 2023 WL 5013303, at *3 ("A stay is also warranted because the Supreme Court's decision could contain guidance that would allow this litigation to proceed on a reasonable and efficient basis." (quotations omitted)); *MoneyGram Int'l*, 2022 WL 17547438, at *2 (finding that "the interests of the courts and judicial efficiency would be served by [a stay]"); *id.*, Dkt. 57 at 4 ("A continued stay is thus the most efficient use of both the parties' and the Court's resources."). Indeed, proceeding with discovery would "serve little or no purpose" if the Supreme

Court's decision in *CFSA* has the effect of disposing of this case entirely. *See Readick*, 2014 WL 1683799, at *5. This factor weighs strongly in favor of a stay.[3]

### IV. Conclusion

In sum, the second and third *Kappel* factors, MoneyLion's interests and the Court's interests, weigh strongly in favor of a stay, and the fifth factor, the public interest, weighs slightly in favor. The first *Kappel* factor, the CFPB's interests, does not weigh heavily in the CFPB's favor as it would not be unduly prejudiced by a stay. Thus, MoneyLion's motion for a stay is granted, and this case is stayed pending the Supreme Court's decision in *CFSA* or until further order of the Court. MoneyLion's motion for a pre-motion conference is denied as moot. Within two weeks of the Supreme Court's decision in *CFSA*, the parties shall file a joint status letter with their views as to how this case should proceed. The Clerk of Court is respectfully directed to close the motions at Docket Numbers 72 and 77.

SO ORDERED

Dated: December 1, 2023
      New York, New York

                                  JOHN P. CRONAN
                              United States District Judge

---

[3] Neither MoneyLion nor the CFPB addresses the fourth *Kappel* factor, the interests of those not a party to this litigation. While it is unclear whether proceeding with discovery would impose a burden to third parties here, in certain circumstances granting a stay "could negate any need for third party discovery." *Kennedy*, 2021 WL 4077946, at *3; *see also In re MPM Silicones*, 2017 WL 4386378, at *2 ("Failure to [stay] could well lead to unnecessary litigation that is time-consuming for this court, as well as for any third parties that might be joined in this [] proceeding.").