UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau,<br>        Plaintiff,<br>    v.<br>MoneyLion Technologies Inc., *et al.*,<br>        Defendants. | Case No. 1:22-cv-8308<br><br>Stipulated Final Judgment and [Proposed] Order |

**STIPULATED FINAL JUDGMENT AND [PROPOSED] ORDER**

1. The Consumer Financial Protection Bureau ("Bureau") commenced this civil action on September 29, 2022, filed its First Amended Complaint on June 11, 2023, and its Second Amended Complaint on April 22, 2025, to obtain injunctive and monetary relief, and civil penalties from MoneyLion Technologies Inc., ML Plus, LLC, and the 37 entities collectively referred to as the "MoneyLion Lending Subsidiaries" listed in paragraph 16.

2. The Second Amended Complaint alleges violations of the Military Lending Act, 10 U.S.C. § 987, and its implementing regulation, 32 C.F.R. pt. 232 (collectively, the "MLA"), by Defendants in connection with their extensions of consumer credit to active-duty servicemembers and their dependents, and Sections 1031, 1036, and 1054 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C §§ 5531, 5536, 5564, by Defendants, in connection with certain loans and associated financial products and services offered and provided to Members (as defined in paragraph 18).

3. The Bureau and Defendants (jointly, the "Parties") agree to entry of this Stipulated Final Judgment and Order ("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Second Amended Complaint.

I. **<u>Findings</u>**

4. The Court has jurisdiction over the Parties and the subject matter of this action.

5. For purposes of this Order, Defendants neither admit nor deny the allegations in the Second Amended Complaint, except Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

6. Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order. Each Party agrees to bear its own costs and expenses, including without limitation, attorneys' fees.

7. Entry of this Order is in the public interest.

II. **<u>Definitions</u>**

The following definitions apply to this Order:

8. "**Affected Borrowers**" means, collectively, "Affected Covered Borrowers" and "Affected Cancellation Borrowers" as defined in paragraphs 9 and 10.

9. "**Affected Cancellation Borrowers**" includes any Borrower who, between December 1, 2017 and October 11, 2024, MoneyLion reasonably determines tried, but was unable to, cancel their Membership due to having an outstanding MoneyLion Loan.

10. "**Affected Covered Borrowers**" means any Borrower who took out a MoneyLion Loan from any Defendant between December 1, 2017 and October 11, 2024, as identified by the Parties pursuant to the Redress Plan, and met the definition in this Order of a "Covered Borrower."

11. "**Board**" means MoneyLion Inc.'s Board of Directors.

12. "**Borrowers**" refers to Members who take out MoneyLion Loans, whether or not they are Affected Borrowers.

13. "**Clearly and Prominently**" means:

   a. for textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the disclosure must be of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background on which it appears; and

   b. in all instances, the disclosure must be presented before the consumer incurs any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with the consumer.

14. "**Covered Borrower**" means a "covered member" or "dependent" as defined in 10 U.S.C. § 987(i) or a "covered borrower" as defined in 32 C.F.R. § 232.3.

15. "**Credit Reserve Account**" means the Borrower's account used to hold the portion of money reserved as collateral for the Borrower's MoneyLion Loan, rather than disbursed as up-front cash.

16. "**Defendants**" means MoneyLion Technologies Inc., ML Plus, LLC, and the following 37 entities collectively referred to as the "MoneyLion Lending Subsidiaries": MoneyLion of Alabama LLC, MoneyLion of Arizona LLC, MoneyLion of California LLC, MoneyLion of Colorado LLC, MoneyLion of Connecticut LLC, MoneyLion of Delaware LLC, MoneyLion of Florida LLC, MoneyLion of Georgia LLC, MoneyLion of Idaho LLC, MoneyLion of Illinois LLC, MoneyLion of Indiana LLC, MoneyLion of Kansas LLC, MoneyLion of Kentucky LLC, MoneyLion of Louisiana LLC, MoneyLion of Maryland LLC, MoneyLion of Michigan LLC, MoneyLion of Minnesota LLC, MoneyLion of Mississippi LLC, MoneyLion of Missouri LLC, MoneyLion of Nevada LLC, MoneyLion of New Jersey LLC, MoneyLion of New Mexico LLC, MoneyLion of New York LLC, MoneyLion of North

Carolina LLC, MoneyLion of North Dakota LLC, MoneyLion of Ohio LLC, MoneyLion of Oklahoma LLC, MoneyLion of Oregon LLC, MoneyLion of South Carolina LLC, MoneyLion of South Dakota LLC, MoneyLion of Tennessee LLC, MoneyLion of Texas LLC, MoneyLion of Utah LLC, MoneyLion of Virginia LLC, MoneyLion of Washington LLC, MoneyLion of Wisconsin LLC, and MoneyLion of Wyoming LLC, and their successors and assigns, individually, collectively, or in any combination.

17. "**Effective Date**" means the date on which the Order is entered by the Court on the docket.

18. "**Member**" refers to an individual holding a Membership.

19. "**Membership**" means participation in a MoneyLion program via payment of a monthly fee in exchange for access to Membership Benefits (as defined in paragraph 22.a.ii), including access to MoneyLion Loans.

20. "**MoneyLion Loan**" refers to a ML Plus Loan or a MoneyLion Credit Builder Loan from Defendants.

21. "**Redress Plan**" means a comprehensive written plan for providing redress consistent with this Order.

## III. Conduct Provisions

### A. Prohibited Conduct – Covered Borrowers

**IT IS ORDERED** that:

22. Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, are prohibited from:

>   a. Extending consumer credit to any Covered Borrowers where the military annual percentage rate ("MAPR") exceeds 36 percent, with the following charges included in the calculation of the MAPR, consistent with 32 C.F.R. § 232.4(c): (a) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation

4

contract, or any fee for a debt suspension agreement; (b) any fee for a credit-related ancillary product sold in connection with the credit transaction; and (c)(i) finance charges associated with the consumer credit; (ii) any application fee charged to a Covered Borrower who applies for consumer credit; and (iii) any fee imposed for participation in any plan or arrangement for consumer credit, including but not limited to, any Membership fees required to be paid as a condition for receiving the consumer credit.

   i. For purposes of interpreting and applying this Order, fees charged to Covered Borrowers for a Membership that provides specific services (the "Membership Benefits"), in addition to access to the MoneyLion Loan, will not be considered in connection with or incident to the MoneyLion Loan, and the Membership fees will be excluded from the MAPR so long as: (A) the fees are Clearly and Prominently disclosed in accordance with the Order; and (B) Covered Borrowers have a right to cancel the Membership regardless of whether they have an active MoneyLion Loan, provided that MoneyLion may require that Covered Borrowers maintain their Membership for an initial period—not to exceed two months—prior to cancellation.

   ii. For purposes of this Order, "Membership Benefits" means a suite of benefits comparable or substantially similar to the current MoneyLion Credit Builder Plus Membership benefits: (1) managed investment accounts; (2) MoneyLion Loans; (3) credit monitoring and fraud alerts; (4) digital checking accounts; (5) the loyalty program and associated rewards; and (6) financial literacy products and management tools.

    b. Selling the right to collect any unpaid Membership fees in connection with MoneyLion Loans with Covered Borrowers who were given a MoneyLion Loan that exceeded 36 percent MAPR as defined in this Order. However, Defendants shall be permitted to sell the right to collect principal and interest from Covered Borrowers.

## B. Prohibited Conduct – All Members

**IT IS FURTHER ORDERED** that:

23. Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, are prohibited from:

    a. Preventing Borrowers from cancelling their Memberships regardless of whether they: (i) have an unpaid MoneyLion Loan balance; (ii) have unpaid Membership fees; (iii) are behind on MoneyLion Loan payments; (iv) are in internal collections with respect to a MoneyLion Loan; or (v) have a suspended Membership; provided that MoneyLion may require that Members (including Borrowers) maintain their Membership for an initial Membership period—not to exceed two months—prior to cancellation.

    b. Except as set forth in paragraph 22.a.i, representing to Members that they must do any of the following before cancelling their Membership: (i) pay off their MoneyLion Loan; (ii) become current on their MoneyLion Loan payments; or (iii) pay any past or upcoming Membership fees other than those incurred during the initial Membership fee period, not to exceed two months.

    c. Engaging in collections activities for past, unpaid Membership fees with Borrowers.

    d. Collecting Membership fees for any periods when the Members' Memberships were suspended or the Members were otherwise prevented from accessing the Membership program.

    e. Preventing Borrowers from paying MoneyLion Loans in full using funds in their Credit Reserve Account when such funds are greater than or equal to their outstanding MoneyLion Loan balances.

    f. Using funds in Borrowers' Credit Reserve Accounts to pay any Membership fee so long as such funds are held in the Credit Reserve Accounts as collateral security for the Borrowers' MoneyLion Loans; and

    g. Restricting Borrowers' access to their Credit Reserve Account funds based solely on unpaid Membership fees.

24. Nothing in this Order prohibits Defendants from seeking or receiving:

    a. payments from any Members who wish to return their Membership to good standing, or

    b. payments for any current or future Membership period for any Member who has not cancelled or terminated their Membership.

### C. Required Conduct – Covered Borrowers

**IT IS FURTHER ORDERED** that:

25. Defendants shall not furnish negative consumer reporting information regarding Covered Borrowers where such reporting is based on unpaid Membership fees and shall take reasonable steps to remove any such negative consumer reporting, to the extent it exists.

### D. Role of the Board and Executives

**IT IS FURTHER ORDERED** that:

26. The Board has the ultimate responsibility for ensuring that all Defendants comply with this Order.

27. Defendants' Chief Executive Officers and the Board, respectively, must review all plans and reports required by such Defendant under this Order, and any submissions to the Bureau, prior to such submission.

28. The Board and all Defendants' Chief Executive Officers must:

    a. authorize whatever actions are necessary for each Defendant to assess whether each Defendant is complying with each paragraph and subparagraph of this Order and the Redress Plan required under Section IV;

    b. authorize whatever actions, including corrective actions, are necessary for each Defendant to fully comply with each paragraph and subparagraph of this Order and the Redress Plan required under Section IV; and

    c. require timely reporting by management to the Board and each Defendant's Chief Executive Officer on the status of compliance with Defendants' obligations under this Order.

## IV. Monetary Provisions

### A. Order to Pay Redress

**IT IS FURTHER ORDERED** that:

29. Within 10 business days of the Effective Date, Defendants must reserve or deposit into a segregated deposit account $1,750,000 for the purpose of providing redress to Affected Borrowers as required by this Section (the "Redress Account").

30. Defendants must provide redress to Affected Borrowers as follows:

    a. For Affected Covered Borrowers: $1,723,538.85, distributed pro rata as a percentage of net Membership fees paid by each Affected Covered Borrower during the period in which they had an outstanding MoneyLion Loan between December 1, 2017, and October 11, 2024.

    b. For Affected Cancellation Borrowers: $26,461.15.

31. Defendants must relinquish all dominion, control, and title to all redress amounts sent to and accepted by Affected Borrowers to the fullest extent permitted by law, and Defendants have no right to reclaim funds paid under this Order.

32. Defendants must provide all relief to Affected Borrowers required by this Order. Defendants will ensure that the Redress Account is maintained, and that all valid claims for redress are honored, regardless of any corporate transaction, change in corporate form, or asset sale that might otherwise affect the Redress Account, including specifically requiring any successor entity to maintain the Redress Account and continue to honor valid claims for redress. Prior to the termination of this Order, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the balance of the Redress Account, at which point Defendants will not be responsible for honoring outstanding redress claims. The Bureau may use these remaining funds to pay additional redress to Affected Borrowers. If the Bureau determines, in its sole discretion, that additional redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

33. Conditioned on the entry of this Order as proposed by the Parties, the Bureau has provided non-objection to a comprehensive written plan for providing redress consistent with this Order (the "Redress Plan"). Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan, subject to reasonable extensions of deadlines requested by Defendants.

34. Defendants may not condition the payment of any redress to any Affected Borrower under this Order on that Affected Borrower waiving any right.

35. In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on

any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

36. The facts alleged in the Second Amended Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order or in any subsequent civil litigation by or on behalf of the Bureau relating to this Order, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

37. The facts alleged in the Second Amended Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against each Defendant, even in such Defendant's capacity as debtor-in-possession.

38. Defendants acknowledge that their Taxpayer Identification Numbers, which Defendants previously submitted to the Bureau, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

**B. Compliance Report and Order Duration**

**IT IS FURTHER ORDERED** that:

39. Within 30 days of completing all actions required by the Redress Plan, Defendants must submit to the Bureau an accurate written compliance report ("Compliance Report") that has been approved by the Board, the accuracy of which is sworn to under penalty of perjury, and which, at a minimum, details the steps Defendants have taken to implement the requirements of this Order, including:

   a. describes in detail whether and how each Defendant has complied with the Redress Plan and each paragraph and subparagraph of this Order, including:

10

> i. reporting on the number of Affected Borrowers who received redress;
>
> ii. reporting the total amount of redress paid to each of those Affected Borrowers; and
>
> iii. the manner of verification of such compliance and any corrective actions taken to remedy potential non-compliance with the applicable requirement, paragraph, or subparagraph;
>
> b. describes the steps Defendants have taken to comply with this Order, including Sections III(A-C) and IV(A);
>
> c. attaches a copy of each Order Acknowledgment obtained under Section VI(B), unless previously submitted to the Bureau.

40. Within seven (7) days of submitting the Compliance Report to the Bureau, MoneyLion must file a status report with the Court, informing the Court that it has completed redress pursuant to the Order's requirements.

41. This Order shall terminate (the "Termination Date") 90 days from the date Defendants file with the Court the status report required under paragraph 40. During the 90-day period, the Parties will endeavor in good faith to resolve any outstanding issues relating to compliance with the Order.

42. Unless otherwise specified, the requirements in this Order apply only between the Effective Date and the Termination Date.

## V.     Release

**IT IS FURTHER ORDERED** that:

43. The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in its Second Amended Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date, and agrees that this Order is "a final consent decree . . . entitled to res judicata effect." *Amalgamated*

*Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987). This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

### VI. Compliance Provisions

#### A. Reporting Requirements

**IT IS FURTHER ORDERED** that:

44. Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' names or addresses. Defendants must provide this notice, if practicable, at least 30 days before the development, but in any case, no later than 14 days after the development.

45. Within seven days of the Effective Date, Defendants must:

    a. provide the Bureau with at least one telephone number, email, and postal address that the Bureau may use to communicate with each Defendant; and

    b. provide the Bureau with at least one telephone number, email, and postal address as points of contact for Members with inquiries related to relief under this Order.

46. Defendants must report any change in the information required to be submitted under paragraph 44 at least 30 days before the change if practicable, but in any case no later than 14 days after the change.

## B. Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

47. Within seven days of the Effective Date, each Defendant must submit to the Bureau an acknowledgment of receipt of this Order, sworn under penalty of perjury.

48. Within 30 days of the Effective Date, Defendants must deliver a copy of this Order to all members of the Board and all Defendants' executive officers, as well as to any managers, employees, or other agents and representatives who have responsibilities related to the subject matter of the Order.

49. Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in paragraph 44, any future members of the Board and any of Defendants' future executive officers, as well as to any managers, employees, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

50. Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, or other electronic verification of receipt, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

51. Ninety days from the Effective Date, Defendants must submit to the Bureau a list of all persons and their titles to whom this Order was delivered under this Section and a copy of all signed and dated statements acknowledging receipt of this Order under paragraph 50.

## C. Recordkeeping

**IT IS FURTHER ORDERED** that:

52. Defendants must create the following business records:
    a. all documents and records necessary to demonstrate full compliance with the Redress Plan and each provision of this Order, including all submissions to the Bureau; and

13

      b. all documents and records pertaining to the Redress Plan, described in Section IV.

53. Defendants must retain these documents for at least five years after creation and make them available to the Bureau upon the Bureau's request. All documents and records must be maintained in their original electronic format. Data must be maintained in such a way that access, retrieval, auditing and production are not hindered.

### D. Notices

**IT IS FURTHER ORDERED** that:

54. Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. MoneyLion Technologies Inc., et al.*, Case No. 22-cv-08308-JPC (S.D.N.Y.)," and send them to the following email: Enforcement_Compliance@cfpb.gov addressed as follows:

> ATTN: Enforcement Director
> Division of Enforcement
> Consumer Financial Protection Bureau

### E. Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

55. Defendants must remain registered for the Bureau's Company Portal and in connection with responding to consumer complaints and inquiries on the Company Portal must comply with the timely response requirements set forth in Section 1034(b)(1)-(3) of the CFPA, 12 U.S.C. § 5534(b).

56. Unless otherwise prohibited by law or regulation, Defendants must disclose on their consumer-facing websites that consumers can file a complaint with the Bureau and provide the applicable telephone, website, and mailing information to do so.

### F. Compliance Monitoring

**IT IS FURTHER ORDERED** that:

57. Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, including sworn testimony or documents, which must be made under penalty of perjury, regarding: (a) this matter; (b) anything related to or associated with the conduct described in the Second Amended Complaint; or (c) compliance with the Order.

58. For purposes of this Section, the Bureau may communicate directly with Defendants, unless Defendants retain counsel related to these communications.

59. Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who have agreed to such an interview regarding: (a) this matter; (b) anything related to or associated with the conduct described in the Second Amended Complaint; or (c) compliance with this Order. The person interviewed may have counsel present.

60. Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

### G. Transfer or Assignment of Operations

**IT IS FURTHER ORDERED** that:

61. Should Defendants seek to transfer or assign any part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

**IT IS FURTHER ORDERED** that:

    62.    All pending motions are hereby denied as moot.

    63.    The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

The Court, having reviewed the Parties' Stipulated Judgment, and for good cause, hereby declares and decrees:

SO ORDERED.

Dated: _____, 2025   _____
      New York, New York                             JOHN P. CRONAN
                                                           United States District Judge